William A. Smelko SBN 96970
WILLIAM A. SMELKO, APC
3333 Camino Del Rio South, Suite 140
San Diego, CA 92108
PH:  (619) 236-0800
FAX: (619) 236-0888
E:   wasmelko@aol.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA

IN RE:

Fanita Ranch, LP, a California

Limited Partnership


                    Debtor

_____

) CASE NUMBER: 10-0570-MM-11
)
) DEBTOR-IN-POSSESSION'S PLAN OF
) REORGANIZATION DATED JULY 6, 2010
)
) Hearing Date: N/A
) Hearing Time: N/A
) Department:    1
) Judge:        Hon. Margaret Mann
)
)
)

    FANITA RANCH, LP, A CALIFORNIA LIMITED PARTNERSHIP (the "Company"), debtor and debtor in possession submits this Plan of Reorganization Dated July 6, 2010, pursuant to §1121(a) of the Bankruptcy Code and requests confirmation of the Plan pursuant to §1129 of the Bankruptcy Code.  Reference is made to the Disclosure Statement for a discussion: (1) of the Company's history, business, and results of operations and properties; (2) regarding the reorganization process; and (3) of a summary and analysis of the Plan and confirmation related matters.  All holders of claims entitled to vote to accept or reject the Plan should read the Plan and Disclosure Statement in their entirety before voting to accept or reject the Plan. No solicitation materials, other than the Disclosure Statement and the materials transmitted with it have been approved by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.  The Company is the proponent of the Plan within the meaning of Bankruptcy Code §1129.

**ARTICLE I: DEFINITIONS & RULES OF CONSTRUCTION.**

   **A. Definitions.**

   For the purposes of the Plan, the following terms shall have the respective meanings set forth in this Article I. Any term used in this Plan not defined herein, but used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

   1. **"Accounts Payable Post-Petition Claim"** means Claims of third parties arising after the Petition Date for the purchase of merchandise, supplies, utilities and other non-employee related expenses incurred in the ordinary course of business.

   2. **"Administrative Claim"** means a Claim for costs and expenses of administration under §§503, 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the commencement of the Chapter 11 Case for preserving the Company's Estate and operating the Company's business such as wages, salaries or commissions for services); (b) compensation for legal, accounting and other services and reimbursement of expenses awarded or allowed under Bankruptcy Code §§330(a) or 331; (c) all payments made to cure defaults under executory contracts and leases the Company has assumed; and (d) all fees and charges assessed against the Company under §1930 of title 28 of the United States Code.

   3. **"Allowed"** when used with respect to a Claim other than an Administrative Claim, means a Claim: (a) either, (i) scheduled by the Company pursuant to the Bankruptcy Code, other than a Claim scheduled as disputed, contingent, or unliquidated, or (ii) proof of which has been timely filed pursuant to the Bankruptcy

Code and any order of the Bankruptcy Court, or late filed with leave of the Bankruptcy Court after notice and a hearing; and as to which (b) either: (i) no objection to the allowance of which has been filed within the periods of limitation fixed by the Plan or an order of the Bankruptcy Court, (ii) any objection to the allowance of which has been overruled by a Final Order, or (iii) which has otherwise been Allowed by a Final Order or this Plan only to the extent that it has been so Allowed.

4. **"Allowed Administrative Claim"** means all or that portion of any Administrative Claim which either: (a) has become Allowed by a Final Order; or (b) was incurred in the ordinary course of business during the Case, is not disputed by the Company and is due and owing under the terms and conditions of any agreements or applicable law.

5. **"Amount"** means, with respect to: (i) an Allowed Claim, the Amount of such Allowed Claim; and (ii) with respect to a Disputed Claim, the estimated Amount of such Disputed Claim, determined in accordance with Plan Article VIII, ¶2.

6. **"Bankruptcy Code" or "Code"** means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 United States Code, 11 U.S.C. §§101-1330, and applicable to cases filed as of the Petition Date.

7. **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of California or such other court as may have jurisdiction over the Chapter 11 Case.

8. **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, and any local Bankruptcy Court rules.

9. **"Bar Date"** means July 31, 2010, the bar date for filing certain proofs of Claim or Interest in the Chapter 11 Case.

10 **"Business Days"** means each Monday, Tuesday, Wednesday, Thursday and Friday, which is not a day on which banking institutions in New York, New York, are authorized or obligated by law, governmental decree, or executive order to be closed.

11 **"Chapter 11 Case"** means that case filed in the Bankruptcy Court entitled "In re Fanita Ranch, LP, a California Limited Partnership, Debtor," Case No. 10-05750-MM-11, under Chapter 11, Title 11 of the Bankruptcy Code.

12 **"Cash"** shall mean United States currency, a certified check, a cashier's check or a wire transfer of good funds from any source, or a check from the Reorganized Company.

13 **"Claim"** means a claim against the Company as defined in Code §101(5).

14 **"Claimant"** means the holder of a Claim.

15 **"Class"** means a class of Claims against or Interests in the Company.

16 **"Company"** means Fanita Ranch, LP, a California Limited Partnership.

17 **"Confirmation"** means the entry of the Confirmation Order.

18 **"Confirmation Hearing Date"** means the hearing before the Bankruptcy Court on Plan Confirmation and any continued hearing date(s).

19 **"Confirmation Order"** means the order issued by the Bankruptcy Court confirming the Plan.

20 **"Consummation Date"** means the Business Day on which all conditions to Plan consummation set forth in Article X are satisfied or waived.

21 **"Damages"** means any loss, liability, claim, damage, expense (including, without limitation, costs of investigation and defense and reasonable attorneys' fees and expenses) or diminution of value.

22 **"Disclosure Statement"** means the Disclosure Statement (and all exhibits and schedules annexed to or referenced in the Disclosure Statement) relating to the Plan that was approved pursuant to Code §1125 by a Bankruptcy Court order entered on the Disclosure Statement approval date, as amended, modified or supplemented.

