MICHAEL D. BRESLAUER [SBN 110259]
mbreslauer@swsslaw.com
YOSINA M. LISSEBECK [SBN 201654]
ylissebeck@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone: (619) 231-0303
Facsimile: (619) 231-4755

JOHN M. MOSCARINO (Bar No. 122105)
jmoscarino@mmwf.com
JOSEPH CONNOLLY (Bar No. 53329)
connollyjose@yahoo.com
McLeod, Moscarino, Witham & Flynn LLP
707 Wilshire Blvd., Suite 5000
Los Angeles, CA 90017-3501
Telephone (213) 627-3600
Facsimile (213) 627-6290

Attorneys for Defendant, Counterclaimant
and Cross-Defendant, Westbrook Fanita Ranch, L.P.

WILLIAM P. FENNELL, ESQ.
william.fennell@fennellLaw.com
TRACY L. SCHIMELFENIG, ESQ.
tracy.schimelfenig@fennellLaw.com
Law Office of William P. Fennell APLC
1111 Sixth Avenue, #404
San Diego, CA 92101-5211
Telephone (619) 325-1560
Facsimile (619) 325-1558

Proposed Attorneys for Debtor-in-Possession,
Fanita Ranch, L.P.

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | CASE NO. 10-05750-MM11 |
| FANITA RANCH, L.P., a California limited partnership, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WESTBROOK FANITA RANCH, L.P. AND FANITA RANCH, L.P.'S JOINT MOTION FOR ORDERS (1) APPROVING SETTLEMENT ALLOWING WESTBROOK'S SECURED CLAIM AND PROVIDING FOR RELIEF FROM STAY (2) DISMISSING DEBTOR'S CROSS COMPLAINT AND GUARANTY BANK'S COMPLAINT AND (3) REMANDING WESTBROOK'S CROSS CLAIMS TO THE SAN DIEGO SUPERIOR COURT** |
| Debtor-in-Possession. | |

P:00566476.5:60434.002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Date:  October 19, 2010
Time:  9:00 a.m.
Dept:  One (1)

Honorable Margaret M. Mann

P:00566476.5:60434.002

**TABLE OF CONTENTS**

Page(s

I.     RELEVANT FACTUAL BACKGROUND ................................................................. 1

       A.     The 2003 Transaction Between Westbrook and Barratt .................... 2

       B.     The 2005 Guaranty Bank Loan ................................................ 2

       C.     The Guaranty State Court Action ............................................ 3

       D.     The Bankruptcy Proceedings Before This Court ........................... 4

       E.     The August 5, 2010 Rulings In The Adversary Proceeding ............... 5

       F.     The Terms Of The Settlement Agreement ................................... 7

II.    THE COURT SHOULD APPROVE THE SETTLEMENT ............................... 9

       A.     Standard For Approval .......................................................... 9

       B.     The Proposed Settlement Is Fair & Equitable ............................. 11

III.   THE ADVERSARY CASE SHOULD BE DISMISSED ................................... 14

IV.    CONCLUSION .................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Cosoff v. Rodman (In re W.T. Grant Co.)*
  699 F.2d 599 (2d Cir. 1983) ....................................................................... 10

*Depoister v. Mary M. Holloway Foundation*
  36 F. 3d 582 (7th Cir. 1994)...................................................................... 10

*Estate of Spirtos v. One San Bernardino County Superior Court*
  443 F.3d 1172 (9th Cir. 2006)................................................................... 15

*In re Blair*
  538 F.2d 849 (9th Cir. 1976)..................................................................... 10

*In re Dominelli*
  820 F. 2d 313 (9th Cir. 1987).................................................................... 15

*In re Pennsylvania Truck Lines, Inc.*
  150 B.R. 595 (E.D. Pa. 1992) .................................................................... 10

*In re T.S.P. Industries, Inc.*
  , 117 Bankr. 375 (Bankr. N.D. Ill. 1990)................................................... 15

*Martin v. Kane (In re A & C Props.)*
  784 F.2d 1377 (9th Cir. 1986) ............................................................... 9, 10

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*
  390 U.S. 414 (1968) ............................................................................ 10, 11

*United Savings Ass'n v. Timbers of Inwood Forest Assoc., Ltd.*
  484 U.S. 365 (1988) .................................................................................. 12

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*
  839 F.2d 610 (9th Cir. 1988) .................................................................... 10

**CALIFORNIA CASES**

*Guaranty Bank v. Westbrook Fanita Ranch, L.P. et al.*
  Case No. 37-2009-00065257........................................................... 1, 2, 3, 4

*In re Fanita Ranch, L.P.*
  United States Bankruptcy Court for the Southern District of California
  Case No. 09-04958 ..................................................................................... 3

*Preserve Wild Santee v. City of Santee, et al.*
    San Diego County Superior Court Case No. 37-2008-00075168-CU-TT-C-TL
    ("Preserve Wild Santee I") ........................................................................3

*Preserve Wild Santee v. City of Santee, et al.*
    San Diego County Superior Court Case No. 37-2009-00097042-CU-TT-C-TL
    ("Preserve Wild Santee II") ......................................................................3