23 **"Disputed Claim"** means, for the purpose of receiving Plan distributions: (a) a Claim, as to which, if no proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law and such Claim has been scheduled by the Company in its schedule of liabilities as other than disputed, contingent or unliquidated, the Company has Filed an objection by the Effective Date; or (b) a Claim as to which, if a proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law, an objection has been timely Filed by the Company or any other party in interest and such objection has not been withdrawn on or before any date fixed by the Plan or order of the Bankruptcy Court for Filing such objections and such objection has not been denied by a Final Order. For the purpose of receiving Plan Distributions, a Claim or Claims asserted in a proof of claim shall be considered a Disputed Claim in its entirety if an objection is timely filed to any portion of such Claim or Claims.

24 **"Disputed Claims Reserve Account"** means the Amount of Cash or other property that would have been distributed to Allowed Disputed Claims.

25 **"Distribution"** means the distribution of Cash or other property required under the Plan.

26 "**Distribution Fund"** means the fund established pursuant to the Plan, out of which certain Distributions will be made.

27 **"Distribution Record Date**" means the first Business Day: (a) that is at least eleven (11) days after the date of Confirmation; (b) on which no stay of the Confirmation Order is in effect; and (c) on which all conditions to the Consummation Date have been satisfied or waived.

28 **"Effective Date"** means the earlier of: (a) the date which is 30 days following the closing of escrow of the sale of the Company's Real Property; or (b) if the Confirmation Order is appealed but not stayed, the date on which the Plan Proponent files with the Bankruptcy Court a statement that the Plan will be consummated notwithstanding the appeal.

29 **"Election Date"** means the date to be fixed by the Court for Claim or Interest Holders to elect the type of Plan Treatment they will receive after confirmation.

30 **"Excess Reserve"** means any Unclaimed Distributions described in Plan Article VIII(A).

31 **"Filed"** means filed with the Bankruptcy Court in the Company's Case.

32 **"Final Order"** means an order or a judgment which has not been reversed or stayed and as to which: (i) the time to appeal or seek review, rehearing or certiorari has expired; and (ii) no appeal or petition for review, rehearing or certiorari is pending.

33 **"General Unsecured Claims"** means all Unsecured Claims not entitled to priority, and excluding the Westbrook Fanita Ranch, L.P. and

Guaranty Bank as Administrative Agent for Guaranty Bank and Wachovia Bank, N.A. ("Guaranty") Unsecured Claims.

**34 "General Unsecured Creditors"** means holders of General Unsecured Claims excluding the holders of Code §506 Bifurcated Claims.

**35 "Interests"** means the legal, equitable and contractual rights represented by any Company equity security defined in Code §101(16), and includes any references to any pre-petition or post confirmation Interests.

**36 "Legal Proceeding(s)"** means a judicial, administrative, or arbitration actions, suits, proceedings (public or private), Claims or governmental proceedings.

**37 "Lien"** means with respect to any property: any perfected mortgage, lien, pledge, charge, security interest or encumbrance of any kind.

**38 "Petition Date"** means April 7, 2010.

**39 "Plan"** means the Debtor in Possession's Plan of Reorganization Dated July 6, 2010, including, without limitation, any modifications or amendments thereto.

**40 "Postpetition Accrued Wages and Other Claims"** means Claims arising after the Petition Date for employee or management related costs incurred in the ordinary course of business, including salaries, commissions, management fees, payroll withholdings and contributions to any employee benefit plans.

**41 "Priority Claims"** means Claims that have priority under Code §507(a)(2)(3) or (4).

**42 "Professionals"** means all professionals, firms, or entities employed in the Chapter 11 Case pursuant to Code §§327 or 1103, and all professionals seeking compensation or reimbursement of expenses pursuant to Code §503(b)(4).

**43 "Pro Rata"** means with respect to Allowed Claims or Interests in the same Class, the proportion that the dollar amount of an Allowed Claim or Interest bears to the aggregate dollar amount of all Allowed Claims or Interests of that Class or group of Interests.

**44 "Real Property"** means that certain real property commonly known as the Fanita Ranch Property located in Santee, California.

**45 "Reorganized Company"** means the Company as reorganized under the Plan.

**46 "Reserve Amounts"** means the Amount of Cash or other property required to be deposited in the Disputed Claims Reserve Account, on account of Disputed Claims.

**47 "Secured Claim"** means a Claim to the extent of the value of any Lien on or security interest in property of the Company that secures payment of such Claim.

**48 "Tax Claim"** means an Allowed priority Claim for taxes of the kind specified in Code §507(a)(8).

**49 "Tax Code"** means the Internal Revenue Code of 1986, as amended.

**50 "Unclaimed Distribution(s)"** means those Distributions held by the Disbursing Agent for the benefit of the holders of Allowed Claims who have failed to request and acquire such Distributions.

**51 "Unsecured Claim(s)"** means all unsecured claims against the Company, except an Unsecured Westbrook LP or Guaranty Claim, not entitled to priority under Code §507(a).

**52 "Unsecured Westbrook LP Claim"** means an Allowed unsecured claim against the Company, arising from the unsecured portion of Westbrook LP's claim, not entitled to priority under Code §507(a) in an amount to be determined by the Bankruptcy Court.

**53 "Unsecured Guaranty Claim"** means an Allowed unsecured claim against the Company, arising from the unsecured portion of the Guaranty Claim not entitled to priority under Bankruptcy Code §507(a) in an amount to be determined by the Bankruptcy Court.