**FEDERAL STATUTES**

11 U.S.C. § 362(d)(2) and (3) .....................................................................12

28 U.S.C. § 157(b) ...................................................................................14

Bankruptcy Code
    § 323(a) ...........................................................................................15
    § 362(d)(2) ........................................................................................7
    § 544 ........................................................................................ passim

Section 1107 ..........................................................................................14


**OTHER AUTHORITIES**

*10 Collier's on Bankruptcy* 15th Ed.
    ¶ 9019.02 at 9019-4,5 ..........................................................................10

Bankruptcy Rule 9019(a) ...........................................................................9

1    WESTBROOK FANITA RANCH, L.P. ("Westbrook") and Fanita Ranch, L.P. ("Fanita")

2    (collectively, "Movants"), jointly submit this Memorandum of Points and Authorities in

3    support of their Joint Motion to Approve Settlement and to Dismiss Adversary Complaint. A

4    successful settlement has been reached, resulting from negotiation in good faith, and

5    utilizing the sound business judgment of the Debtor in Possession.  As more fully described

6    below, the settlement allows Westbrook's first priority claim, grants relief from stay, provides

7    for potential payments to certain unsecured creditors, calls for dismissal of the adversary

8    proceeding, and provides for remand of Westbrook's cross claim against Guaranty Bank.  It

9    is well within the bounds of reasonableness based on the totality of facts and circumstances

10   of this case and the motions to approve the settlement and to dismiss the Adversary

11   proceeding.

12                                              I.

13                          **RELEVANT FACTUAL BACKGROUND**

14        The Debtor, Fanita Ranch, L.P. (the "Debtor" or "Fanita"), is a single asset real estate

15   company which owns approximately 2600 acres of real property located in Santee,

16   California, known as the Fanita Ranch (the "Property").  The Debtor seeks approval of a

17   settlement it reached with secured creditor Westbrook Fanita Ranch, L.P. ("Westbrook").

18   The Settlement was reached after (a) protracted litigation about Westbrook's rights in the

19   San Diego County Superior Court; (b) the filing of this Bankruptcy case and removal of the

20   Superior Court case to this Court; and (c) this Court's August 5, 2010 ruling which dismissed

21   the Debtor's § 544 claim, denied the Debtor and Guaranty Bank's ("Guaranty") motions for

22   summary judgment and cleared the way for the introduction of parol evidence at trial; and

23   (d) the Debtor's realization that it is not likely to successfully reorganize because a proposed

24   plan of reorganization would be dependent upon a sale to a proposed buyer who does not

25   have a funding source and is not likely to have funding in the foreseeable future.  Simply

26   put, both the Adversary Proceeding and the Bankruptcy have matured substantially since this

27   case was filed in April of 2010 and the Debtor is now convinced that this settlement is in the

28   very best interests of the estate.

### A.   The 2003 Transaction Between Westbrook and Barratt[1]

In July 2003, Westbrook sold the Property to Barratt American Incorporated ("Barratt"). Barratt executed an Entitlement Payment Promissory Note Secured by Deed of Trust dated June 30, 2003 (the "Entitlement Payment Note"); and (2) an Entitlement Payment Deed of Trust, Security Agreement and Fixture Filing dated June 30, 2003 (the "Entitlement Payment Deed of Trust"). The Entitlement Payment Deed of Trust is a first lien on and affecting the Property.

J. Michael Armstrong ("Armstrong") was principally responsible for negotiating the terms of the acquisition of the Property on Barratt's behalf. He has direct personal knowledge of Barratt's intent in negotiating and deciding upon the terms of the Entitlement Payment Note and the Entitlement Payment Deed of Trust. (Armstrong Decl. ¶ 5.)

### B.   The 2005 Guaranty Bank Loan

In the Fall of 2005, Barratt and Guaranty Bank ("Guaranty") began discussing a potential loan backed by the Property. Barratt provided Guaranty with all of the Westbrook transaction documents. Guaranty reviewed all those documents. After inspecting the Westbrook documents, Guaranty knowingly agreed to assume a second lien position on the Property. Accordingly, in December 2005, Barratt conveyed the Property to Fanita by Grant Deed. Guaranty then loaned Fanita money using the Property as collateral, and encumbering the property with a $25 Million Construction Deed of Trust in Guaranty's favor.

Both the transfer and the encumbrance of the Property gave Westbrook the right to accelerate under the terms of the Entitlement Payment Note. At that time, Tentative Map Approval, as defined in the Entitlement Payment Note, had not yet occurred. Accordingly, pursuant to the terms of the Entitlement Note, Westbrook had the right to accelerate and recover the sum of $15 Million as agreed liquidated damages (the "Westbrook LD Claim")

---

[1]  The Foundation for the undisputed factual recitals of the parties' transactional and litigation history and the Debtor's history as an involuntary debtor have been set forth in prior filings in this case. Those documents are not filed again here, but the Court is requested to take Judicial Notice of the supporting declarations and exhibits filed in the Adversary proceeding in opposition to the Motions for Summary Judgment (Adversary Proceeding Docket Nos. 46 and 47).