**B.    Rules of Interpretation, Computation of Time and Governing Law.**

**1 Rules of Interpretation:**

a.    The words "herein, "hereof, "hereto," "hereunder" and others of similar usage refer to this Plan as a whole and not to any particular article, section, subsection, paragraph or clause contained in this Plan, unless a particular reference is stated.

b.    Any reference to the word "on" shall mean "on or about."

c.    Any reference to the word "including" shall mean "including without limitation."

d.    Unless specified otherwise in a particular reference, a reference in this Plan to a particular article, section, subsection or paragraph of this Plan is a reference only to that article, section, subsection or paragraph.

e.    Any reference in this Plan to a document being in a particular form means that the document shall be in substantially such form.

f.    Any reference in this Plan to an existing document means such document as it may have been amended, modified or supplemented from time to time prior to the date hereof, unless a particular reference is stated.

g.    Whenever it is appropriate in context, each term stated in either the singular or the plural shall include both the singular and the plural.

h.    In addition to the foregoing, the rules of construction set forth in Code §102 shall apply to this Plan.

i.    All exhibits and schedules to the Disclosure Statement are incorporated into the Plan, and shall be deemed to be included in the Disclosure Statement, as well, regardless of when they are filed.

**C.    Computation of Time.**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II: CLASSIFICATION OF CLAIMS OR INTERESTS.**

All Claims and Interests, except for Administrative Claims and Tax Claims, are placed in the Classes set forth below. In accordance with Code §1123(a)(1), Administrative Claims and Tax Claims have not been classified. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest.

**A. Unclassified Claims.**

1. Administrative Claims.

2. Tax Claims.

**B. Class 1.**

Class 1 consists of the Allowed Secured Claim of Westbrook L.P. or its successor(s) in interest, if any.

**C. Class 2.**

Class 2 consists of the Allowed Secured Claim of Guaranty, if any.

**D. Class 3.**

Class 3 consists of the Allowed Westbrook LP §506 Bifurcated Claims, if any.

**E. Class 4.**

Class 4 consists of the Allowed Guaranty §506 Bifurcated Claims.

**F. Class 5.**

Class 5 consists of all Allowed Unsecured Claims not included in Class 3 or Class 4.

**G. Class 6.**

Class 6 consists of the Allowed Interests in the Company comprised of all existing Membership Interests as of the Filing Date.

**H. Class 7.**

Class 7 consists of the Allowed Unsecured Priority Claims.

**ARTICLE III: DESIGNATION AND TREATMENT OF UNCLASSIFIED CLAIMS.**

The following sets forth the designation and treatment of all Unclassified Claims.  The Distributions received pursuant to the provisions set forth in this Article III shall represent full and final satisfaction of all such unclassified Claims.

**A. Administrative Claims.**

**1. Description.**  Allowed Administrative Claims are all costs and expenses of administration of the Chapter 11 Case Allowed under Code §503(b), and referred to in Code §§507(a)(1) and 1114, including, without limitation, the actual and necessary costs and expenses of preserving the Company's Estate and operating its businesses, including wages, salaries, management fees or commissions for services rendered postpetition, any indebtedness or obligation incurred or assumed by the Company, as debtor-in-possession. The Plan Proponent estimates that the aggregated

Amount of Allowed Administrative Claims to be paid is approximately $65,000.

2. **Treatment.**  On the Effective Date, or as soon thereafter as is practical, each holder of an Allowed Administrative Claim except for those: (i) holders of Allowed Accounts Payable Postpetition Claims; and (ii) holders of Allowed Postpetition Accrued Wages and Other Claims shall receive on account of such Allowed Claim, payment in full in Cash from the Distribution Fund, unless otherwise agreed. Each Professional employed at the expense of the Company's Estate pursuant to Code §§327 and 1103 and an appropriate order of the Bankruptcy Court, shall be paid the unpaid portion of its Allowed Administrative Claim in Cash from the Distribution Fund. Allowed Accounts Payable Postpetition Claims and Allowed Postpetition Accrued Wages and Other Claims shall receive payment in full in Cash from the Reorganized Company in the ordinary course of business.

B. **Tax Claims.**

1. **Description.** Tax Claims consist of all Claims against the Company entitled to priority under Code §507(a)(8). The Plan Proponent estimates that the aggregate Allowed Amount of Tax Claims approximate less than fifty thousand dollars ($50,000.00)

2. **Treatment.**  Unclassified priority tax creditors shall be paid on account of their Claims, deferred cash payments commencing on the Effective Date of the Plan and monthly thereafter for a period not exceeding six years from the date of assessment, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such claims. Such monthly payments shall include interest at the rate provided by 26 U.S.C. §6621, and/or

California Revenue and Taxation Code §19269, as applicable, and shall retain unaltered any liens that existed on the Petition Date to secure payment of the Claims. The rate of interest shall be sufficient to ensure that the value of the deferred cash payments to be made to the holder of the Allowed Tax Claim shall be, as of the Effective Date, equal to the amount of the Allowed Tax Claim.

Notwithstanding the foregoing, the Reorganized Company may elect at its option, and in its sole discretion, to prepay, without penalty, and with interest accrued to the time of prepayment, any Allowed Tax Claim in whole or in part on the Effective Date or at such later time as it may select within six years from and after the date of assessment.

**ARTICLE IV: DESIGNATION AND TREATMENT OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS.**

The following sets forth the designation and treatment of those classified Claims and Interests set forth in Article II herein which are impaired under the Plan. Each member of the impaired Classes set forth in this Article IV is entitled to vote on the Plan. The Distributions received pursuant to this Article IV shall represent full and final satisfaction of all Allowed Claims.

**A. The Allowed Class 1 Secured Claim of Westbrook Fanita Ranch, L.P.**

**1. Description.** Class 1 consists of the Allowed Westbrook LP Secured Claim in the amount to be determined by the Bankruptcy Court, if any. The Allowed Westbrook LP Secured Claim, if any, is allegedly secured by a first priority deed of trust security interest in the Real Property. Westbrook LP claims that its Allowed Secured Claim is oversecured.  However, because the

validity of the security interest which Westbrook LP asserts in the Real Property is disputed, the Westbrook LP Secured Claim has been scheduled by the Debtor at $0. Thus, the total amount owed to Westbrook LP as a Secured Creditor on the Petition Date was, according to the Company's calculations, nothing.