1  in lieu of the Entitlement Payment, plus interest at the rate of 13% per annum, costs and
2  fees.  However, Westbrook was unaware of the transfer when it was made.

3  In December of 2007, the City of Santee approved of a Tentative Tract Map for the
4  Property.  Thereafter, opponents of such development commenced suit, attempting to halt
5  the development.  Two actions now exist with respect to the Property, known as *Preserve*
6  *Wild Santee v. City of Santee, et al.*, San Diego County Superior Court Case No. 37-2008-
7  00075168-CU-TT-C-TL ("Preserve Wild Santee I") and *Preserve Wild Santee v. City of*
8  *Santee, et al.*, San Diego County Superior Court Case No. 37-2009-00097042-CU-TT-C-TL
9  ("Preserve Wild Santee II" and collectively with Preserve Wild Santee I, the "Environmental
10  Litigation").  The Environmental Litigation is currently stayed because of both Fanita's and
11  Barratt's separate bankruptcy cases.

12  When Westbrook discovered the transfer, it acted as it was entitled under the
13  Entitlement Payment Note, to accelerate all sums due at that time.  Ultimately, after
14  unsuccessful efforts to resolve the issue surrounding payment of the debt, Westbrook
15  commenced a nonjudicial foreclosure under the Entitlement Payment Deed of Trust by
16  recording a Notice of Default in the Official Records of San Diego County on December 26,
17  2008 (the "Westbrook NJF").  Thereafter Westbrook published a notice of Trustee's sale in
18  furtherance of the Westbrook NJF.  The Westbrook NJF is stayed.

19  **C.    The Guaranty State Court Action**

20  On April 1, 2009, Guaranty commenced suit against Westbrook and Fanita in the
21  San Diego County Superior Court in an action known as *Guaranty Bank v. Westbrook Fanita*
22  *Ranch, L.P. et al.*, Case No. 37-2009-00065257 (the "Superior Court Case"), seeking
23  declaratory and injunctive relief to prevent the Westbrook NJF from being completed.

24  On April 14, 2009, three creditors of Fanita commenced an involuntary bankruptcy
25  case captioned *In re Fanita Ranch, L.P.*, United States Bankruptcy Court for the Southern
26  District of California Case No. 09-04958 (the "2009 Involuntary Bankruptcy").  Guaranty and
27  Westbrook filed separate Motions For Relief From Stay, where Guaranty asserted that the
28  Property had a value of $26 million.  (2009 Involuntary Bankruptcy Docket Nos. 7 and 19.)

1  Both motions were granted.   (2009 Involuntary Bankruptcy Docket Nos. 17 and 35.)
2  Thereafter, the 2009 Involuntary Bankruptcy was dismissed by order entered on August 17,
3  2009. (2009 Involuntary Bankruptcy Docket No. 39.)

4       Following dismissal of the 2009 Involuntary Bankruptcy, Guaranty filed a motion for
5  a preliminary injunction in the Superior Court Case seeking to enjoin the Westbrook NJF.  In
6  opposition, Westbrook filed a declaration signed by Armstrong in April 2009 (the
7  "Armstrong 2009 Declaration").  Among other things, Armstrong testified that it was Barratt's
8  intent that liquidated damages be secured and that Barratt had agreed with Westbrook that
9  the liquidated damages were a reasonable estimate of the damages Westbrook would suffer
10  in the event that Barratt breached its obligations to Westbrook.

11       The Superior Court granted Guaranty Bank's motion and issued its preliminary
12  injunction.  Fanita then filed a verified answer denying the allegations made by Guaranty
13  Bank in its complaint.  Armstrong was deposed twice in the Superior Court Case and
14  reaffirmed the statements in the Armstrong Declaration.  Armstrong and the Debtor on
15  August 16, 2010 and within the Proposed Settlement Agreement described herein have
16  acknowledged and reaffirmed the truth and accuracy of the Armstrong 2009 Declaration.
17  During the expert phase of the litigation, Guaranty's valuation expert, Roger Lopez, testified
18  that the value of the property was $26 million.  The Superior Court held a trial readiness
19  conference in anticipation of an April 10, 2010 trial.

20      **D.**   **The Bankruptcy Proceedings Before This Court**

21       On April 7, 2010, just three days prior to the date set for trial of the Superior Court
22  Case, the Debtor filed this bankruptcy case.  On the very next day, April 8, 2010, the Debtor
23  removed the Superior Court Case to this Court (the "Adversary Proceeding").

24       On May 28, 2010, the Debtor filed in the Adversary proceeding its "Cross Claim
25  Objecting to Westbrook's Secured Claim & Requesting Affirmative and Declaratory Relief"
26  (the "Cross Claim") in the Adversary Proceeding.  In the Cross Claim, the Debtor alleged a
27  cause of action under Bankruptcy Code § 544 and, in addition, alleged claims for
28  declaratory relief that duplicated the claims made by Guaranty Bank in the Superior Court

P:00566476.5:60434.002                                        -4-

1  Case, namely that the liquidated damages under the Entitlement Payment Note were either

2  invalid or, if valid, were unsecured.  When the Cross Claim was filed, the Debtor believed

3  that there was at least a chance that the Court could make a ruling in its favor without

4  considering evidence of intent based on Armstrong's past experience in a prior litigation

5  matter.  (Armstrong Decl. ¶ 4.)