2. The Company believes that the fair market liquidation value of the Real Property in which Westbrook LP claims a security interest is $36,000,000, meaning that if Westbrook LP's security interest is valid and enforceable, then Westbrook LP is an oversecured creditor. Regardless of the outcome of the lien avoidance action commenced by the Company against Westbrook LP, however, the maximum amount of any Allowed Secured Claim possessed by Westbrook, LP would be less than $36,000,000, meaning that even in a liquidation scenario, Westbrook LP would be a fully secured creditor as defined in Code §506.

3. If Westbrook LP so elects by the Election Date, and if Westbrook LP possesses an Allowed Secured Claim, then Westbrook LP may receive treatment as a Class 3 Bifurcated Claimholder under the Plan. Should Westbrook LP so elect to receive Class 3 Treatment, then Westbrook LP shall not be entitled to receive Class 1 Treatment. The Company believes that the fair market reorganization value of the Real Property which serves as the security for any potential Westbrook LP Allowed Secured Claim is approximately $36,000,000, making Westbrook LP a fully oversecured creditor in reorganization as defined in Code §506 should Westbrook LP in fact, possess an Allowed Secured Claim in any amount.

**4. Treatment.** The Class 1 Claimholder shall retain its Lien, if any, on the Real Property or on any sales proceeds resulting from the sale of the Real Property. The Class 1 Claim will be paid in full through deferred Cash payments by, on or before the Fifth Annual Anniversary Date of the Effective Date of the Plan through the sale or refinancing of the Real Property, or as may be otherwise agreed by Westbrook LP, or its successors-in-interest.

At minimum, the Class 1 Claimholder will be paid a sum equal to the Allowed Secured Claim Amount as it exists on the Effective Date of the Plan, if any, plus interest thereon calculated at the rate of 5.5% per annum simple annual interest from the Petition Date through the date of final payment.

**5. Voting.** The Class 1 Claimholder is impaired under the Plan and, accordingly, the Class 1 Claimholder is entitled to vote on the Plan.

**B. The Allowed Class 2 Secured Claim of Guaranty.**

**1. Description.** Class 2 consists of the Allowed Guaranty Secured Claim, if any, in the amount to be determined by the Bankruptcy Court. The Allowed Guaranty Secured Claim is secured by what is allegedly a second priority deed of trust security interest in the Real Property.  Guaranty claims that its Allowed Secured Claim is in the approximate amount of $34,000,000.  The Company believes that the fair market liquidation value of the Real Property which secures the Guaranty Allowed Secured Claim, if any, is $36,000,000, meaning that if the Company avoids the Westbrook, LP lien, then Guaranty possesses a fully secured claim and in liquidation would be a fully secured creditor as defined in Code §506. If Guaranty so elects by the Election Date,

Guaranty may receive treatment as a Class 4 Bifurcated Claimholder under the Plan.  Should Guaranty so elect to receive Class 4 Treatment, then Guaranty shall not be entitled to receive Class 2 Treatment.

2. The Company believes that the fair market reorganization value of the Real Property which serves as security for the repayment of the Guaranty Allowed Secured Claim is approximately $36,000,000 making Guaranty a fully oversecured creditor in reorganization as defined in Code §506.

3. **Treatment.** The Class 2 Claimholder shall retain its Lien, if any, on the Real Property or on any sales proceeds.

4. **Voting.**  The Class 2 Claimholder is impaired under the Plan and, accordingly, the Class 2 Claimholder is entitled to vote on the Plan.

C. **The Allowed Class 3 Bifurcated Claim of Westbrook Fanita Ranch, L.P.**

1. **Description.**  Class 3 consists of the unsecured portion of the Allowed Westbrook LP Partially Secured and Partially Unsecured Claim in the amount to be determined by the Bankruptcy Court. The Class 3 Claim consists of the Allowed Amount, if any, of the Westbrook LP Claim which is undersecured as defined in Code §506. The existence and amount of any Class 3 Claim will be determined by the Bankruptcy Court after notice and a hearing.

2. **Treatment.**  The allowed amount of any Class 3 Claim will be paid by a Pro Rata distribution of available net proceeds resulting from the sale of the Real Property, if any. The Company may prepay the allowed amount of any Class 3 Claim in full without penalty.

3. **Voting.**  The Class 3 Claimholder is impaired under the Plan and, accordingly, the Class 3 Claimholder is entitled to vote on the Plan.

**D. The Allowed Class 4 Bifurcated Claim of Guaranty.**

1. **Description.** Class 4 consists of the unsecured portion of the allowed amount of the Partially Secured and Partially Unsecured Claim possessed by Guaranty, if any, in the amount to be determined by the Bankruptcy Court. The Class 4 Claim consists of the Allowed Amount, if any, of the Guaranty Claim which is partially undersecured as defined in Code §506. The existence and amount of any Class 4 Claim will be determined by the Bankruptcy Court after notice and a hearing.

2. **Treatment.** The allowed amount of any Class 4 Claim will be paid by a Pro Rata distribution of available net proceeds resulting from the sale of the Real Property, if any. The Company may prepay the allowed amount of any Class 4 Claim in full without penalty.

3. **Voting.**  The Class 4 Claimholder is impaired under the Plan and, accordingly, the Class 4 Claimholder is entitled to vote on the Plan.

**E. The Allowed Class 5 Unsecured Claims.**

1. **Description.**  Class 5 consists of the Allowed Unsecured Claims in the amount to be determined by the Bankruptcy Court, excluding the Allowed Class 3 and Class 4 Bifurcated Unsecured claims.

2. **Treatment.**  By, on or before the Fifth Annual Anniversary Date of the Effective Date of the Plan, the holders of allowed Class 5 Unsecured Claims will receive a Pro Rata payment from the Reorganized Company.

**3. Voting.**  The Class 5 Claimholders are impaired under the Plan and, accordingly, the Class 5 Claimholders are entitled to vote on the Plan.