6  　　　On July 8, 2010, the Debtor filed its proposed Plan of Reorganization (the "Plan") in

7  the Bankruptcy Case.  (Docket No. 32)  The Plan is based wholly upon a sale of the Property

8  as open space and not upon the Debtor's acts to further entitle the Property, either for build

9  out or for future sale.

10  　　　On July 27, 2010, the Debtor filed its Motion to sell the Property to the Endangered

11  Habitats Conservancy, a California not for profit corporation (the "Proposed Buyer" or

12  "EHC"), for total consideration of $36 Million.  (Docket No. 49)  The sale is based on a

13  Purchase and Sale Agreement and Escrow Instructions dated as of June 11, 2010 (the

14  "Purchase Agreement").  The Purchase Agreement provides, among other terms, that the

15  Buyer provided a $100 deposit, has one year within which to fund the sale and close escrow

16  to acquire the Property, and has the opportunity to further extend the escrow for an

17  additional unspecified period of time. (*Id.*)

18  　　　The sale motion was not supported by any evidence or a memorandum of points and

19  authorities. On the day the motion was filed, the Debtor's proposed general bankruptcy

20  counsel William Smelko, was disqualified as general bankruptcy counsel for the Debtor.

21  The time for supplementing the sale motion has now passed.

22  　　　On July 30, 2010, Westbrook filed a proof of claim in this court asserting that it holds

23  a valid and allowable first priority secured claim against the Property in the Bankruptcy Case

24  in the sum of $20,831,669, plus accruing interest costs and fees (together with the

25  Westbrook LD Claim, the "Westbrook Secured Claim"). The same day, Guaranty filed a

26  proof of claim asserting its secured claim of $31,464,640.69.

27  　　**E.**　　**The August 5, 2010 Rulings In The Adversary Proceeding**

28  　　　With the exception of the Debtor's purposed § 544 claim, the claims asserted by the

1  Debtor and Guaranty in the Adversary Proceeding are identical.   Both the Debtor and

2  Guaranty argued that (a) the liquidated damages were invalid as a matter of California law;

3  and (b) if valid, the liquidated damages were not secured under the Entitlement Payment

4  Deed.  In making those claims, the Debtor and Guaranty relied solely on the language of the

5  Entitlement Deed and argued that parol evidence should not be considered.  (Armstrong

6  Decl. ¶ 4)  Westbrook, on the other hand, argued that there was, at the very least, an

7  ambiguity that required the consideration of parol evidence.   The facts relating to the

8  disposition were set forth in extensive summary judgment papers filed by all of the parties. )

9       On July 23, 2010 the Court issued its Tentative Decisions in the Adversary

10  Proceeding for both Guaranty's and the Debtor's motions for summary judgment and

11  Westbrook's Motion to dismiss the Debtor's claim under Bankruptcy Code Section 544

12  (Docket Nos.68 and 69, respectively).  On August 5, 2010 after argument from the parties,

13  the Court confirmed its Tentative Decisions.  Orders have been entered denying Guaranty's

14  and the Debtor's Motions for Summary Judgment (Docket No. 79) and granting Westbrook's

15  Motion to dismiss the §544 claim (Docket No. 81) In ruling, this Court found the Entitlement

16  Payment Note and the Entitlement Payment Deed of Trust were ambiguous and determined

17  that the ambiguity required the introduction of parol evidence at trial to aid in interpretation

18  of the documents.

19       The Court's rulings on the Motion to Dismiss and Motions for Summary Judgment

20  have caused the Debtor to reevaluate its Cross Claim.  (Armstrong Decl. ¶ 5)  Armstrong

21  acknowledges that he testified when the case was pending in state court and that his

22  testimony at trial would be consistent with the Armstrong 2009 Declaration and his prior

23  deposition testimony. (Armstrong Decl. ¶ 6)  The Debtor is unaware of the testimony of any

24  witness who could truthfully testify in any manner that is inconsistent with Armstrong's

25  testimony and that of Westbrook representative Garrett Solomon about the intent underlying

26  the documents memorializing the transaction between Westbrook and Barratt.  (Armstrong

27  Decl. ¶ 7)

28  ///

1   This leaves the Adversary Proceeding in an extremely odd posture:  The Debtor and

2   Guaranty bear the burden of proof, the Court will consider parol evidence, the Debtor has

3   no parol evidence (and both the Debtor and Westbrook believe that Guaranty has no parol

4   evidence) which supports the interpretation urged in their pleadings, and the Debtor's

5   representative will be testifying in a manner that is inconsistent with the theory espoused in

6   the Debtor's Cross Claim and Guaranty's Complaint.   The recent disqualification of the

7   Debtor's general counsel and the impact of this Court's recent rulings have also caused the

8   Debtor to reevaluate its general case and to reevaluate the direction in which the bankruptcy

9   is headed.    This reevaluation has resulted in a settlement between the Debtor and