**F. The Allowed Class 6 Interests.**

**1. Description.** Class 6 consists of the Allowed Membership Interests of the Company existing on the Petition Date.

**2. Treatment.** Class 6 Interest holders will receive a Pro Rata payment from the Reorganized Company of any sales proceeds remaining after the Pro Rata payment to Class 5 Claimholders is completed.

**3. Voting.**  The Class 6 Interest Holders are impaired under the Plan and, accordingly, the Class 6 Interest Holders are entitled to vote on the Plan.

**ARTICLE V: DESIGNATION AND TREATMENT OF UNIMPAIRED CLAIMS.**

The following sets forth the designation and treatment of the Class 7 class of Claims set forth herein which are unimpaired under the Plan.  Members of the unimpaired Class 7 set forth in this Article V are not entitled to vote on the Plan. The Distributions received pursuant to the provisions described in this Article V shall represent full and final satisfaction of all Allowed Unimpaired Class 7 Claims.

**A. Description.**  Class 7 consists of Allowed Priority Claims in the Amount determined by the Bankruptcy Court, which is estimated to be zero.

**B. Treatment.** The holders of Allowed Priority Claims shall be paid in full in Cash by the Reorganized Company on the Effective Date or on the date such Claim becomes an Allowed Claim.

**C. Voting.** Class 7 is unimpaired under the Plan and, accordingly,

the members of this Class are deemed to have accepted the Plan and will not vote on the Plan.

**ARTICLE VI: MEANS FOR PLAN IMPLEMENTATION.**

**A. Means of Effectuating the Plan.**

The Real Property will be sold pursuant to Bankruptcy Court Order under Code Section 363 free and clear of all liens, claims and interests.  The Reorganized Company will make the Distributions required under the Plan to holders of Allowed Claims by using cash received from the then existing cash assets of the Reorganized Company Account, cash from operations, outside cash infusions, a new loan or loans to be secured by a first priority deed of trust lien against the Real Property, and/or the sale or refinancing of the Real Property. The Reorganized Company will commit to the sale of the Real Property free and clear of liens, claims and interests and will commit the Reorganized Company's financial capability and capitalization to consummate the Plan.

The Company will continue operating as the Reorganized Company. After the Effective Date, the Reorganized Company will fund its operations through existing cash balances, cash generated from continuing operations and available borrowings and cash contributions. The Reorganized Company's cash flow will be sufficient not only to fund operating expenses, but all other estimated payments that may be required under the Plan.

Funding the Plan:

The Distribution Fund will be funded with: (i) all cash generated from the sale of the Real Property or from any rents collected from tenants at the Real Property after the Petition Date and before the Effective Date of the Plan, minus all previously paid post-petition

Company operating expenses, which will be placed into the Distribution Fund; (ii) all new value cash contributions received from existing Interest Holders willing to make new cash contributions to the Reorganized Company which will be placed into the Distribution Fund; and (iii) all litigation recoveries or other income or cash receipts collected by the Reorganized Company which will be placed in the Distribution Fund.

Three Reorganized Debtor bank accounts will be created on the Effective Date of the Plan: (1) the Operating Account; (2) the Tax Account; and (3) the Plan Payment Account. These accounts will be funded with all cash generated from the sale of the Real Property or from any rents collected by the Reorganized Company from tenants at the Real Property after the Effective Date of the Plan. All net sales proceeds and all gross rental income and other cash recoveries received by the Reorganized Company before or after the Effective Date of the Plan will be deposited into the Operating Account.

The Reorganized Company will deposit into the Tax Account from the Operating Account a sum sufficient to pay all Real Property taxes, and all state, local and federal income or franchise tax board taxes required to be paid under the Plan.

The Reorganized Company will pay all Monthly Operating Expenses of the Real Property within 30 days of the date such expenses are due for payment. Monthly Operating Expenses include, but are not limited to: (i) Insurance; (ii) Utilities; (iii) Real Property Repairs and Maintenance; (iv) Real Property building related expenses such as, without limitation, expenses or fees relating to or concerning parking, water, sewer, safety, landscaping, roof, painting, plumbing

and gardening expenses; and (v) Property Management Fees and Property Asset Management Fees.

Following the monthly funding of the Tax Account, and within 5 business days following the payment of all Monthly Operating Expenses, the Reorganized Company will deposit into the Plan Payment Account, the amount of the net funds received or collected by the Reorganized Company needed to fund the monthly debt service payments required to be made by the Reorganized Company to the holders of Class 1, Class 2, Class 3, Class 4 and Class 5 Claims, and Class 6 Interests in the Plan.

From the Plan Payment Account, the Reorganized Company will make all Plan required payments to the holders of Class 1, Class 2, Class 3, Class 4 and Class 5 Claims and Class 6 Interests in the Plan.

**B. Managers, Directors and Officers.**

The managers, officers and directors identified and set forth in the Disclosure Statement shall serve as the managers, officers and directors of the Reorganized Company as of the Effective Date.

C. **Revesting of Property of the Estate.**

All property of the Estate as defined in Code §541 not distributed to holders of Allowed Claims pursuant to the Plan shall revest in the Reorganized Company on the Effective Date. Thereafter, the Reorganized Company may operate its business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. As of the Effective Date, all property of the Reorganized Company shall be free and clear of all Claims and Interests, except as specifically provided in the Plan or the Confirmation Order. In addition, in accordance with Code §1123(b)(3), the Reorganized Company shall retain

and may pursue all rights and claims as it deems appropriate.
Without limiting the foregoing, the Reorganized Company may,
without application to or approval by the Bankruptcy Court, pay fees
that it incurs after the Effective Date for Professional fees and
expenses.