10  Westbrook.

11          **F.       The Terms Of The Settlement Agreement**

12          With the assistance of proposed general bankruptcy counsel, the Law Office of

13  William P. William Fennell, APLC, the Debtor entered into the Settlement Agreement with

14  Westbrook.  The recitals contained in the Settlement Agreement contain both the Debtor's

15  and Mr. Armstrong's acknowledgements that the proposed sale to environmental groups is a

16  transaction which has no chance of closing within a reasonable period of time.   It is

17  acknowledged that based on Mr. Armstrong's knowledge, (i) the Proposed Buyer has no

18  internal financial capacity to close the proposed sale and must rely on outside funding

19  sources;  (ii) the Proposed Buyer has no firm commitments of any type whatsoever from any

20  proposed funding source; (iii) it is unlikely that the Proposed Buyer will perform its

21  obligations to close the escrow within one year of the effective date of the Purchase

22  Agreement; (iv) Fanita has no equity in the Property; and, (v) the Property is not necessary to

23  any effective reorganization, as that term is defined in Bankruptcy Code Section 362(d)(2).

24  (Armstrong Decl. ¶ 8)

25          As set forth in the Settlement Agreement, the settlement is in the best interest of

26  Fanita and Fanita's bankruptcy estate because (i) Fanita does not believe that it has any

27  reasonable possibility of prevailing on its Cross Claim now that the Bankruptcy Code §544

28  claim has been dismissed and the Bankruptcy Court will be considering parol evidence,

1  including Armstrong's testimony; (ii) there will be substantial attorney's fees and costs
2  associated with further proceedings in the Adversary Case; (iii) Westbrook may be entitled to
3  add its attorney's fees and costs as part of its allowable secured claim; (iv) Fanita does not
4  believe a Plan is feasible; and, (v) Fanita believes the terms of the Settlement Agreement
5  provide the best opportunity for unsecured creditors to recover some portion of their claims,
6  albeit from Westbrook.  (Armstrong Decl. ¶ 9)

7          The Settlement is subject to bankruptcy court approval and defines its Effective Date
8  as 15 days after the court enters an order approving the Settlement.  The key provisions of
9  the agreement are that:

10             •    Westbrook shall have allowed in the Bankruptcy Case a secured
11     claim in the sum of the Westbrook Secured Claim, without defense, offset or
       reduction.  The Westbrook Secured Claim shall be deemed to be a first lien on
12     the Property, senior and prior to all other liens, claims, charges and interests of
       any third party or entity, except for real property taxes accrued and owing on
13     the Property and owing to the San Diego County Tax Collector.

14             •    Fanita will (i) dismiss the Fanita Cross Claim with prejudice and
15     (ii) obtain entry by the Bankruptcy Court of an order dismissing with prejudice
       Guaranty Bank's complaint in the Adversary Proceeding and remanding
16     Westbrook's Cross Complaint against Guaranty Bank to the San Diego
17     Superior Court.

18             •    Westbrook shall be granted irrevocable relief from the
       Automatic Stay for all purposes consistent with this Agreement to continue,
19     conduct and conclude the Westbrook NJF on or after November 16, 2010.

20             •    The Automatic Stay will be lifted and terminated as to Fanita for
21     all purposes in connection with the Environmental Litigation.

22             •    Prior to the completion of the Westbrook non-judicial
       foreclosure ("NJF"), Westbrook will reconvey all its right, title and interest in
23     the Entitlement Deed of Trust, cancel the Entitlement Payment Note and waive
24     all other claims, secured or unsecured, held or asserted against Fanita or the
       Property, if Westbrook is provided via wire transfer indefeasible cash in either
25     of the following sums:  (a)  $14.5 Million by the date which is ten (10)
26     business days from the Effective Date; or (b) $17.5 Million by November 30,
       2010.

27
28             •    Provided Westbrook completes the Westbrook NJF and a
       Trustee's Deed is recorded in Westbrook's (or its nominee's) name, upon

1  Westbrook's subsequent sale or other disposition of the Property within the
2  next twelve (12) months from the date of recordation of such Trustee's Deed,
   Westbrook will transfer to the creditors listed on Exhibit D to the Settlement
   Agreement, pro-rata, (i) the sum of $1 Million and, further, (ii) if and only if
3  Westbrook receives cash from such sale in excess of the sum of the $1 Million
   set forth in subparagraph (i), above, and the Westbrook Secured Claim, net of
4  closing costs, broker's commissions and payment of secured taxes, an
   additional $1 Million, pro-rata.
5

6  (Armstrong Decl. ¶9 and Ex. A.)

7       As more fully explained below, this Settlement is premised upon the practical realities

8  of this case, namely (a) an honest assessment of the merits of the Adversary Proceeding; and

9  (b) a realistic evaluation of the prospect of implementing a Plan that is based on a sale to

10  Environmental Groups who do not have funding for the proposed purchase.  The settlement

11  also places in the proper light the facts that (i) Guaranty knew of the "due-on" provisions of

12  the Westbrook Entitlement Deed of Trust before it made its loan to Fanita; (ii) the Settlement

13  Agreement does not purport in any way to alter the rights of Guaranty as a junior lienholder,

14  inclusive of its right to bid at any Westbrook non-judicial foreclosure sale to protect its

15  interests as it perceives them; and, (iii) Westbrook is offering a discount of over $6.33

16  Million to the Debtor for a quick payment to Westbrook.

17  **II.**

18  **THE COURT SHOULD APPROVE THE SETTLEMENT**

19  **A.**    **Standard For Approval**

20       Bankruptcy Rule 9019(a) permits a trustee/debtor to compromise and settle claims by

21  and against the bankruptcy estate, subject to bankruptcy court approval.