**D. Bar Date for Certain Administrative Claims.**

Except as otherwise provided in the Confirmation Order, all
applications by Professionals for final compensation for services
rendered and for reimbursement of expenses incurred on or before the
Effective Date (including, without limitation, any compensation
requested by any Professional or other entity for making a
substantial contribution to the Chapter 11 Case) and all other
requests for payment of Administrative Claims not otherwise Allowed
but incurred before the Effective Date under Code §§507(a)(1 ) or
507(b) (except only for Claims in trade debt incurred in the
ordinary course of business and Claims under 28 U.S.C. §1930) shall
be Filed no later than thirty (30) days after the Effective Date,
unless such date is extended by order of the Bankruptcy Court
entered upon motion Filed prior to the deadline hereunder, on notice
to the Reorganized Company. Any such Claim that is not filed by the
deadline shall be forever barred. Holders of Administrative Claims who
are required to file applications or other requests for payment of
such Claims and who do not do so timely shall be forever barred from
asserting such Claims against the Reorganized Company or any other
entity in connection with their respective activities in the
Reorganized Case or any of their respective property. The Bankruptcy
Court shall retain exclusive jurisdiction over any disputes concerning
Administrative Claims as set forth in Paragraph A of Article XIV.

**E. Effectuating Documents; Further Transactions.**

The Manager, President, Chief Executive Officer, or any other appropriate agent or officer of the Company, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, Interest Shares, Membership Shares, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Manager, Secretary or any other appropriate agent or officer of the Company shall be authorized to certify or attest to any of the foregoing actions, if necessary.

**F. Objections to Claims.**

Any Claim which is not timely objected to and which has not previously been disallowed, will be deemed to be an Allowed Claim upon the expiration of the applicable time for making an objection. A Claim which is timely objected to will be considered a Disputed Claim until such time as an order has been entered by the Bankruptcy Court and such order has become a Final Order.

Unless another date is established by the Bankruptcy Court, all objections to Claims shall be filed and served on the holders of such Claims by the later of: (i) ninety (90) days after the Effective Date; and (ii) ninety (90) days after the particular Proof of Claim has been filed, except as extended by: (a) an agreement between the Claimant and the Company, if the Proof of Claim is filed before the Effective Date, (b) an agreement between the Claimant and the Reorganized Company if the Proof of Claim is filed after the Effective Date; or (c) by order of the Bankruptcy Court upon application by the Reorganized Company.

**ARTICLE VII: ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS.**

**A. Classes Entitled to Vote**

Each Impaired Class shall be entitled to vote to accept or reject the Plan. Any Unimpaired Class of Claims shall be deemed to have accepted the Plan and shall not be entitled to vote to accept or reject the Plan.

**B. Class Acceptance Requirement.**

Under Code §1126 an impaired Class of Claims has accepted the Plan if the holders of at least two-thirds (2/3) in dollar Amount and more than one-half (1/2) in number of the Allowed Claims of such Class who have voted on the Plan, have voted to accept the Plan.

Under Code §1126(d), an impaired Class of Interests has accepted the Plan if the holders of at least two-thirds (2/3) in Amount of the Interests of such Class who have voted on the Plan, have voted to accept the Plan.

**C. Cramdown.**

To the extent necessary, the Company requests Plan Confirmation as the Plan may be modified from time to time, under Code §1129(b).

**ARTICLE VIII:  DISTRIBUTIONS UNDER THE PLAN.**

**A. Plan Distributions.**

**1. The Initial Distributions.**

On the Effective Date of the Plan or as soon thereafter as is practical, the Reorganized Company shall make the Distributions and payments required under the Plan and deposit the Reserve Amounts in the Disputed Claims Reserve Accounts to the extent required by the Bankruptcy Court in respect of Disputed Claims.

**2. Treatment of Disputed Claims.**

If in Class 5, there exist with respect to General Unsecured Claims, as of the Effective Date or any relevant date thereafter, any Disputed Claims, the Reorganized Company shall hold in the Disputed Claims Reserve Account and reserve all Pro Rata Distributions to which such holder of a Disputed Claim would otherwise be entitled to receive on the Effective Date, for the benefit of such holder, in either: (a) the Pro Rata amount of the claim to be paid based on the full Amount claimed by the holder of such Claim; or (b) the Pro Rata amount of the Claim to be paid based on the Amount of such Claim as estimated or allowed by Bankruptcy Court Order, provided, however, that no reserve shall be necessary on account of unliquidated Class 5 Claims and such Claims shall become disallowed, unless and until the holder of such Claim shall obtain a Bankruptcy Court Order estimating such Claim for the purpose of calculating a proper reserve prior to the allowance thereof by Bankruptcy Court Order. No Claimant shall be entitled to recover any Distributions made to holders of Allowed Claims regardless of any delay in obtaining an order allowing or estimating a Disputed Claim or an unliquidated Claim. The Reorganized Company shall have the responsibility of liquidating and/or otherwise resolving General Unsecured Claims which are Disputed Claims. After a Final Order has been entered or other final resolution has been reached with respect to all Disputed Claims, the Reorganized Company shall distribute each Claimant's percentage share in accordance with the Plan, but in no event no later than sixty (60) days after the entry of such order, pursuant to

the terms of the order allowing the Claim and the terms of this Plan, with any Distributions reserved by the Reorganized Company in an Amount greater than that required to be distributed as a result of the order allowing such Disputed Claim becoming property of the Reorganized Company for Distribution Pro Rata to the respective holders of Allowed General Unsecured Claims in Class 5.

The Claim of Westbrook LP is disputed by the Company and its members against Westbrook LP due to its acts and omissions before the Petition Date in connection with its note and trust deed against the Real Property.  An adversary proceeding was filed against Westbrook LP to assert those claims. All rights and claims of the Plan Proponent against Westbrook LP, or against any other person or entity, shall pass to the Reorganized Company. The right to suspend Plan payments to Westbrook LP during the pendency of this litigation is reserved to the Reorganized Company unless otherwise ordered by the Bankruptcy Court.

**3. Unclaimed Distributions.**

**a. Safeguarding Unclaimed Distributions.**

All Unclaimed Distributions shall be held by the Reorganized Company in the Distribution Fund for the later of one hundred and eighty (180) days following the date of Distribution or the date upon which the Claim is Allowed. Such Distributions shall be held solely for the benefit of the holders of Allowed Claims and Allowed Administrative Claims who have failed to claim such Distributions and shall be released from the Distribution Fund and delivered to such holder, net of any taxes or other applicable charges required to be

paid by the Reorganized Company in respect thereof, upon presentation of proper proof by such holder of its entitlement thereto.