22       The Ninth Circuit recognizes:  "[t]he purpose of a compromise agreement is to allow

23  the trustee and the creditors to avoid the expenses and burdens associated with litigating

24  sharply contested and dubious claims.  The law favors compromise and not litigation for its

25  own sake...."  *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380-1381 (9th Cir.

26  1986).  A settlement must be reasonable, given the particular circumstances of the case.  *Id.*

27  at 1381.

28

1    The United States Supreme Court has held that bankruptcy courts should approve

2  compromises and settlement if they are "fair and equitable." *Protective Comm. For Indep.*

3  *Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  The Ninth

4  Circuit has identified following factors a bankruptcy court should consider in determining

5  whether a proposed settlement is fair and equitable:

6    (a)    the probability of success in the litigation;

7    (b)    the difficulties, if any, to be encountered in the matter of collection;

8    (c)    the complexity of the litigation involved, and the expense,

9           inconvenience and delay necessarily attending it;

10   (d)    the paramount interest of the creditors and a proper deference to their

11          reasonable views in the premises.

12  *A & C Props.*, 784 F.2d at 1381; *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839

13  F.2d 610, 620 (9th Cir. 1988).

14    Approval of a settlement does not require the bankruptcy court to decide the merits of

15  the underlying litigation.  The TMT Rule does "not require the court to hold a full evidentiary

16  hearing or a "mini trial" before a compromise can be approved, "otherwise there would be

17  no point in compromising; the parties might as well go ahead and try the case."  10 *Collier's*

18  *on Bankruptcy* 15th Ed. ¶ 9019.02 at 9019-4,5, citing *Depoister v. Mary M. Holloway*

19  *Foundation*, 36 F. 3d 582, 586 (7th Cir. 1994)  and *In re Blair*, 538 F.2d 849, 851 (9th Cir.

20  1976) (Rejecting the notion that there must be a mini-trial on the merits of a proposed

21  compromise).  Rather, the bankruptcy court's sole responsibility is to "canvass the issues to

22  see whether the settlement falls below the lower point in the range of reasonableness."

23  *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quotations

24  omitted).  The bankruptcy court should reject the compromise only if it concludes that the

25  settlement falls below the lowest point in the range of reasonableness.  *In re Pennsylvania*

26  *Truck Lines, Inc.*, 150 B.R. 595, 601 (E.D. Pa. 1992).

27  / / /

28  / / /

**B.      The Proposed Settlement Is Fair & Equitable**

       **(i)      Probability of Success.**

The Supreme Court's mandate is that the bankruptcy court should "apprise itself of all the facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."  Further the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, … and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *In re TMT, supra*, 390 U.S. at 424, 88 S.Ct. at 1163.

This case presents a situation which perhaps is unique.  This Court, far from being presented with a proposed compromise "cold", in a matter without any context or court involvement,  is presented a proposed compromise on the heels of a highly contested and complex set of summary judgment motions.   Indeed, this Court, in becoming educated about this dispute, has had the benefit of literally hundreds of pages of specifically drafted pleadings and papers, and thousands of pages of exhibits presented within the past 60 days.  The Court has been presented both with the parties' views of the issues to be resolved, as well as the testimony of the witnesses to the contract at issue.  In addition, filed with this motion is evidence supplementing and adding further context to the evidence already presented.

What the evidence shows is quite stark:  there is only one view of the parties intent of the meaning of the contractual provisions in question.  Both sides plainly agree that when Barratt gave Westbrook a deed of trust to secure its obligations to both proceed to obtain appropriate entitlements and to secure various other obligations, they meant for it to secure Barratt's obligation to pay liquidated damages to Westbrook, and that such damages would take the place of entitlement payments if a breach came before entitlement payments could be liquidated and were owing.

So, the settlement embodies and reflects the Debtor's business judgment that a trial in the Adversary Proceeding is likely to result in a judgment in Westbrook's favor   on the merits.  And in the context of the facts and circumstances of this case, where the Debtor has

reached this point, and where the Debtor's principal (and Barratt's former principal) is one of the key witnesses regarding the parties' intent at the time of the drafting and execution of the Entitlement Payment Note and Deed of Trust, the Court can make an informed decision approving the compromise.