**b. Release of Unclaimed Distributions.**

After one hundred and eighty (180) days, the Unclaimed Distributions (including interest thereon) may be released by the Reorganized Company from the Distribution Fund and in such case they shall constitute an Excess Reserve.

**c. Excess Reserves.**

All Excess Reserves shall be distributed to holders of Allowed Class 5 Claims or Class 6 Interests, Pro Rata.

**B. Form of Distributions.**

Any cash payment to be made pursuant to the Plan may be made by a check or wire transfer or as otherwise required.

**C. Rounding.**

Fractions of cents will not be distributed. Therefore, whenever a payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent.

**D. Remedies Upon Default.**

The Reorganized Company will have a number of obligations which it must perform in order to consummate the Plan. Many of these obligations will be required to be performed on or shortly after the Effective Date of the Plan.  The obligations under the Plan include such things as: (1) paying allowed administrative, priority and convenience claims; (2) making payments to secured creditors; and (3) making Distributions to Unsecured Creditors.

If there is an inability on the part of Reorganized Company to substantially consummate the Plan, or if there is a material default

by the Reorganized Company with respect to the Plan, any creditor, party in interest or the United States trustee may request the Bankruptcy Court to: (1) convert the bankruptcy case to a case under Chapter 7 of the Bankruptcy Code; or (2) dismiss the bankruptcy case. Upon such request, and if appropriate cause is shown, the Bankruptcy Court may convert of dismiss the case, whichever is in the best interest of creditors and the estate.  If the cause for conversion or dismissal is the failure to make a required payment under the Plan, a creditor or party in interest must give the Reorganized Company thirty (30) days written notice of the default in the Plan payment and the opportunity to cure the default.  If the Reorganized Company fails to cure the default, a motion to dismiss or convert may be filed.  In addition, a creditor or party in interest may exercise any other rights under any applicable law.

**ARTICLE IX: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

All executory contracts and unexpired leases set forth in Exhibit "G" to the Disclosure Statement shall be assumed by the Company, pursuant to Code §§365 and 1123. All other executory contracts or unexpired leases, if any, shall be rejected. Any party to an executory contract or unexpired lease that is rejected shall be required to file a Proof of Claim with the Bankruptcy Court no later than fifteen (15) days after entry of the Confirmation Order.

All such claims shall be classified as Class 5 Claims and shall receive Class 5 treatment under the Plan.

**ARTICLE X: CONDITIONS PRECEDENT.**

**A. Conditions Precedent to Confirmation.**

The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Article X, ¶C.

**Debtor-in-Possession's Plan of Reorganization Dated 07/06/10 Case No. 10-05750-MM-11**

The Bankruptcy Court shall have approved by Final Order a Disclosure Statement with respect to the Plan in form and substance reasonably acceptable to the Plan Proponent.

The Bankruptcy Court shall have approved a sale of the Real Property free and clear of liens, claims and interests before or during the Plan confirmation process.  Said sale may be made subject to overbid and may occur before Plan Confirmation or be made in lieu of Plan Confirmation as permitted by the Code and the Order of the Bankruptcy Court.

The Confirmation Order shall be in form and substance reasonably acceptable to the Plan Proponent.

**B. Conditions Precedent to Consummation of the Plan.**

The following are conditions precedent to the occurrence of the Consummation Date, each of which may be satisfied or waived in accordance with Article X,¶C, including the passage of 60 days after the date on which the Bankruptcy Court enters the Confirmation Order and the commencement of Distributions under the Plan.

The date of Confirmation shall have occurred and the Confirmation Order shall, among other things, provide that:

(a) The provisions of the Confirmation Order are nonseverable and mutually dependent;

(b) Except as expressly provided in the Plan or the Confirmation Order, as allowed by applicable law, the Company is discharged effective upon the date of Confirmation from any "debt" (as that term is defined in Code §101(12);

(c) the Company's liability in respect thereof is extinguished completely, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted,

fixed or unfixed, matured or unmatured, disputed or undisputed, legal or equitable, or known or unknown, or that arose from any agreement of the Company that has either been assumed or rejected in the Case or pursuant to the Plan, or obligation of the Company incurred before the date of Confirmation, or from any conduct of the Company prior to the date of Confirmation, or that otherwise arose before the date of Confirmation, including, without limitation, all interest, if any, on any such debts, whether such interest accrued before or after the Petition Date;

(d) Except as provided in connection with the sale of the Real Property subject to Bankruptcy Court approval free and clear of liens, claims and interests, the Plan does not provide for the liquidation of all or substantially all of the property of the Company and its Confirmation is not likely to be followed by the subsequent liquidation of the Reorganized Company or the need for further financial reorganization; and

(e) No request for revocation of the Confirmation Order under Code §1145 shall have been granted.

**C. Waiver of Conditions to Confirmation and to Consummation.**

The conditions set forth in this Article X may be waived by the Plan Proponent without notice or a hearing. The failure to satisfy or waive any condition to Confirmation or the date of Consummation may be asserted by the Plan Proponent regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Plan Proponent). The failure of the Plan Proponent to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**ARTICLE XI: REVOCATION, MODIFICATION AND AMENDMENT.**

Subject to the restrictions on Plan modifications set forth in Code §1127, the Plan Proponent reserves the right to alter, amend or modify the Plan so long as such alteration, amendment or modification is consistent with the requirements of Code §§1122 and 1123, and before the substantial consummation of the Plan.  The Plan Proponent reserves the right to revoke or withdraw the Plan so long as such revocation or withdrawal is prior to the date of Confirmation. If the Plan Proponent withdraws or revokes the Plan in accordance with this section, or if Confirmation does not occur, then the Plan shall be null and void in all respects.