Additionally, Westbrook's ability to obtain relief from stay is also highly likely. As set forth above, the Settlement Agreement constitutes an agreement providing for lifting of the automatic stay by Fanita for purposes of both (i) Westbrook's nonjudicial foreclosure sale and (ii) the environmental litigation.   Stay relief is especially appropriate in light of the Debtor's belief of the compelling merits of Westbrook's position in the Adversary Proceeding and it's likely allowed first priority secured claim.   The Debtor has admitted that it has no equity in the Property.  That said, given Westbrook's $20.8 Million first lien claim and Guaranty's $31,464,640.69 second lien claim[2], a sale at $36 Million, even if a sale closed tomorrow, yields no net benefit to the estate.   But the Debtor believes that a sale to EHC is unsupported by a showing of its ability to obtain financing, with no known capacity for EHC to close and not likely to be capable of ever closing ever, but certainly not within a reasonable time.   No 'effective reorganization' is possible here, and the Debtor's Plan, its only prospect, has virtually no chance of confirmation.   The provisions of the Settlement calling for relief from the automatic stay are appropriate and should be approved.  11 U.S.C. §362(d)(2) and (3).  See, *United Savings Ass'n v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 375-76, 108 S.Ct. 626, 98 L.Ed. 2d 740 (1988).

Under these circumstances, it is submitted that in the absence of settlement, with the prospect of a trial which is likely to result in a judgment in Westbrook's favor, and the likelihood that Westbrook would thereafter be entitled to relief from stay, followed by a Westbrook foreclosure then conversion or dismissal.   The proposed Settlement provides for a possible upside to unsecured creditors.

       **(ii)**     **Collection Difficulties.** This factor is not relevant to the present dispute.

---

[2] Filed as Claim No. 15.

1           **(iii)**     **Complexity, Expense, Inconvenience and Delay.** This factor surely

2 favors approval as well. The Settlement will enable the Debtor to avoid a complex multi-day

3 trial. Administrative expenses would otherwise mount and a resolution will afford an

4 opportunity of resolution of this dispute and the entire chapter 11 case.

5           **(iv)**     **Deference to paramount interest of the creditors.** Given the likely

6 outcome of the trial, the settlement offers creditors something where they surely would

7 otherwise get utterly nothing. Upon a sale of the Property within a year of Westbrook's

8 taking title Westbrook will be obligated to pay the unsecured creditors at least $1 Million

9 and as much as $2 Million. Based on Westbrook's initial calculations, the first payment

10 reflects a distribution of just under 20% to all unsecured claims listed and filed    The

11 Settlement reflects the possibility of some recovery when continued litigation would in all

12 likelihood  bring no recovery.

13      The proposed Settlement reflects the recognition that the Debtor's (and Guaranty's)

14 case will be decided against the plaintiffs and that Westbrook will ultimately have allowed a

15 secured claim of over $20 Million. With a material reduction if payment is made quickly,

16 and a possible recovery for unsecured creditors, the Settlement reflects the realities of this

17 case and should be approved. Guaranty will doubtless wish to roll the dice with the

18 creditors' money, but given their secured loan to Fanita with full knowledge of the existence

19 and terms of the Westbrook transaction documents and first deed of trust, their desire to

20 litigate should be placed in the proper context. After all, Guaranty received relief from stay

21 to foreclose its own lien almost a year before this chapter 11 case was filed.. But for reasons

22 never articulated, chose not foreclose the Debtor out. As set forth in the following section,

23 once the Settlement is approved, Guaranty will no longer have standing to pursue its

24 identical claims being settled by the Debtor. This leaves Guaranty exactly where is should

25 be: behind the first deed of trust they chose to lend behind and able to protect its interest by

26 bidding at the foreclosure sale. Since the Settlement is fair and equitable and resolves the

27 Debtor's estate, is should be approved.

28 ///

### III.

### THE ADVERSARY CASE SHOULD BE DISMISSED

An express condition of the proposed Settlement is that it obviate the necessity of proceeding to trial on the merits against either the Debtor or Guaranty. Obviously, the Debtor consents to the dismissal of the adversary proceeding, but it is at least probable that Guaranty will not. Since the Debtor's settlement of claims **identical to those raised by Guaranty** in the Adversary Proceeding deprives Guaranty of further standing to prosecute the action, those claims should be dismissed as a part of approval of the Settlement. The Debtor and Guaranty have never argued that the Debtor's claims against Westbrook in the Adversary Proceeding are different from those initially brought by Guaranty. Moreover, Guaranty has conceded that the claims and grounds for avoidance are identical when it stated "The [Debtor's] grounds for avoiding [Westbrook's] lien are ***identical to those asserted by the Banks...***"[3]

In their strident objection to Westbrook's earlier request that the Court remand the removed Adversary Proceeding back to state court, Guaranty Bank said that their suit "Challenges the validity, extent and amount of the first lien on the Debtor's only asset and in effect seeks to invalidate Westbrook's secured and unsecured claims against the Debtor and its property. As such it is a litigation which will decide key bankruptcy case matters including lien and claim validity that falls squarely with in the scope of core proceedings as defined in 28 U.S.C. § 157(b)...."[4] Now, in their anticipated opposition to the Debtor's settlement of these 'quintessentially core matters', not so much.

The issue of Guaranty's standing was extensively briefed in connection with Guaranty's motion for summary judgment. Westbrook's arguments in its brief opposing summary judgment[5] are not fully repeated here but are incorporated by this reference. In essence, the Debtor has the rights, power and duties of a trustee under Section 1107 and is

---

[3] Adversary Proceeding Docket No. 33, at p. 7 (Emphasis added.)
[4] Guaranty Memorandum, Adv. Proceeding No 10-90204 Docket No 20, pp 5-6.
[5] Adversary Proceeding No 10-90204, Docket No. 46, pp 12 -17.