**ARTICLE XII: EFFECT OF CONFIRMATION.**

**A. Discharge of Claims and Termination of Interests.**

Except as otherwise provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, including any interest accrued on Claims from the Petition Date.  Except as otherwise provided in the Plan or the Confirmation Order, and as allowed by applicable law, Confirmation shall discharge the Company from all Claims or other debts that arose before the date of Confirmation, and all debts of the kind specified in Code §§502(g), 502(h) or 502(i), whether or not: (i) a proof of Claim based on such debt is Filed or deemed Filed pursuant to Code §501; (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of a Claim based on such debt has accepted the Plan.

As of the date of Confirmation, except as provided in the Plan or Confirmation Order, all entities shall be precluded by the Confirmation Order from asserting against the Company, the Estate of the Company, the Reorganized Company, its successors or its property, any other or further Claims, debts, rights, causes of action, liabilities based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the date of Confirmation. In accordance with the foregoing, except as provided in the Plan or Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Company, pursuant to Code §§524 and 1141, and such discharge shall void any judgment obtained against the Company at any time, to the extent that such judgment relates to a discharged Claim.

**B. United States Trustee's Fees & Reports.**

United States Trustee's Fees will be paid in accordance with 28 U.S.C. §1930(a)(6). The United States Trustee's fees shall be paid on a quarterly basis and shall not accrue. Post-confirmation quarterly reports will be filed in accordance with the United States Trustee Chapter 11 Operating and Reporting Requirements and forms.

**ARTICLE XIII:  JURISDICTION RETAINED.**

The Bankruptcy Court shall retain jurisdiction:

(i)      to determine the allowance of Claims and Interests upon the timely objection thereto;

(ii)     to approve, pursuant to Code §365, the assumption, assignment or rejection of any executory contract or unexpired lease of the Company except as otherwise provided in the Plan;

(iii)   to determine requests for payments of Claims entitled to priority under Code §507(a)(1), including compensation of parties entitled thereto;

(iv)   to resolve controversies and disputes regarding the interpretation of the Plan or any exhibit thereto;

(v)   to implement the provisions of the Plan and enter orders in aid of Confirmation and consummation of the Plan;

(vi)   to adjudicate any disputes with holders of Claims or Interests or any causes of action;

(vii)   to hear and determine all pending or future controversies, suits, and disputes that may arise under the Plan including, without limitation, disputes between the Company and the claimholders and controversies arising in connection with the interpretation of the Plan, including any and all schedules, documents, and exhibits hereto, or any documents intended to implement the provisions of the Plan;

(viii)   to consider any modification, alteration, or amendment to the Plan;

(ix)   to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, including any Exhibit thereto, or in any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

(x)   to determine such other matters as may be provided for in the Confirmation Order or other orders of the Bankruptcy Court

as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(xi)    to enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case; and

(xii)   to enter a final decree closing the Chapter 11 Case.

**ARTICLE XIV: MISCELLANEOUS PROVISIONS.**

**A. Discharge of the Company.**

To the extent allowed by applicable law, all property distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all debts, demands, liabilities and Claims of any nature whatsoever against the Company or any of its assets or properties, and, except as otherwise provided herein or in the Confirmation Order. Upon the date of Confirmation, the Company shall be deemed discharged and released under Code §1141(d)(1)(A) from any and all debts as appropriate. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Company, subject to the occurrence of the Consummation Date.

**B. Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Company, the holders of Claims, the holders of Interests, and their respective successors and assigns.

**C. Revocation, Withdrawal or Non-Confirmation.**

**1. Right to Revoke or Withdraw.**

The Plan Proponent reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date.

**2. Effect of Withdrawal, Revocation or Non-Confirmation.**

If the Plan Proponent revokes or withdraws the Plan in accordance with Article XI prior to the date of Confirmation, or if Confirmation or the Consummation Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an Amount certain any Claim or Class of Claims unless such settlement or compromise is also embodied in a separate agreement), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void. In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims by or against the Company or any other person, to prejudice in any manner the rights of the Company or any person in any further proceedings involving the Company, or to constitute an admission of any sort by the Company or any other person.

**D. Notices.**

Any notice required or permitted to be provided to the Plan Proponent shall be in writing and served by: (a) certified mail, return receipt requested; (b) hand delivery; or (c) overnight delivery service to be addressed as follows:

```
Fanita Ranch, LP, A California Limited Partnership
2055 Corte Del Nogal
Carlsbad, CA 92011           With a copy to:


WILLIAM A. SMELKO, APC
3333 Camino Del Rio South, Suite 140
San Diego, CA 92108
```

**E. Term of Injunctions or Stays.**

Unless otherwise provided for in the Plan or the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under Code §§105 or 362, or otherwise, and in existence on the date of Confirmation, shall remain in full force and effect until the Effective Date.

**F. Prepayment.**

Unless the Plan or Confirmation Order otherwise provides, the Reorganized Company shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; provided, however, that any such prepayment shall not violate, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

**G. Choice of Law.**

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or California General Corporation Law are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan or this Disclosure Statement, the rights and obligations arising under the Plan and this Disclosure Statement shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflict of laws of the State of California.

**H. Headings.**

The headings are for convenience only and will not control or affect the meaning or construction of the provisions of this Plan. When a reference is made in this Plan to a Section, Article, Exhibit or Schedule such reference shall be to a Section, Article, Exhibit or Schedule of this Plan unless otherwise indicated. Whenever "include,"

1  "includes," or "including" is used in this Plan, it shall be deemed to

2  be followed by the words "without limitation." Whenever "or" is used

3  in this Plan it shall be construed in the nonexclusive sense.

4  July 6, 2010      /S/  Michael Armstrong          /s/ William A. Smelko
5                    General Member                  WILLIAM A. SMELKO, APC
                     Fanita Ranch, LP,               Attorneys for
6                    A California LP                 Debtor-in-Possession

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Debtor-in-Possession's Plan of Reorganization Dated 07/06/10 Case No. 10-05750-MM-11**