1   the representative of the estate under Section 323(a). *In re T.S.P. Industries, Inc.*, 117 Bankr.

2   375, 376 (Bankr. N.D. Ill. 1990). As the representative of the estate, the Debtor, not any

3   third party or any creditor, possesses **exclusive standing** to bring claims belonging to the

4   Debtor against third parties. *Estate of Spirtos v. One San Bernardino County Superior Court*,

5   443 F.3d 1172 (9th Cir. 2006). This would seem to be underscored when the claims are

6   "core" matters, as both the Debtor and Guaranty have vigorously asserted, and as the Court

7   has found.

8        This case falls squarely within the Ninth circuit's teaching in *In re Dominelli*, 820 F.

9   2d 313 (9th Cir. 1987). There, the court was faced with a request to dismiss a junior

10   creditor's objections to a senior creditor's claim. Originally, just as here, the junior creditor

11   had first filed suit challenging the senior creditor's claim. The trustee joined in the action,

12   just as here, by filing the same claims against the senior creditor. Although the court

13   differentiated between the claims of a secured and an unsecured creditor, the fact of the

14   trustee's settlement of the claims meant the junior lienholder could no longer assert them.

15   *Dominelli, supra,* 820 F. 2d at 317.

16        A settlement approved by this Court after giving Guaranty the opportunity to object

17   operates in an identical fashion and Guaranty's claims upon approval of the Settlement are

18   similarly barred. A Debtor's action on a claim belonging to the estate provides the estate the

19   full opportunity to litigate if all relevant interests are before the Court. This is certainly the

20   case here, since both Guaranty and the Debtor have brought identical claims against

21   Westbrook; the claims belong to the Debtor's estate, the Debtor has now settled those

22   claims and Guaranty is given notice and an opportunity to object.

23        Approval of the Settlement containing the Bankruptcy Estate's release and allowance

24   of the Westbrook's claims occupies the entire field and removes other creditors' ability to

25   continue litigating over the validity, extent and priority of Westbrook's claim against the

26   Debtor and the estate. To allow one creditor, secured or not, to continue to litigate with

27   another creditor with whom the Debtor has also litigated on identical causes of action *and*

28   *settled*, invites a multiplicity of litigation and chaos, and usurps the Debtor as the estate's

1  only true representative. If the Settlement is found fair and equitable, and the court has made

2  the requisite findings concerning the factors to be employed in resolving identical claims

3  raised by an objecting creditor, that creditor's objections should be dismissed as having been

4  bound up with and resolved by the Debtor.  And as the Court itself presaged,  "Guaranty

5  may similarly lose its standing due to principles of *res judicata* because of a settlement...."[6]

6  Upon approval of the Settlement Agreement as a settlement of the Bankruptcy Estate, the

7  Adversary proceeding must be dismissed.

**IV.**

**CONCLUSION**

10      Settlements surely promote the efficient functioning of the judicial system.   This

11  Settlement was reached after the court denied dual motions for summary judgment, paving

12  the way for only one version of the proof at trial, as recognized by the key percipient witness

13  whose testimony would be uncontroverted.   Accordingly, the Settlement reached by the

14  Debtor and Westbrook, at least from the Estate's perspective, leaves the possibility alive that

15  some recovery (via a payment by Westbrook of its own assets) will be had by the rank and

16  file unsecured creditors.   The Bank's have proffered evidence that the property is worth

17  $26 Million and the Settlement leaves alone the Bank's ability to protect their position (and

18  possibly recover substantial value) by bidding at the Westbrook foreclosure sale. The

19  Settlement is fair and equitable under the facts and circumstances of this case and should be

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  _____

28  [6] Tentative ruling Adversary Proceeding No 10-90204 Docket No 68, pg. 3.

P:00566476.5:60434.002                                          -16-

1    approved.   Once approved, the entire adversary proceeding must be dismissed and the

2    remainder of Westbrook's claims against the Banks should be remanded to the San Diego

3    Superior Court.

4    DATED: August 27, 2010                    Respectfully submitted,

5                                              SOLOMON WARD SEIDENWURM & SMITH, LLP

6

7                                             By:  /s/ Michael D. Breslauer
                                                   MICHAEL D. BRESLAUER
8                                                  YOSINA M. LISSEBECK
                                                   Attorneys for Defendant, Counterclaimant
9                                                  and Cross-Defendant, Westbrook Fanita
                                                   Ranch, L.P.

10   DATED: August 27, 2010                    LAW OFFICES OF WILLIAM P. FENNELL, APLC

11

12                                            By:  /s/ William P. Fennell
13                                                 WILLIAM P. FENNELL
                                                   TRACY L. SCHIMELFENIG
14                                                 Proposed Attorneys for Debtor-in-Possession,
                                                   Fanita Ranch, L.P.

15

16

17

18

19

20

21

22

23

24

25

26

27

28