CSD 1001C [11/15/04]
Name, Address, Telephone No. & I.D. No.
William P. Fennell, Esq. [SBN 164210]
Law Offices of William P. Fennell, APLC
1111 Sixth Avenue, Suite 404
San Diego, CA 92101
Telephone (619) 325-1560
Facsimile (619) 325-1558
Attorneys for Debtor

**Order Entered on**
**December 15, 2010**
**by Clerk U.S. Bankruptcy Court**
**Southern District of California**

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re
FANITA RANCH, L.P., a California limited partnership

Debtor.

**LODGED**

BANKRUPTCY NO. 10-05750-MM11

Date of Hearing: November 5, 2010
Time of Hearing: 10:00 a.m.
Name of Judge: One (1)

## ORDER APPROVING SETTLEMENT, GRANTING RELIEF FROM STAY, DISMISSING COMPLAINTS AND REMANDING COUNTERCLAIMS

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2) through <u>Three</u> with exhibits, if any, for a total of <u>Sixty</u> pages, is granted. Notice of Lodgment Docket Entry No. <u>69</u>

//

//

//

//

//

//

DATED: December 14, 2010

_Margaret M Man_

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

Law Offices of William P. Fennell, APLC
(Firm name)

By: /s/ William P. Fennell
Attorney for ☐ Movant ☐ Respondent
Debtor

P:00587344.4:60434.002CSD 1001C


American LegalNet, Inc.
www.FormsWorkFlow.com

CSD 1001C [11/15/04]
ORDER APPROVING SETTLEMENT, GRANTING RELIEF FROM STAY, DISMISSING COMPLAINTS AND REMANDING COUNTERCLAIMS
DEBTOR: In re Fanita Ranch, L.P.                                                     CASE NO: 10-05750-MM11

The Joint Motion of Fanita Ranch L.P., (the "Debtor") and Westbrook Fanita Ranch L.P ("Westbrook") for Orders (1) Approving Settlement, Allowing Westbrook's Secured Claim and Providing Relief from Stay, (2) Dismissing Debtor's Cross Complaint and Guaranty Bank's Complaint and (3) remanding Westbrook's Cross Claims to the San Diego Superior Court (the "Motion") after proper notice to creditors and parties in interest came on for sequential hearings on October 19, 2010, October 29, 2010, November 1, 2010 and for evidentiary hearing on November 5, 2010 before the Honorable Margaret M. Mann, United States Bankruptcy Judge, presiding. In those proceedings, the Debtor appeared through counsel, William P. Fennell, Esq. of the Law Offices of William P. Fennell, A professional Law Corporation; Compass Bank, as successor to certain assets of Guaranty Bank (the "Bank") appeared through counsel, Scott N. Yamaguchi, Esq. and Allan H. Ickowitz, Esq.; and Westbrook Fanita Ranch, L.P. ("Westbrook") appeared through counsel, Michael D. Breslauer, Esq. and John M. Moscarino, Esq. Other appearances are as stated in the record made at such proceedings.

The Court considered the papers filed and arguments made by counsel both in support of and in opposition to the Motion, received documentary evidence and live testimony, and filed on October 18, 2010 its Tentative Decision (the "Tentative Decision") [Docket No. 88] and on November 30, 2010 its Amended Memorandum Decision Regarding Approval of Settlement, Dismissal of Complaint and Remand of Counterclaims (the "Amended Memorandum Decision") [Docket No. 102] regarding the Motion. The Motion is in proper form and was properly noticed to creditors and parties in interest. For the reasons set forth in the Tentative Decision and in the Amended Memorandum Decision, and for good cause shown,

1.      The Motion is GRANTED in its entirety. The Tentative Decision is adopted and incorporated into the Amended Memorandum Decision. The Tentative Decision and the Amended Memorandum Decision constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule of Procedure 7052.

2.      Pursuant to the Motion, the Agreement for Settlement and for Relief from Stay (the "Settlement Agreement", a true and correct copy of which is attached hereto as Exhibit "1") is approved in full, as amended by the parties thereto as follows:

      A.    Paragraph 5(a) of the Settlement Agreement is deleted in its entirety and restated as follows:

      "Westbrook NJF.   As of the Effective Date, Westbrook shall have immediate and irrevocable relief from the Automatic Stay for all purposes consistent with this Agreement to continue, conduct and conclude the Westbrook NJF on or after January 4, 2011. Fanita waives all right to contest, stay, impede thwart or take any step whatsoever to prevent Westbrook from concluding the Westbrook NJF. An Order of the Bankruptcy Court approving this Agreement shall be effective as to allow Westbrook to have the relief set forth in this paragraph."

      B.    Paragraph 6(b) of the Settlement Agreement is deleted in its entirety and restated as follows:

      "(b) $17.5 Million by December 15, 2010."

      C.    Paragraph 7 of the Settlement Agreement is deleted in its entirety and restated as follows:

      " Payments to Certain Unsecured Creditors.  Provided Westbrook completes the Westbrook NJF and a Trustee's Deed is recorded in Westbrook's (or its nominee's) name, upon Westbrook's subsequent sale or other disposition of the Property within the next eighteen (18) months from the date of recordation of such Trustee's Deed, Westbrook will transfer to the creditors listed on Exhibit C, in a pro-rata amount that each creditor's claim bears to the total amount of creditors' claims of Exhibit C (i) the sum of $1 Million and (ii) if and only if Westbrook receives upon such sale or disposition cash of $18.5 Million, net of closing costs, broker's commissions and payment of secured taxes, then Westbrook shall pay to such creditors 33.34 percent (.3334) of all cash received in excess of such $18.5 Million, up to an additional $1 Million."

      D.    The deadline by which the Settlement Agreement is to be approved by the Court, as set forth in Paragraph 11, is waived.

American LegalNet, Inc.
www.FormsWorkFlow.com

Signed by Judge Margaret M. Mann December 14, 2010

CSD 1001C [11/15/04]
ORDER APPROVING SETTLEMENT, GRANTING RELIEF FROM STAY, DISMISSING COMPLAINTS AND REMANDING COUNTERCLAIMS
DEBTOR: In re Fanita Ranch, L.P.                                              CASE NO: 10-05750-MM11

3.        The Westbrook Secured Claim, as defined in the Settlement Agreement, is allowed in full as a secured claim in the sum $20,831,669 as of July 30, 2010, plus accrued interest, costs and fees incurred after such date, as a first and senior lien against the Debtor's real property pursuant to the Entitlement Payment Deed of Trust, as defined in the Settlement Agreement, subject only to accrued and unpaid real property taxes owing to the San Diego County Tax Collector.

4.        Upon the Effective Date, as defined in the Settlement Agreement:

        A.        Westbrook shall have immediate and irrevocable relief from the Automatic Stay of 11 U.S.C. §362(a) for all purposes consistent with the Settlement Agreement, as amended herein, to continue, conduct and conclude its nonjudicial foreclosure sale ("NFS") against the Debtor's real property (the "Property") described in the Entitlement Payment Deed of Trust and on Exhibit "2", attached hereto, as defined in the Settlement Agreement; provided however, that a Trustee's Sale in such NFS shall be held no earlier than January 4, 2011.

        B.        The Automatic Stay of 11 U.S.C. §362(a) is deemed lifted and terminated with respect to prosecution and defense of the Environmental Litigation, as defined in the Settlement Agreement and more particularly described as Preserve Wild Santee v. City of Santee, et al., San Diego County Superior Court Case No. 37-2008-00075168-CU-TT-C-TL and Preserve Wild Santee v. City of Santee, et al., San Diego County Superior Court Case No. 37-2009-00097042-CU-TT-C-TL, on the terms and basis as set forth in Paragraph 5(b) of the Settlement Agreement.

        C.        The Automatic Stay of 11 U.S.C. §362(a) is deemed lifted and terminated to enable the Bank to take any actions it chooses with respect to the Property which are not inconsistent with the terms of the Amended Memorandum Decision.

5.        Subject to the provisions of paragraph 7, below, the Verified Complaint for Declaratory and Injunctive Relief to Enjoin Foreclosure filed by Guaranty Bank, as Administrative agent for Guaranty Bank and Wachovia Bank, National Association originally in the San Diego Superior Court – East County Division as Case No 37-2009-00065257-CU-OR-EC (the "Former Superior Court Case") and removed to this Court as Adversary proceeding No 10-90204 (the "Adversary Proceeding") [Docket No. 35; Exhibit A] shall be and hereby is DISMISSED WITH PREJUDICE.  The Preliminary Injunction dated and filed on September 9, 2009 in the Former Superior Court Case is hereby deemed DISSOLVED AND VACATED.

6.        The Debtor's Cross Claim Objecting to Westbrook's Secured Claim & Requesting Affirmative and Declaratory relief [Adversary Proceeding Docket No 29] shall be and hereby is DISMISSED WITH PREJUDICE.

7.        Westbrook's Cross Complaint removed to this Court [Adversary Proceeding Docket No. 1; Exhibit 2], together with the Bank's and Wachovia's Answer [Docket No. 1; Exhibits 3 and 4] shall be and hereby is REMANDED to the San Diego County Superior Court for further proceedings.

8.        The provisions of this Order shall be applicable in the Debtor's Chapter 11 case, in any Chapter 7 case to which this case is converted, and in the Adversary Proceeding.

9.        The Court has considered Compass Bank's request [Docket No. 116] that, in the interest of avoiding additional expense and time, the Court consider the prayer for a stay pending appeal contained in its December 10, 2010 objection without necessity for a formal motion.  That request is unopposed.  The Court hereby grants the Bank's request to consider its December 10, 2010 objection as a motion for a stay pursuant to Bankruptcy Rule 8005, but denies the Bank's motion for a stay pending appeal because of Compass Bank's failure to demonstrate through competent and admissible evidence that sufficient circumstances exist which would allow this Court to exercise its discretion to grant a stay pending appeal. In re Wymer, 5 B.R. 802 (B.A.P. 9th Cir. 1980).  Compass Bank's request for a stay pending Appeal is DENIED.


IT IS SO ORDERED.

American LegalNet, Inc.
www.FormsWorkFlow.com

Signed by Judge Margaret M. Mann December 14, 2010

## AGREEMENT FOR SETTLEMENT AND RELIEF FROM THE AUTOMATIC STAY

This Agreement for Settlement and Relief from the Automatic Stay ("Agreement") is entered into as of August 16, 2010 , by and between Fanita Ranch L.P., a California limited partnership ("Fanita") and J. Michael Armstrong, Individually, and Westbrook Fanita Ranch, L.P., a Delaware limited partnership ("Westbrook"). Fanita and Westbrook are referred to collectively herein as "Parties."

### RECITALS

A.     Fanita is the owner of certain real property known generally as the Fanita Ranch and comprised of approximately 2600 acres located in Santee, California (the "Property").

B.     In July 2003, Westbrook sold the Property to Barratt American Incorporated, a California corporation ("Barratt") for its eventual development. Included in the consideration for the sale of the property, Westbrook received from Barratt an Entitlement Payment Promissory Note Secured by Deed of Trust dated June 30, 2003 (the "Entitlement Payment Note"). The Entitlement Note is secured by a Entitlement Payment Deed of Trust, Security Agreement and Fixture Filing dated June 30, 2003 (the "Entitlement Payment Deed of Trust"). The Entitlement Payment Deed of Trust was recorded on July 1, 2003 in the Official Records of San Diego County, California as Document No. 2003-0782065 and describes the Property. The Entitlement Payment Deed of Trust is a first lien on and affecting the Property. True and correct copies of the Entitlement Payment Note and the Entitlement Payment Deed of Trust are attached hereto as Exhibits A and B respectively.

C.     After 2003, Barratt began the process of entitling the property for development. In connection with that development, and after the City of Santee's approval of a Tentative Tract Map for development of the Property, opponents of such development commenced suit to halt the development. Two actions exist with respect to the Property, known as *Preserve Wild Santee v. City of Santee, et al.*, San Diego County Superior Court Case No. 37-2008-00075168-CU-TT-C-TL ("Preserve Wild Santee I"), and *Preserve Wild Santee v. City of Santee, et al.*, San Diego County Superior Court Case No. 37-2009-00097042-CU-TT-C-TL ("Preserve Wild Santee II" and collectively with Preserve Wild Santee I, the "Environmental Litigation").

D.     Barratt has an equity interest in Fanita. J. Michael Armstrong ("Armstrong") was Barratt's representative who was principally responsible for negotiating the terms of the acquisition of the Property by Barratt from Westbrook, and in that capacity was the person at Barratt with direct personal knowledge of Barratt's intent in negotiating and deciding upon the terms of the Entitlement Payment Note and the Entitlement Payment Deed of Trust. Armstrong is the manager of Priestly Drive, LLC, a California limited liability company, which is Fanita's general partner. As such, Armstong is authorized to enter into this Agreement on Fanita's behalf, subject to Bankruptcy Court approval.

E.     In December 2005, Barratt conveyed the Property to Fanita by Grant Deed. Concurrently with that transfer, Fanita obtained financing using the Property as collateral and encumbered the property with a deed of trust in favor of Guaranty Bank securing Fanita's promissory note owed to Guaranty bank in the amount of approximately $25 Million.

F.     The transfer and encumbrance of the Property without Westbrook's prior consent described in Recital E, above, entitled Westbrook to accelerate the obligations owed to Westbrook pursuant to the terms of the Entitlement Payment Note. As of the time of the transfer and encumbrance, Tentative Map Approval, as defined in the Entitlement Payment Note, had not yet occurred and, accordingly, pursuant to the terms of the Entitlement Note the sum of $15 Million was due to Westbrook as agreed liquidated damages (the "Westbrook LD Claim") in lieu of the Entitlement Payment, plus interest at the rate of 13% per annum, costs and fees.

G.     On December 26, 2008, Westbrook commenced a nonjudicial foreclosure under the Entitlement Payment Deed of Trust and recorded a Notice of Default in the Official Records of San Diego County as Document no. 2008-0654299 (the "Westbrook NJF"). Thereafter a notice of Trustee's sale was published in furtherance of the Westbrook NJF.

H.     On April 1, 2009, Guaranty Bank commenced suit against Westbrook and Fanita in the San Diego County Superior Court in an action known as *Guaranty Bank v. Westbrook Fanita Ranch, L.P.* et al., Case no 37-2009-00065257 (the "Superior Court Case") seeking declaratory and injunctive relief to prevent the Westbrook NJF from being completed.

I.     On April 14, 2009, three creditors of Fanita commenced an involuntary bankruptcy case against Fanita known as *In re Fanita Ranch, L.P.*, United States Bankruptcy Court for the Southern District of California Case No. 09-04958 (the "2009 Involuntary Bankruptcy"). Within the 2009 Involuntary Bankruptcy, both Guaranty Bank and Westbrook filed separate motions for relief from the automatic stay and Fanita did not oppose either motion. The bankruptcy court in the 2009 Involuntary Bankruptcy entered separate orders granting Guaranty Bank's and Westbrook's motions for relief from Stay and the 2009 Involuntary Bankruptcy was thereafter dismissed by order entered August 17, 2009.

J.     Following dismissal of the 2009 Involuntary Bankruptcy, Guaranty Bank filed a motion for a preliminary injunction in the Superior Court Case seeking to enjoin the Westbrook NJF. In connection with and supporting its opposition, Westbrook filed a declaration signed by Armstrong in April 2009 (the "Armstrong Declaration"). Among other things, Armstrong testified in the Armstrong Declaration that it was Barratt's intent that the liquidated damages provision in the Entitlement Payment Note be secured by the Entitlement Payment Deed of Trust and that Barratt had agreed with Westbrook that the liquidated damages described in the Entitlement Payment Note were a reasonable estimate of the damages Westbrook would suffer in the event that Barratt breached its obligations to Westbrook prior to the time that Entitlement Payments were payable. Armstrong was deposed twice in the Superior Court Case and reaffirmed the statements in the Armstrong Declaration. By executing this Agreement, Armstrong, individually and on behalf of Fanita, acknowledges the truth and accuracy of the Armstrong Declaration and reaffirms all its contents as true and correct as of the date hereof.

K.     The Superior Court granted Guaranty Bank's motion and issued its preliminary injunction and Fanita filed its verified answer denying the allegations made by Guaranty Bank in its complaint. The Superior Court Case was thereafter set for trial on April 10, 2010.

L.     On April 7, 2010, and three days prior to the date set for trial of the Superior Court Case, Fanita filed a case under chapter 11 of the United States Bankruptcy Code known as *In re Fanita Ranch, L.P.* now pending as Case no. 10-5750-M11 (the "Bankruptcy Case") in the United

**EXHIBIT 1**

States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court"). On April 8, 2010, Fanita caused the Superior Court Case to be removed in its entirety to the Bankruptcy Court as Adversary Proceeding No 10-90204 (the "Adversary Proceeding"). On May 28, 2010, Fanita filed its "Cross Claim Objecting to Westbrook's Secured Claim & Requesting Affirmative and Declaratory Relief." (the "Fanita Cross Claim") in the Adversary Proceeding. In the Fanita Cross Claim, Fanita alleged a cause of action under Bankruptcy code Section 544 and, in addition, alleged claims for declaratory relief that duplicated the claims made by Guaranty Bank in the Superior Court Case, namely that the liquidated damages under the Entitlement Payment Note were either invalid or, if valid, were unsecured.

M.    Westbrook has at all times disputed the validity of Guaranty Bank's and Fanita's contentions and asserts that it holds a valid and allowable first priority secured claim against the Property in the Bankruptcy Case, filed in the sum $20,831,669, plus accruing interest costs and fees (together with the Westbrook LD Claim, the "Westbrook Secured Claim"). Westbrook also contends that Fanita has no equity in the Property and that the Property is not necessary for any effective reorganization of Fanita which is capable of occurring within a reasonable period of time.

N.    On July 8, 2010, Fanita filed its Plan of Reorganization (the "Plan") in the Bankruptcy Case. The Plan is based wholly upon a sale of the Property as open space and not upon Fanita's acts to further entitle the Property, either for build out or for future sale.

O.    On July 27, 2010, Fanita filed its Motion to sell the Property to the Endangered Habitats Conservancy, a California not for profit corporation (the "Proposed Buyer"), for total consideration of $36 Million. The sale is based on a Purchase and Sale Agreement and Escrow Instructions dated as of June 11, 2010 (the "Purchase Agreement"). The Purchase Agreement provides, among other terms, that the Buyer has one year within which to fund the sale and close escrow to acquire the Property, and has the opportunity to further extend the escrow for an additional unspecified period of time.

P.    On August 5, 2010, the Bankruptcy Court denied Fanita's and Guaranty Bank's motions for Summary Judgment and dismissed Fanita's claim brought under 11 U.S.C. §544 within the Fanita Cross Claim. In doing so, the Bankruptcy Court found the Entitlement Payment Note and the Entitlement Payment Deed of Trust were ambiguous and will require the introduction of parol evidence at trial to interpret their terms.

Q.    The Court's rulings on the Motion to Dismiss and Motions for Summary Judgment have caused Fanita to reevaluate its Cross Claim. Armstrong would be required to testify consistently with the Armstrong Declaration and his prior deposition testimony at trial. Fanita is unaware of the testimony of any witness who might testify in any manner that is inconsistent with Armstrong's testimony and that of Westbrook representative Garrett Solomon about the intent underlying the documents memorializing the transaction between Westbrook and Barratt.

R.    Based upon the foregoing recitals, and the facts contained within them, Fanita acknowledges that (i) the Proposed Buyer has no internal financial capacity to close the proposed sale and must rely on outside funding sources; (ii) the Proposed Buyer has no firm commitments of any type whatsoever from any proposed funding source; (iii) it is unlikely that the Proposed Buyer will perform its obligations to close the escrow within one year of the effective date of the Purchase

**EXHIBIT 1**

Agreement; (iv) Fanita has no equity in the Property; and, (v) the Property is not necessary to any effective reorganization, as that term is defined in Bankruptcy Code Section 362(d)(2).

S.      The Parties wish to settle their disputes as set forth in this Agreement and believe that such a settlement is in the best interest of Fanita and Fanita's bankruptcy estate. This is because (i) Fanita does not believe that it has any reasonable possibility of prevailing on its Cross Claim now that the Bankruptcy Code §544 claim has been dismissed and the Bankruptcy Court will be considering parol evidence, including Armstrong's testimony; (ii) there will be substantial attorney's fees and costs associated with further proceedings in the Bankruptcy Case; (iii) Westbrook is likely to be entitled to add its attorney's fees and costs as part of its allowable secured claim; (iv) Fanita does not believe its Plan is feasible; and, (v) Fanita believes the settlement contained within this Agreement provides the best opportunity for unsecured creditors to recover some portion of their claims.

T.      Fanita has engaged William P. Fennell, of the Law Office of William P. Fennell, APLC as its proposed general bankruptcy counsel, who has reviewed the Agreement.

## AGREEMENTS AND COVENANTS

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, all Parties and each of them, agree to the following:

1.      Recitals Incorporated. The forgoing recitals are true and correct and are incorporated into this Agreement by this reference. All recitals are factual recitals and shall be binding in accordance with California Evidence Code §622

2.      Compromise and Settlement. Except as otherwise expressly set forth in this Agreement, the settlement described in this Agreement constitutes a good-faith compromise and settlement of all claims and defenses between the Parties.

3.      Allowance of the Westbrook Secured Claim. As of the Effective Date, Westbrook shall have allowed in the Bankruptcy Case a secured claim in the sum of the Westbrook Secured Claim, without defense, offset or reduction. The Westbrook Secured Claim shall be deemed to be a first lien on the Property, senior and prior to all other liens, claims, charges and interests of any third party or entity, except for real property taxes accrued and owing on the Property and owing to the San Diego County Tax Collector.

4.      Dismissal of the Adversary Proceeding. As of the Effective Date, (i) Fanita shall have filed its dismissal with prejudice of the Fanita Cross Claim and (ii) obtained entry by the Bankruptcy Court of an order dismissing with prejudice Guaranty Bank's complaint in the Adversary Proceeding and remanding Westbrook's Cross Complaint against Guaranty Bank to the San Diego Superior Court. Notwithstanding the foregoing sentence, nothing in this Agreement shall be deemed construed to affect in any way Westbrook's affirmative claims for damages and a trial by jury against Guaranty Bank and Wachovia Bank, as asserted in Westbrook's cross claim for such damages in the Superior Court Case.

**EXHIBIT 1**

5.     Relief from the Automatic Stay.

(a)     Westbrook NJF. As of the Effective Date, Westbrook shall have immediate and irrevocable relief from the Automatic Stay for all purposes consistent with this Agreement to continue, conduct and conclude the Westbrook NJF on or after November 16, 2010. Fanita waives all right to contest, stay, impede thwart or take any step whatsoever to prevent Westbrook from concluding the Westbrook NJF. An Order of the Bankruptcy Court approving this Agreement shall be effective as to allow Westbrook to have the relief set forth in this paragraph.

(b)     Environmental Litigation. As of the Effective Date, the Automatic Stay of 11 U.S.C. §362(a) shall be deemed lifted and terminated as to Fanita for all purposes in connection with the Environmental Litigation. Upon the Effective Date of this Agreement but prior to the time of the completion of the Westbrook NJF and recordation of a Trustee's Deed upon conclusion of the Westbrook NJF, Westbrook at its own cost and expense shall have the right to make all strategic and tactical decisions in the Environmental Litigation, inclusive of the decision to settle and the terms of any such settlement;.

6.     Discount of the Westbrook Secured Claim. For purposes of this paragraph and for no other purpose, and prior to the completion of the Westbrook NJF, Westbrook will reconvey all its right, title and interest in the Entitlement Deed of Trust, cancel the Entitlement Payment Note and waive all other claims, secured or unsecured, held or asserted against Fanita or the Property, if Westbrook is provided via wire transfer to the Trust Account of Solomon Ward Seidenwurm & Smith LLP indefeasible cash in the following sums on or before the dates set forth below:

(a)     $14.5 Million by the date which is ten (10) business days from the Effective Date; or

(b)     $17.5 Million by November 15, 2010.

7.     Payments to Certain Unsecured Creditors. Provided Westbrook completes the Westbrook NJF and a Trustee's Deed is recorded in Westbrook's (or its nominee's) name, upon Westbrook's subsequent sale or other disposition of the Property within the next twelve (12) months from the date of recordation of such Trustee's Deed, Westbrook will transfer to the creditors listed on Exhibit C, in a pro-rata amount that each creditor's claim bears to the total amount of creditors' claims of Exhibit C, (i) the sum of $1 Million and (ii) if and only if Westbrook receives cash from such sale in excess of the sum of the $1Million set forth in subparagraph (i), above, and the Westbrook Secured Claim, net of closing costs, broker's commissions and payment of secured taxes, an additional $1 Million.

8.     Fanita's Release. As of the Effective Date, Fanita for itself and its agents, successors and assigns, except for the claims and rights created by this Agreement, hereby covenants not to sue, as well as to release and forever discharge Westbrook, including its present, former and future corporate parents, subsidiaries, general partners, limited partners, licensees, affiliates, members, managers, directors, trustees, officers, shareholders, employees, counsel, beneficiaries, predecessors, successors and assigns of any of them, and each of them, jointly and individually, from any and all claims, rights of action, losses, damages, costs, expenses, liabilities and demands of whatsoever character, nature and kind, including all claims known and unknown, suspected and unsuspected, matured and not matured, accrued and not accrued, liquidated and contingent, from the beginning of the world to the Effective Date, including, but not limited to all defenses and claims of offset with respect to the Westbrook Secured Claim.

9.    Full and Final Release. Fanita specifically understands, acknowledges and agrees that Paragraph 8 above is a full and final release, which shall be effective as a bar to all actions, claims, counterclaims, obligations, causes of action, losses, promises, damages, costs, expenses, defenses or offsets, liabilities and demands of whatsoever character, nature and kind, known and unknown, suspected and unsuspected, matured and not matured, accrued and not accrued, liquidated and contingent, hereinabove specified to be so barred.

10.    Section 1542 Waiver. Fanita on behalf of itself and each and every one of its current and former parents, subsidiaries and affiliated corporations, shareholders, members, officers, directors, partners, agents, affiliates, associates, employees, and successors and predecessors-in-interest, as the case may be, (i) hereby expressly and knowingly waives and relinquishes any and all rights that any have or might have under California Civil Code § 1542 and under other statute(s) or common law principles of similar effect which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

11.    Court Approval. As promptly as practicable, Fanita shall take all necessary steps to request that the Bankruptcy Court approve this Agreement and the transactions contemplated within it, as may be required under the law, including but not limited to Federal Rule of Bankruptcy Procedure 9019 (the "Approval Order"). Westbrook shall cooperate in obtaining the Approval Order. If the Bankruptcy Court declines to approve this Agreement on the merits thereof by October 1, 2010, the settlement reflected in this Agreement, but not the signatories' acknowledgement of the factual recitals, shall immediately become null and void.

12.    Further Actions. The Parties shall execute, acknowledge, and deliver all such further instruments and do all such other acts as may be reasonably necessary in order to carry out the intent and purpose of this Agreement.

13.    Effective Date. This Agreement shall become effective (the "Effective Date") fifteen (15) days after entry of the Approval Order, provided that no appeal has been filed, or if such appeal has been filed, that no stay of enforcement of the Approval Order pending appeal has been entered.

14.    Attorneys' Fees and Costs. If litigation be commenced to enforce or interpret the terms of this Agreement, the prevailing party in such litigation shall be entitled to recover from the other party, in addition to all other forms of recovery, its reasonable costs and attorney's fees.

15.    Binding Agreement/Terms Not Varied by Plan. This Agreement shall be binding upon and inure to the benefit of all Parties, their respective heirs, successors, assigns, and equity-holders, and each of them, including, but not limited to, a chapter 11 trustee appointed in the Bankruptcy Case or in any chapter 7 case to which this Bankruptcy Case is converted. The terms of this Agreement are deemed binding on all parties in interest in the Bankruptcy Case and no Plan of Reorganization filed in the Bankruptcy Case may be confirmed which varies or modifies the terms of this Agreement without Westbrook's written consent.

16.    Counterparts. This Agreement may be executed in multiple counterparts, which together shall have the force and effect of a single, fully executed document.

17.    <u>Entire Agreement</u>.  This Agreement, supersedes any and all prior written or oral agreements, communications, representations, negotiations or discussions concerning the subject matter hereof.

18.    <u>No Waiver</u>.  No term or provision of this Agreement shall be deemed waived, and no breach hereof shall be deemed consented to or excused, unless such waiver, consent, or excuse is made expressly in a writing signed by a duly authorized representative of the Party that is claimed to have so waived, consented or excused.  Should any Party consent, waive or excuse a breach by the other Party, such consent, waiver or excuse shall not constitute a consent to, waiver of or excuse of any other different or subsequent breach, whether or not of the same kind as the original breach.

19.    <u>Construction and Drafting Ambiguities</u>.  Each Party has cooperated in the preparation of this Agreement.  In any construction to be made of this Agreement, the document shall not be construed against any Party on the basis that that Party was the drafter.  Rather, the language of this Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any Party.

20.    <u>Modifications</u>.  This Agreement shall not be supplemented, modified, amended or changed in any manner except in a writing signed by a duly-authorized representative of each Party to this Agreement.

21.    <u>Governing Law</u>.  This Agreement is to be interpreted and enforced under federal bankruptcy law to the extent applicable, and where state law is applicable, the laws of California without regard to the choice of law or conflict of laws principles of California or any other jurisdiction.  With respect to any dispute involving Fanita, the Bankruptcy Court shall retain exclusive jurisdiction to enforce the provisions of this Agreement.

22.    <u>Warranties and Representations</u>.  Each Party represents and warrants for and on behalf of itself or himself (as appropriate) and each and every one of its or his current and former parent, subsidiary, and affiliated corporations, officers, directors, partners, members, shareholders, agents, attorneys, affiliates, associates, employees, and successors and predecessors-in-interest, as the case may be, that:

      (a)    there has been no assignment or other alienation of any right to recover any amounts alleged to be due, owing or unpaid pursuant to any claim subject to the releases and convenants contained in this Agreement;

      (b)    he or it has the authority to enter into this Agreement (with respect to Fanita, subject to Bankruptcy Court approval);

23.    <u>Headings</u>.  The headings or titles of the paragraphs in this Agreement are for convenience only, are not part of this Agreement, and shall not be used as an aid in interpretation of any provision hereof.

24.    <u>Time of the Essence</u>.  The Parties recognize the importance of the times and dates set for performance and are relying on such dates.  Accordingly, time is of the essence for all purposes

of this Agreement and no date for performance may be extended or modified unless agreed to in writing by the other party.

IN WITNESS WHEREOF, the Parties have signed this Agreement through their duly authorized representatives.

Dated: August 16, 2010

FANITA RANCH, L.P. ,
a California limited partnership

By: Priestly Drive LLC, a California
limited liability company
Its General Partner

By: _____
J. Michael Armstrong, Managing Member

Dated: August 16, 2010

_____
J. MICHAEL ARMSTRONG, Individually

Dated: August ___, 2010

WESTBROOK FANITA RANCH, L.P.
a California limited partnership

By: Westerra Management, LLC
Its Authorized Representative

By: _____

P:00563978.7:60434.002                    8

**EXHIBIT 1**

of this Agreement and no date for performance may be extended or modified unless agreed to in writing by the other party.

IN WITNESS WHEREOF, the Parties have signed this Agreement through their duly authorized representatives.

Dated: August __, 2010                    FANITA RANCH, L.P. ,
                                      a California limited partnership

                                      By:  Priestly Drive LLC, a California
                                          limited liability company
                                          Its General Partner

                                      By: _____
                                          J. Michael Armstrong, Managing Member

Dated: August __, 2010                    _____
                                      J. MICHAEL ARMSTRONG, Individually

Dated: August 16, 2010                    WESTBROOK FANITA RANCH, L.P.
                                      a California limited partnership

                                      By:  Westerra Management, LLC
                                          Its Authorized Representative

                                      By: _____

**EXHIBIT 1**

## ENTITLEMENT PAYMENT PROMISSORY NOTE
## SECURED BY DEED OF TRUST

<u>_Carlsbad_</u>, California
<u>_June 30_</u>, 2003

      1.   <u>Promise to Pay</u>.  For value received, BARRATT AMERICAN INCORPORATED, a Delaware corporation ("<u>Maker</u>"), promises to pay to WESTBROOK FANITA RANCH, L.P., a Delaware limited partnership ("<u>Payee</u>"), at 3030 LBJ Freeway, Suite 1500, Dallas, TX 75230, or such other place or places as the holder of this promissory note ("<u>Entitlement Payment Promissory Note</u>") may designate from time to time, all Entitlement Payments and Re-Entitlement Payments, as each such term is defined below, as principal, together with interest thereon as hereinafter provided.

      2.   <u>Secured Purchase Money Note</u>.  The obligation evidenced by this Entitlement Payment Promissory Note constitutes a portion of the purchase price of certain real property located in the City of Santee, County of San Diego, State of California purchased by Maker from Payee, as described on <u>Exhibit A</u> attached hereto (the "<u>Property</u>") pursuant to the terms of that certain Agreement of Purchase and Sale and Joint Escrow Instructions effectively dated as of June 9, 2003 (the "<u>Purchase Agreement</u>").  Certain obligations under this Entitlement Payment Promissory Note are secured by that certain Entitlement Payment Deed of Trust, Security Agreement and Fixture Filing of even date herewith encumbering the Property (the "<u>Entitlement Payment Deed of Trust</u>" and, together with this Entitlement Payment Promissory Note, the "<u>Entitlement Payment Loan Documents</u>").

      3.   <u>Entitlement Payment</u>.  Within three (3) business days after each Tentative Map Approval, Maker shall pay to Payee an entitlement payment (each, an "<u>Entitlement Payment</u>") with respect to such Tentative Map Approval.  Each Entitlement Payment for any Tentative Map Approval shall be for an amount equal to:

      (a)   the product of Ten Thousand Dollars ($10,000) and the Newly Entitled Ten Thousand Dollar Portion; plus

      (b)   the product of (i) Twenty Thousand Dollars ($20,000) and (ii) the positive difference, if any, of the Newly Entitled Residential Units Increase less the Newly Entitled Ten Thousand Dollar Portion.

For purposes of calculating any Entitlement Payment, any outstanding Unit Credit (as defined in <u>Paragraph 10</u>) as of the date of such Tentative Map Approval, after the application of Unit Credit in connection with any Re-Entitlement Payment in accordance with <u>Paragraph 9</u> herein, shall be applied first to reduce the Newly Entitled Residential Units Increase used to calculate clause (b) above, and second to reduce the Newly Entitled Ten Thousand Dollar Portion used to calculate (a) above.  An example Entitlement Payment calculation is provided for convenience only on <u>Exhibit B</u> attached hereto.

1

F:\Lbre\legal\private\CA\Fanita\Cont\Barratt American Inc\EP Note (Closing Doc).doc
June 27, 2003

      **EXHIBIT 1**          **EXHIBIT A**

4.    <u>Interest</u>.    If Maker fails to make any payment (including any Entitlement Payment) required to be made under any Entitlement Payment Loan Document at the time such payment is required to be made under such Entitlement Payment Loan Document, then such payment shall bear interest from such time until such amount is paid at a rate per annum equal to thirteen percent (13%) (the "<u>Applicable Interest Rate</u>"), but not exceeding the maximum rate or amount of interest permitted by law, on a 365/360 simple interest basis, *i.e.*, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance of any Entitlement Payments which have become due hereunder, if any, multiplied by the actual number of days such balance is outstanding. Unless otherwise agreed or required by applicable law, payments will be applied first to unpaid collection costs and late charges, then to accrued unpaid interest, and any remaining amount to principal. All payments shall be made in lawful money of the United States.

5.    <u>Reporting</u>.    Maker shall provide a written statement to Payee, at the address of Payee set forth above, calculating any Entitlement Payment which may become due pursuant to <u>Paragraph 3</u>, any Re-Entitlement Payment which may become due pursuant to <u>Paragraph 9</u> and any interest due pursuant to <u>Paragraph 4</u>, within three (3) business days of each of the following (each, a "<u>Reporting Date</u>"), and such obligation shall be irrespective of whether any such payments or interest have become due:

(a)    the day upon which Maker receives notice of any Tentative Map Approval;

(b)    the day which is the one-year anniversary of the date of this Entitlement Payment Promissory Note, and such anniversary day annually thereafter as long as this Entitlement Payment Promissory Note shall remain in effect;

(c)    the occurrence of any breach or default under this Entitlement Payment Promissory Note or any of the Entitlement Payment Loan Documents; and

(d)    the sale, assignment or other transfer of any direct or indirect ownership interest in Maker or any direct or indirect ownership interest in or right to occupy or possess the Property or any part thereof.

6.    <u>Due-On Clause</u>.    If Maker sells, conveys or alienates the Property, or allows title or any interest in the Property to be divested, whether voluntarily or involuntarily; or in the event of a sale or transfer, directly or indirectly, of beneficial interest in Maker equal to fifty percent (50%) or more of the beneficial ownership interests of Maker outstanding as of the date hereof; or if title to the Property be subject to any lien or charge, voluntarily or involuntarily, contractual or statutory, without the prior written consent of Payee, then Payee may, at its option and without prior notice, declare all sums evidenced by this Entitlement Payment Promissory Note, including all principal and accrued interest, immediately due and payable, irrespective of their stated due dates, and may exercise all other rights and remedies provided in this Entitlement Payment Promissory Note.

2

EXHIBIT 1        EXHIBIT A

7.    Event of Default.  It shall be an "Event of Default" hereunder if (i) Maker fails to pay when due any sum payable under this Entitlement Payment Promissory Note or under the Entitlement Payment Deed of Trust within five (5) business days after the due date thereof, (ii) Maker fails to perform any obligation or commits a breach of any agreement set forth in this Entitlement Payment Promissory Note or the Entitlement Payment Deed of Trust and does not cure that failure within five (5) business days after written notice from Payee (or such longer period as is reasonably determined by Payee to be necessary for completion of the cure, so long as Maker begins promptly and thereafter diligently continues to cure the failure), or (iii) any event of default (as such term is defined in the applicable document) occurs under the Entitlement Payment Deed of Trust (as it may be amended from time to time), the Purchase Agreement (as it may be amended from time to time) or any of the following documents executed by Maker in connection with this Entitlement Payment Promissory Note, all dated as of the date hereof (as each may be amended from time to time): the Purchase Price Promissory Note, the Purchase Price Deed of Trust and the Revenue Participations Promissory Note.  If as a consequence of any Event of Default hereunder, including any Event of Default resulting from clause (iii) of this paragraph, Payee refers this Entitlement Payment Promissory Note to an attorney to enforce, construe or defend any provision hereof, with or without the filing of any legal action or proceeding, Maker shall pay to Payee upon demand the amount of all reasonable attorneys' fees, costs and other expenses incurred by Payee in connection therewith, together with interest therein from the date of demand at the Applicable Interest Rate.

8.    Acceleration; Liquidated Damages.  UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, AT THE OPTION OF PAYEE, THE ENTIRE SUM OF PRINCIPAL AND INTEREST AND ANY OTHER AMOUNTS DUE UNDER THIS ENTITLEMENT PAYMENT PROMISSORY NOTE SHALL BECOME IMMEDIATELY DUE AND PAYABLE. IN ADDITION, PAYEE MAY DECLARE SUCH AMOUNTS IMMEDIATELY DUE AND OWING IN ACCORDANCE WITH PARAGRAPH 6.  THE AMOUNT OF PRINCIPAL THAT IS DUE AND OWING FROM MAKER TO PAYEE MAY NOT BE CAPABLE OF BEING DETERMINED IN ACCORDANCE WITH PARAGRAPHS 3 AND 9 OF THIS ENTITLEMENT PAYMENT PROMISSORY NOTE AT THE TIME OF SUCH ACCELERATION SINCE THE NUMBER OF RESIDENTIAL UNITS THAT ULTIMATELY WILL BE CONSTRUCTED ON THE PROPERTY OR APPROVED BY ANY TENTATIVE MAP APPROVAL MAY NOT BE KNOWN AT SUCH TIME.  AS SUCH, IN THE EVENT THAT PAYEE ACCELERATES THE SUM OF PRINCIPAL AND INTEREST AND ANY OTHER AMOUNTS DUE UNDER THIS ENTITLEMENT PAYMENT PROMISSORY NOTE, THE AMOUNT OF PRINCIPAL DUE AND OWING UNDER THIS ENTITLEMENT PAYMENT PROMISSORY NOTE SHALL BE DEEMED TO EQUAL THE POSITIVE DIFFERENCE, IF ANY, OF FIFTEEN MILLION DOLLARS ($15,000,000) LESS THE AMOUNT THAT MAKER SHALL HAVE PREVIOUSLY PAID TO PAYEE IN RESPECT OF ENTITLEMENT PAYMENTS AND RE-ENTITLEMENT PAYMENTS (BUT NOT INTEREST THEREON).  MAKER RECOGNIZES THAT THE PRINCIPAL AMOUNT TO BE CALCULATED UNDER THIS ENTITLEMENT PAYMENT PROMISSORY NOTE WOULD BE VERY DIFFICULT TO CALCULATE UNDER SUCH CIRCUMSTANCES AND THAT THE LIQUIDATED AMOUNT SET FORTH ABOVE IS A REASONABLE ESTIMATE OF THE AMOUNT OF ENTITLEMENT PAYMENTS THAT WOULD BE

3

EXHIBIT 1          EXHIBIT A

Signed by Judge Margaret M. Mann December 14, 2010

PAYABLE BY MAKER TO PAYEE OVER THE TERM OF THIS ENTITLEMENT PAYMENT PROMISSORY NOTE.

Maker's Initials

9.    Re-Entitlement Payments.  Within three (3) business days after each Tentative Map Approval that occurs before June 1, 2018, Maker shall pay to Payee an entitlement payment (each, a "Re-Entitlement Payment") with respect to such Tentative Map Approval.  Each Re-Entitlement Payment, for any Tentative Map Approval shall be for an amount equal to the sum of:

(a)    the product of Ten Thousand Dollars ($10,000) and the Re-Entitled Ten Thousand Dollar Portion; and

(b)    the product of (i) Twenty Thousand Dollars ($20,000) and (ii) the positive difference, if any, of the Re-Entitled Residential Units Increase less the Re-Entitled Ten Thousand Dollar Portion.

For purposes of calculating any Re-Entitlement Payment, any outstanding Unit Credit (as defined in Paragraph 10) as of the date of such Tentative Map Approval shall be applied first to reduce the Re-Entitled Residential Units Increase used to calculate clause (b) above, and second to reduce the Re-Entitled Ten Thousand Dollar Portion used to calculate (a) above.  An example Re-Entitlement Payment calculation is provided for convenience only on Exhibit B attached hereto.

10.    No Refund; Unit Credit.  Payee shall not under any circumstances be required to refund any portion of any Entitlement Payment or Re-Entitlement Payment because of a reduction in the Number of Approved Residential Units for any portion of the Property.  Without limiting the foregoing, if any Tentative Map Approval reduces the Number of Approved Residential Units for any portion of the Property, or any subsequently recorded final subdivision map reduces the number of Approved Residential Units based on environmental, physical or engineering constraints, then Maker shall accrue credit ("Unit Credit") equal to the Number of Approved Residential Units reduced by such Tentative Map Approval (or such subsequently recorded final subdivision map).  Unit Credit shall be applied, first, to any Re-Entitlement Payment in accordance with Paragraph 9 and, second, to any Entitlement Payment in accordance with Paragraph 3.  Any Unit Credit that is not applied to the calculation of the Re-Entitlement Payment or Entitlement Payment for any Tentative Map Approval shall be applied to the calculation of the Re-Entitlement Payment or Entitlement Payment for subsequent Tentative Map Approvals.

11.    Covenant to Seek Approved Residential Units.  In order to satisfy the intent of the parties to provide for Entitlement Payments to Payee, Maker covenants to act with due diligence and in good faith to pursue Tentative Map Approval of a master planned community of a minimum twelve hundred (1200) Approved Residential Units and to file for all local discretionary approvals and any necessary federal or state approvals simultaneous with the

4

EXHIBIT 1          EXHIBIT A

Signed by Judge Margaret M. Mann December 14, 2010

Tentative Map, or as soon thereafter as is legally possible. Maker further covenants that the Property will not be used in whole or in part for, and the use of the Property shall not be limited in connection with, mitigation of impacts caused by or resulting from development or use of any properties other than the Property.

12. Definitions.

(a) "Approved Residential Unit" means each Residential Unit that is constructed on the Property or approved by any Tentative Map Approval.

(b) "Aggregate Number of Approved Residential Units" means the aggregate Number of Approved Residential Units for all of the Property.

(c) "Aggregate Number of Newly Entitled Residential Units" means the aggregate Number of Newly Entitled Residential Units for all of the Property.

(d) "Aggregate Number of Re-Entitled Residential Units" means the aggregate Number of Re-Entitled Residential Units for all of the Property.

(e) "Mandatory Affordable Housing Land" means those portions of the Property that are to be occupied solely by Mandatory Affordable Housing Residential Units.

(f) "Mandatory Affordable Housing Residential Unit" means any Residential Unit that (i) the City of Santee expressly requires to be constructed as part of any Tentative Map Approval, (ii) the City of Santee requires to be made available at an affordable housing cost to extremely low, very low, or low income persons or households as those terms are defined in Chapter 2, Division 1, of the California Health and Safety Code, and (iii) Maker evidences to Payee's reasonable satisfaction that Maker must subsidize the provision of such Residential Unit, in cash or in kind.

(g) "Market Land" means the portion of the Property that is the subject of any Tentative Map and is neither Mandatory Affordable Housing Land nor any portion of the Property that, pursuant to any Tentative Map, is to be used for purposes other than the location of Approved Residential Units.

(h) "Newly Entitled Ten Thousand Dollar Portion" means, for any Tentative Map Approval, the lesser of:

(i) the positive difference, if any, of (A) 900 minus (B) the sum of (1) the Re-Entitled Residential Units Increase in connection with such Tentative Map Approval; plus (2) the Aggregate Number of Newly Entitled Residential Units with respect to all Tentative Map Approvals that occurred before such Tentative Map Approval; plus (3) the Aggregate Number of Re-Entitled Residential Units with respect to all Tentative Map Approvals that occurred before or are deemed to occur concurrently with such Tentative Map Approval (and, if the difference of (A) minus (B) is less than zero, such amount shall be deemed to be zero); or

5

EXHIBIT 1          EXHIBIT A

Signed by Judge Margaret M. Mann December 14, 2010

(ii)    the Newly Entitled Residential Units Increase.

(i)    "Newly Entitled Residential Units Increase" means, for any Tentative Map Approval, the positive difference of: (i) the Aggregate Number of Newly Entitled Residential Units immediately after such Tentative Map Approval less (ii) the Aggregate Number of Newly Entitled Residential Units immediately before such Tentative Map Approval.

(j)    "Number of Approved Residential Units" means, for any portion of the Property, the aggregate number of Approved Residential Units; provided that the Number of Approved Residential Units for each portion of the Property that is Mandatory Affordable Housing Land shall be deemed to equal the following, to be calculated as of the date of the Tentative Map Approval that approves the Approved Residential Units on such Mandatory Affordable Housing Land: the product of (i) the number of acres of such portion of the Property that is Mandatory Affordable Housing Land, and (ii) a fraction, the numerator of which is the number of Approved Residential Units for all Market Land as of such date, and the denominator of which is the number of acres of Market Land as of such date.

(k)    "Number of Newly Entitled Residential Units" means, for any portion of the Property, the Number of Approved Residential Units for which Tentative Map Approval was obtained in the first Tentative Map Approval for such portion of the Property.

(m)    "Number of Re-Entitled Residential Units" means, for any portion of the Property, the Number of Approved Residential Units for which Tentative Map Approval was obtained in all Tentative Map Approvals for such portion of the Property other than the first Tentative Map Approval for such portion of the Property. The Number of Re-Entitled Residential Units for any portion of the Property shall not be reduced to reflect any reduction in the Number of Approved Residential Units for such portion of the Property.

(l)    "Re-Entitled Ten Thousand Dollar Portion" means, for any Tentative Map Approval, the lesser of:

(i)    the positive difference, if any, of (A) 900 minus (B) the sum of (1) the Aggregate Number of Newly Entitled Residential Units with respect to all Tentative Map Approvals that occurred before such Tentative Map Approval; plus (2) the Aggregate Number of Re-Entitled Residential Units with respect to all Tentative Map Approvals that occurred before such Tentative Map Approval (and, if the difference of (A) minus (B) is less than zero, such amount shall be deemed to be zero); or

(ii)    the Re-Entitled Residential Units Increase.

(m)    "Re-Entitled Residential Units Increase" means, for any Tentative Map Approval, the positive difference of: (i) the Aggregate Number of Re-Entitled Residential Units immediately after such Tentative Map Approval less (ii) the Aggregate Number of Re-Entitled Residential Units immediately before such Tentative Map Approval.

6

Signed by Judge Margaret M. Mann December 14, 2010

(n)    "Residential Unit" means any attached or detached residential dwelling unit, including each apartment, condominium, townhome or other attached or detached residential unit, whether saleable or not.

(o)    "Tentative Map" means a map made for the purpose of showing the design and improvement of a proposed subdivision as required in Title 16 of the Santee Municipal Code and Title 7, Division 2, of the California Government Code (Subdivision Map Act) or any functional equivalent under California law.

(p)    "Tentative Map Approval" means, with respect to any portion of the Property:

(i)    the approval of any (A) General Plan Amendment, (B) Specific Plan or Planned Development Permit, and (C) Tentative Map that in each case is required by applicable law for the construction of Residential Units on such portion of the Property by the Santee City Council; provided, however, for so long as Maker (1) does not proceed with any construction activities on such portion of the Property and (2) has not expended more than $250,000 (or such greater amount as approved by Payee in its sole discretion) to process any further governmental approvals with respect to the Property, Tentative Map Approval shall not be deemed to occur for such portion of the Property until all California administrative, judicial, and referendum time periods for challenging such approval have expired, and, if any administrative, judicial or referendum challenge is initiated, the final judgment or disposition of such proceeding through any final judgment or other final resolution has occurred; or

(ii)    the issuance of a building permit for any Residential Unit on such portion of the Property if such Residential Unit is not approved pursuant to any other Tentative Map Approval.

For purposes of this Entitlement Payment Promissory Note, any Tentative Map Approvals that occur on the same day will be treated as a single Tentative Map Approval. In the event that the number of Residential Units that may be constructed in compliance with applicable law on any portion of the Property is increased through any mechanism other than the approval of a Tentative Map, then such other mechanism shall be deemed to be included within the definition of Tentative Map Approval.

13.    No Obligation; Relationship between the Parties.    Maker acknowledges that Payee shall have no obligation to Maker with respect to this Entitlement Payment Promissory Note or the Entitlement Payment Deed of Trust, except to the extent required under applicable law. Maker further acknowledges and agrees that Payee's liability shall be limited in accordance with Section 3.2 of the Purchase Agreement and that Maker's obligation to indemnify Payee in accordance with Section 3.3 of the Purchase Agreement shall continue unaffected by this Entitlement Payment Promissory Note. Maker further acknowledges that (a) the relationship between Maker and Payee shall be as lender and borrower solely, and not as partners, (b) Maker shall have full responsibility for the development of the Property, and (c) Maker shall have no claims pursuant to this Entitlement Payment Promissory Note or the Entitlement Payment Deed of Trust against Payee with respect to the Property or any aspects of the development of the

7

EXHIBIT 1        EXHIBIT A

Property. Payee shall have the right to approve or disapprove any requests by Maker for approvals related to or modifications of this Entitlement Payment Promissory Note or the Entitlement Payment Deed of Trust in its sole discretion, and Maker shall have no right to object to delays or expenses caused by Payee's decisions or the time which it takes for Payee to respond to Maker's requests for such decisions; provided, however, that Payee will not unreasonably delay Payee's response to such approvals or modifications sought by Maker. The parties agree that forty (40) days will be considered a reasonable response time under normal and usual circumstances.

14.    Foreclosure. In the event that Payee or any holder of this Entitlement Payment Promissory Note takes title to the Property, or any portion thereof, as a result of foreclosure under or enforcement of that certain Purchase Price Promissory Note of even date herewith executed by Maker in favor of Payee or that certain Purchase Price Deed of Trust of even date herewith executed by Maker, including any deed in lieu of foreclosure, then all obligations of Maker under this Entitlement Payment Promissory Note with respect to such portion of the Property shall be extinguished and satisfied.

15.    Miscellaneous Provisions. No provision of this Entitlement Payment Promissory Note may be amended, modified, supplemented, changed, waived, discharged or terminated unless Payee consents thereto in writing. In case any one or more of the provisions contained in this Entitlement Payment Promissory Note should be held to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby. This Entitlement Payment Promissory Note shall be binding upon Maker and inure to the benefit of Maker, Payee and their respective successors and assigns. Time is of the essence of this Entitlement Payment Promissory Note and the performance of each of the covenants and agreements contained herein. This Entitlement Payment Promissory Note shall be governed by and construed in accordance with the laws of the State of California. Maker hereby consents to the jurisdiction of the courts of the State of California, the courts of the United States of America located in the State of California, and appellate courts with respect to any of the foregoing courts, and consents to service of process by any means authorized by California law in any action brought under or arising from this Entitlement Payment Promissory Note.

MAKER:                          BARRATT AMERICAN INCORPORATED,
                                a Delaware corporation

                                By: _____
                                Name: _____
                                Title:    J. MICHAEL ARMSTRONG
                                               ASST. V.P.

8

EXHIBIT 1          EXHIBIT A

Title Order Number:

File Number: DIV-1005738

### Exhibit "A"

Real property in the City of Santee, County of San Diego, State of California, described as follows:

PARCEL 1:

THOSE PORTIONS OF LOTS 5 AND 6 OF THE RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF NO. 1703 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED FEBRUARY 28, 1918, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWESTERLY CORNER OF LOT 1463 CARLTON HILLS, UNIT NO. 10 ACCORDING TO OFFICIAL PLAT THEREOF NO. 6866, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED FEBRUARY 26, 1971; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 1463, SOUTH 73 DEGREES 21'45" EAST, 47.06 FEET TO AN ANGLE POINT THEREIN, BEING ALSO AN ANGLE POINT IN THE BOUNDARY OF OAK HILLS UNIT NO. 134 ACCORDING TO OFFICIAL PLAT THEREOF NO. 6542, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED NOVEMBER 18, 1969, BEING THE TRUE POINT OF BEGINNING; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 6542 AS FOLLOWS:

NORTH 20 DEGREES 54'40" EAST, 145.18 FEET; NORTH 12 DEGREES 38'48" EAST, 84.58 FEET; NORTH 03 DEGREES 38'15" EAST, 222.90 FEET AND NORTH 12 DEGREES 38'48" EAST, 206.54 FEET TO THE NORTHERLY LINE OF SAID LOT 5; THENCE EASTERLY ALONG THE NORTHERLY LINE OF SAID LOTS 5 AND 6 TO THE NORTHEAST CORNER OF SAID LOT 6; THENCE ALONG THE EASTERLY LINE OF SAID LOT 6, SOUTH 00 DEGREES 06'17" WEST 1393.06 FEET TO THE NORTHEASTERLY CORNER OF CARLTON HILLS UNIT NO. 8, ACCORDING TO OFFICIAL PLAT THEREOF NO. 6216, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED OCTOBER 23, 1968; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 6216 AS FOLLOWS:

SOUTH 67 DEGREES 20'30" WEST, 184.81 FEET; NORTH 22 DEGREES 39'30" WEST, 40.00 FEET; SOUTH 67 DEGREES 20'30" WEST, 170.00 FEET; SOUTH 06 DEGREES 57'10" WEST, 84.32 FEET; SOUTH 71 DEGREES 43'00" WEST, 639.50 FEET; NORTH 47 DEGREES 57'58" WEST, 110.50 FEET; SOUTH 71 DEGREES 43'00" WEST, 161.00 FEET; SOUTHERLY ALONG THE ARC OF A 228.00 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY THROUGH A CENTRAL ANGLE OF 07 DEGREES 15'42", A DISTANCE OF 28.90 FEET; SOUTH 73 DEGREES 43'00" WEST, 108.00 FEET; SOUTH 20 DEGREES 39'45" WEST, 70.09 FEET; SOUTH 81 DEGREES 03'14" WEST, 71.64 FEET; SOUTH 71 DEGREES 43'00" WEST, 192.00 FEET; SOUTH 61 DEGREES 56'34" WEST, 121.77 FEET; NORTH 71 DEGREES 20'30" WEST, 87.71 FEET; NORTH 89 DEGREES 54'00" WEST 110.00 FEET; SOUTH 71 DEGREES 06'00" EAST, 48.97 FEET; NORTH 74 DEGREES 54'00" WEST, 149.00 FEET; SOUTH 67 DEGREES 43'57" WEST, 43.97 FEET; NORTH 19 DEGREES 56'59" WEST, 93.45 FEET; NORTH 29 DEGREES 31'37" WEST, 163.69 FEET; AND NORTH 39 DEGREES 42'11" EAST, 93.45 FEET TO THE MOST EASTERLY CORNER OF LOT 1280 OF SAID MAP NO. 6216, BEING ALSO THE MOST SOUTHERLY CORNER OF LOT 1376 OF CARLTON HILLS UNIT NO. 9, ACCORDING TO MAP THEREOF NO. 6429, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 23, 1969; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 6429, AS FOLLOWS:

**EXHIBIT 1**          **EXHIBIT A**

NORTH 41 DEGREES 32'59" EAST, 196.98 FEET; NORTH 41 DEGREES 33'14" EAST 261.00 FEET; NORTH 53 DEGREES 14'57" EAST, 97.91 FEET; NORTH 68 DEGREES 28'56" EAST, 187.76 FEET; NORTH 40 DEGREES 36'00" EAST, 442.08 FEET; NORTH 49 DEGREES 24'00" WEST, 231.00 FEET; SOUTH 40 DEGREES 36'00" WEST, 38.00 FEET; NORTH 49 DEGREES 24'00" WEST, 115.00 FEET; SOUTH 51 DEGREES 54'36" WEST, 219.26 FEET; SOUTH 63 DEGREES 42'14" WEST, 165.28 FEET; SOUTH 75 DEGREES 58'20" WEST, 136.09 FEET; NORTH 88 DEGREES 40'00" WEST, 137.22 FEET; NORTH 69 DEGREES 41'44" WEST, 116.27 FEET; NORTH 57 DEGREES 20'08" WEST, 197.00 FEET; NORTH 49 DEGREES 02'30" WEST, 197.39 FEET; NORTH 21 DEGREES 34'40" WEST, 162.25 FEET; NORTH 82 DEGREES 30'00" WEST, 364.38 FEET; SOUTH 07 DEGREES 30'00" WEST, 75.49 FEET; AND SOUTH 08 DEGREES 09'22" EAST, 97.22 FEET TO THE NORTHEASTERLY CORNER OF CARLTON HILLS UNIT NO. 11, ACCORDING TO OFFICIAL PLAT THEREOF NO. 7133 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, RECORDED DECEMBER 8, 1971; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 7133 AS FOLLOWS:

SOUTH 81 DEGREES 50'38" WEST, 180.09 FEET; NORTH 87 DEGREES 19'12" WEST, 121.09 FEET; SOUTH 82 DEGREES 20'00" WEST, 50.00 FEET; NORTH 62 DEGREES 05'00" WEST, 449.01 FEET; SOUTH 51 DEGREES 20'00" WEST, 142.88 FEET; SOUTH 17 DEGREES 54'00" WEST, 113.72 FEET TO A POINT ON THE ARC OF A NON-TANGENT 215.00 FOOT RADIUS CURVE, CONCAVE NORTHERLY, A RADIAL LINE OF SAID CURVE, BEARING SOUTH 00 DEGREES 46'00" EAST TO SAID POINT; WESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 18 DEGREES 40'00", A DISTANCE OF 70.05 FEET; AND NON-TANGENT TO SAID CURVE SOUTH 17 DEGREES 54'00" WEST, 369.48 FEET TO THE ANGLE POINT IN THE NORTHERLY BOUNDARY OF LOT 1477 OF SAID MAP NO. 6866; THENCE ALONG THE NORTHERLY BOUNDARY OF SAID MAP NO. 6866 AS FOLLOWS:

NORTH 77 DEGREES 13'30" WEST, 187.20 FEET; NORTH 72 DEGREES 30'00" WEST, 544.64 FEET; NORTH 59 DEGREES 56'00" WEST, 72.57 FEET; AND NORTH 72 DEGREES 30'00" WEST, 78.99 FEET TO THE TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN CARLTON ESTATES, ACCORDING TO MAP NO. 8796, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON FEBRUARY 9, 1978 AS FILE NO. 78-054692 OF OFFICIAL RECORDS.

PARCEL 2:

THAT PORTION OF LOT 12 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279 RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

PARCEL 3:

THE SOUTH HALF OF LOT 1 AND ALL OF LOT 8 IN SECTION 4, TOWNSHIP 15 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF.

PARCEL 4:

THAT PORTION OF LOT 15 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

PARCEL 5:

LOT 14 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918.

**EXHIBIT 1        EXHIBIT A**

PARCEL 6:

ALL THAT PORTION OF LOT 11 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918. LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

PARCEL 7:

LOT 13 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918.

PARCEL 8:

ALL THAT PORTION OF LOT 8 OF THE RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDED OF SAN DIEGO COUNTY FEBRUARY 28, 1918 LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN COUNTY OF SAN DIEGO TRACT NO. 3675-1, ACCORDING TO MAP NO. 9902, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398660 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN COUNT OF SAN DIEGO TRACT NO. 3675-2, ACCORDING TO MAP NO. 9903, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN. DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398661 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN COUNTY OF SAN DIEGO TRACT NO. 3675-3, ACCORDING TO MAP NO. 9904, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398662 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN COUNTY OF SAN DIEGO TRACT NO. 3675-4, ACCORDING TO MAP THEREOF NO. 9905, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398663 OF OFFICIAL RECORDS.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

COMMENCING AT AN ANGLE POINT ON THE EASTERLY BOUNDARY OF THAT CERTAIN STRIP OF LAND, BEING A 30 FOOT EASEMENT AS DESCRIBED IN DEED TO THE SANTEE COUNTY WATER DISTRICT FOR ROAD AND UTILITY PURPOSES, RECORDED AUGUST 19, 1966 AS FILE NO. 134771 OF OFFICIAL RECORDS, SAID ANGLE POINT BEING THE TERMINUS OF A COURSE HAVING A BEARING AND DISTANCE OF NORTH 27 DEGREES 54'57" EAST 568.16 FEET; THENCE CONTINUING ALONG SAID EASTERLY BOUNDARY NORTH 26 DEGREES 14 EAST 846.04 FEET; THENCE LEAVING SAID EASTERLY BOUNDARY SOUTH 63 DEGREES 46' EAST 370.00 FEET; THENCE SOUTH 79 DEGREES 39' EAST, 670.81 FEET; THENCE NORTH 10 DEGREES 21' EAST, 18.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 79 DEGREES 39' WEST 110.00 FEET; THENCE NORTH 10 DEGREES 21' EAST, 170.00 FEET; THENCE SOUTH 79 DEGREES 39' EAST, 120.00 FEET, SOUTH 10 DEGREES 21' WEST 170.00 FEET; THENCE NORTH 79 DEGREES 39' WEST, 10.00 FEET TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT THAT BEARS NORTH 17 DEGREES 36' EAST, 2280.63 FEET FROM THE INTERSECTION OF THE CENTERLINE OF SYLMAST BOULEVARD WITH THE CENTERLINE OF CARLTON HILLS BOULEVARD AS SAID CENTERLINES ARE SHOWN ON MAP NO. 4364, A COPY OF WHICH IS ON

EXHIBIT 1          EXHIBIT A

FILE IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY THENCE SOUTH 75 DEGREES 57'15" EAST, 276.00 FEET; THENCE NORTH 14 DEGREES 02'45" EAST 295.00 FEET; THENCE NORTH 75 DEGREES 57'15" WEST, 355.00 FEET; THENCE SOUTH 14 DEGREES 02'45" WEST, 295.00 FEET; THENCE SOUTH 75 DEGREES 57'15" EAST 79.00 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCELS 1-A AND 1-B AS CONDEMNED AND TAKEN BY THE PADRE DAM MUNICIPAL WATER DISTRICT BY FINAL ORDER OF CONDEMNATION CASE NO. 658159-1 AND FILED FEBRUARY 18, 1994 BY THE CLERK OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, A CERTIFIED COPY OF WHICH WAS RECORDED FEBRUARY 24, 1994 AS FILE NO. 1994-0124825 OF OFFICIAL RECORDS OF SAID SAN DIEGO COUNTY.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY LINE OF THE LAND CONVEYED TO SANTEE COUNTY WATER DISTRICT RECORDED JUNE 27, 1962 AS FILE NO. 109476 OF OFFICIAL RECORDS, SAID POINT BEARS NORTH 17 DEGREES 39'17" EAST (NORTH 17 DEGREES 36'00" EAST PER SAID DEED) 2,280.63 FEET FROM THE INTERSECTION OF THE CENTERLINE OF SLYMAST BOULEVARD WITH THE CENTERLINE OF CARLTON HILLS BOULEVARD AS SAID CENTERLINES ARE SHOWN ON MAP NO. 4364 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, THENCE EASTERLY ALONG SAID SOUTHERLY LINE SOUTH 75 DEGREES 53'58" EAST, 111.82 FEET TO AN ANGLE POINT IN THAT LAND DESCRIBED IN PARCEL 1-A OF THAT FINAL ORDER OF CONDEMNATION RECORDED FEBRUARY 24, 1994 AS FILE NO. 1994-0124825 OF OFFICIAL RECORDS; THENCE ALONG THE BOUNDARY OF SAID LAND DESCRIBED IN PARCEL 1-A, SOUTH 54 DEGREES 24'52" EAST, 107.06 FEET; THENCE SOUTH 77 DEGREES 09'15" EAST, 54.25 FEET; THENCE NORTH 59 DEGREES 03'17" EAST, 77.51 FEET; THENCE NORTH 12 DEGREES 19'23" EAST, 201.08 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 12 DEGREES 19'23" EAST, 15.00 FEET; THENCE NORTH 49 DEGREES 25'48" EAST, 68.71 FEET; THENCE LEAVING SAID BOUNDARY OF PARCEL 1-A, SOUTH 43 DEGREES 01'46" WEST, 81.18 FEET, TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF LYING WESTERLY OF THE EASTERLY LINE OF THE LAND CONVEYED TO THE PADRE DAM MUNICIPAL WATER DISTRICT BY DEED RECORDED APRIL 12, 1977 AS FILE NO. 77-132403 OF OFFICIAL RECORDS OF SAID SAN DIEGO COUNTY.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF LYING WITHIN PARCEL 16 HEREINAFTER DESCRIBED.

PARCEL 9:

LOT 7 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN CARLTON ESTATES, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 8796, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON FEBRUARY 9, 1978 AS FILE NO. 78-054692 OF OFFICIAL RECORDS.

ALSO EXCEPTING FROM SAID LOT 7, THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF WOODGLENN ESTATES, ACCORDING TO MAP THEREOF NO. 7560, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 21, 1973; THENCE ON A LINE PARALLEL WITH THE WESTERLY PROLONGATION OF THE CENTER LINE OF WOODGLEN VISTA DRIVE, AS SHOWN ON MAP, NORTH 89 DEGREES 51'10" WEST, 687.38 FEET TO A POINT ON THE EASTERLY LINE OF SAID LOT 7; THENCE ALONG SAID EASTERLY LINE, NORTH 00 DEGREES 12'05" EAST, 42.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 89 DEGREES 51'10" WEST, 230.00 FEET TO THE BEGINNING OF A TANGENT 458.00 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY; THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 36 DEGREES 06'36" A DISTANCE OF 288.65 FEET; THENCE NORTH 00 DEGREES 12'05" EAST,

EXHIBIT 1          EXHIBIT A

522.49 FEET; THENCE NORTH 89 DEGREES 49'55" EAST, 500.00 FEET TO THE EASTERLY LINE OF THE SAID LOT 7; THENCE ALONG SAID EASTERLY LINE SOUTH 00 DEGREES 12'05" WEST, 610.00 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCELS A, B AND C AS SET OUT IN EXHIBIT "A" IN CERTIFICATE OF COMPLIANCE RECORDED JULY 3, 1995 AS FILE NO. 1995-0282020 OF OFFICIAL RECORDS OF SAID SAN DIEGO COUNTY.

PARCEL 10:

LOTS A AND B OF COUNTY OF SAN DIEGO TRACT NO. 3675-1, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9902, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 11:

LOT D OF COUNTY OF SAN DIEGO TRACT NO. 3675-2, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9903, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 12:

LOT F COUNTY OF SAN DIEGO TRACT NO. 3675-3, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9904, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 13:

LOT G OF COUNTY OF SAN DIEGO TRACT NO. 3675-4, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9905, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 14:

THAT PORTION OF CITY OF SANTEE TRACT NO. 83-10, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 11173, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 7, 1985, DELINEATED AND DESIGNATED AS "PORTION OF FANITA PARKWAY RESERVED FOR FUTURE STREET", ON SAID MAP.

PARCEL 15:

THAT PORTION OF LOT 5 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE WESTERLY BOUNDARY OF CARLTON HILLS UNIT NO. 5, ACCORDING TO MAP THEREOF NO. 4364, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, OCTOBER 14, 1959, WITH THE NORTHERLY LINE OF SAID LOT 5; THENCE WESTERLY ALONG SAID NORTHERLY LINE, APPROXIMATELY 160.00 FEET IN THE EASTERLY BOUNDARY OF LAND DESCRIBED IN DEED TO SANTEE COUNTY WATER DISTRICT, RECORDED MAY 4, 1965 AS FILE NO. 79629 OF OFFICIAL RECORDS; THENCE ALONG SAID EASTERLY BOUNDARY AS FOLLOWS:

SOUTH 19 DEGREES 09'00" EAST, 350.00 FEET, MORE OR LESS, TO THE BEGINNING OF A TANGENT 1920.00 FOOT RADIUS CURVE (DEED - UNDISCLOSED RADIUS), CONCAVE WESTERLY; SOUTHERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 10 DEGREES 34'00" A DISTANCE OF 354.09 FEET AND TANGENT TO SAID CURVE, SOUTH 08 DEGREES 35'00" EAST; 878.45 FEET TO THE NORTHEASTERLY CORNER OF LAND DESCRIBED IN DEED TO SANTEE COUNTY WATER DISTRICT, RECORDED JANUARY 31, 1961 AS FILE NO. 17596 OF OFFICIAL RECORDS; THENCE ALONG THE

EXHIBIT 1          EXHIBIT A

EASTERLY AND SOUTHERLY BOUNDARY OF SAID LAND AS FOLLOWS:

SOUTH 08 DEGREES 35'00" EAST, 2416.99 FEET AND SOUTH 78 DEGREES 19'48" WEST, 71.42 FEET TO THE NORTHEASTERLY CORNER OF LAND DESCRIBED IN DEED TO SANTEE COUNTY WATER DISTRICT, RECORDED OCTOBER 11, 1958 IN BOOK 7305, PAGE 551 OF OFFICIAL RECORDS; THENCE ALONG THE EASTERLY BOUNDARY OF SAID LAND AS FOLLOWS:

SOUTH 15'00'00" EAST, 490.00 FEET TO AN ANGLE POINT THEREIN, SOUTH 11 DEGREES 40'12" EAST, 350.00 FEET AND SOUTH 06 DEGREES 22'48" EAST TO THE SOUTHERLY LINE OF SAID LOT 5; THENCE EASTERLY ALONG SAID SOUTHERLY LINE TO THE WESTERLY BOUNDARY OF CARLTON HILLS UNIT NO. 2, ACCORDING TO MAP THEREOF NO. 4066, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 28, 1959; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4066 AS FOLLOWS:

NORTH 31 DEGREES 09'20" WEST, 20.00 FEET, MORE OR LESS, TO AN ANGLE POINT THEREIN, NORTH 18 DEGREES 20'00" WEST, 135.42 FEET, NORTH 14 DEGREES 24'10" EAST, 320.05 FEET, NORTH 09 DEGREES 13'00" WEST, 137.92 FEET, NORTH 21 DEGREES 20'00" WEST, 198.51 FEET, NORTH 35 DEGREES 06'00" WEST, 258.55 FEET, NORTH 01 DEGREES 24' WEST, 116.02 FEET, NORTH 34 DEGREES 07' EAST, 78.92 FEET, NORTH 87 DEGREES 39' EAST, 121.73 FEET, SOUTH 43 DEGREES 17' EAST, 120 FEET, NORTH 51 DEGREES 18' EAST, 160 FEET, NORTH 38 DEGREES 42' WEST, 58.15 FEET, NORTH 51 DEGREES 18' EAST, 60 FEET, NORTH 30 DEGREES 40' EAST, 64.11 FEET, NORTH 38 DEGREES 42' WEST 250.63 FEET, AND NORTH 72 DEGREES 06'00" EAST, 1330.30 FEET TO THE NORTHWESTERLY CORNER OF LOT 287 OF CARLTON HILLS UNIT NO. 1, ACCORDING TO MAP THEREOF NO. 4027, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 10, 1958; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4027 AS FOLLOWS:

NORTH 72 DEGREES 06'00" EAST, 105.00 FEET AND NORTH 17 DEGREES 54'00" WEST, 263.07 FEET TO THE SOUTHWESTERLY CORNER OF THAT PORTION OF CARLTON HILLS BOULEVARD, INCLUDING WITHIN THE BOUNDARY OF CARLTON HILLS UNIT NO. 4, ACCORDING TO MAP THEREOF NO. 4196, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 27, 1959; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4196, NORTH 17 DEGREES 54'00" WEST, 17.40 FEET TO THE SOUTHEASTERLY CORNER OF LAND DESCRIBED IN DEED TO ALPHA BETA ACME MARKETS, INC., RECORDED AUGUST 5, 1969 AS FILE NO. 141583 OF OFFICIAL RECORDS, BEING ALSO THE POINT OF CUSP WITH A TANGENT 20.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY IN THE BOUNDARY OF SAID LAND; THENCE ALONG THE BOUNDARY OF SAID LAND AS FOLLOWS:

SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 90 DEGREES 00'00" A DISTANCE OF 31.42 FEET, TANGENT TO SAID CURVE, SOUTH 72 DEGREES 06'00" WEST, 340.00 FEET, NORTH 17 DEGREES 54'00" WEST, 550.00 FEET AND NORTH 72 DEGREES 06'00" EAST, 360.00 FEET TO THE BOUNDARY OF SAID MAP NO. 4196; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4196 AS FOLLOWS:

NORTH 17 DEGREES 54'00 WEST, 877.95 FEET TO AN ANGLE POINT THEREIN, SOUTH 72 DEGREES 06'00" WEST, 122.50 FEET; SOUTH  57 DEGREES 48'00" WEST, 976.82 FEET, SOUTH 29 DEGREES 51'00" WEST, 866.15 FEET, NORTH 08 DEGREES 35'00" WEST, 2099.71 FEET AND NORTH 80 DEGREES 17'00" EAST, 310.13 FEET TO THE SOUTHWESTERLY CORNER OF SAID MAP NO. 4364; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4364 AS FOLLOWS:

NORTH 09 DEGREES 43'00" WEST, 280.00 FEET, SOUTH 80 DEGREES 17'00" WEST, 35.46 FEET, NORTH 79 DEGREES 20'00" WEST, 95.24 FEET, NORTH 65 DEGREES 05'00" WEST, 97.39 FEET, NORTH 54 DEGREES 55'20" WEST, 90.62 FEET, NORTH 37 DEGREES 00'00", WEST, 96.98 FEET, NORTHERLY ALONG THE ARC OF A NON-TANGENT 2080.00 FOOT RADIUS CURVE, CONCAVE WESTERLY, THROUGH A CENTRAL ANGLE OF 03 DEGREES 58'24" A DISTANCE OF 144.24 FEET AND TANGENT TO SAID CURVE, NORTH 19 DEGREES 09'00" WEST TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION  LYING WITHIN THE BOUNDARY OF COUNTY OF SAN DIEGO TRACT NO. 3776, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9517, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 9, 1980.

**EXHIBIT 1        EXHIBIT A**

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF LAKEVIEW CARLTON HILLS UNIT NO. 1, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 8738, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 13, 1977.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3718-2, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9374, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, SEPTEMBER 19, 1979.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3650-2, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 8917, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 7, 1978.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3718-1, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9300, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 24, 1979.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3717, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9007, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, OCTOBER 26, 1978.

ALSO EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST SOUTHERLY CORNER OF CHARLTON HILLS UNIT NO. 4, AS SHOWN ON MAP NO. 4196, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, SAID CORNER ALSO BEING THE INTERSECTION OF THE WESTERLY LINE OF CARLTON HILLS BOULEVARD (100 FEET WIDE) WITH THE WESTERLY PROLONGATION OF THE NORTHERLY LINE OF MAST BOULEVARD (100 FEET WIDE); THENCE ALONG SAID WESTERLY LINE OF CARLTON HILLS BOULEVARD NORTH 17 DEGREES 54'00" WEST, 17.40 FEET TO THE TRUE POINT OF BEGINNING, SAID POINT BEING THE NORTHERLY TERMINUS OF THAT CERTAIN TANGENT CURVE BEING CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 20.00 FEET AS SAID CURVE IS DESCRIBED IN THE DEED TO ALPHA BETA ACME MARKETS, INC., A DELAWARE CORPORATION, RECORDED AUGUST 5, 1969 AS FILE NO. 141583 OF OFFICIAL RECORDS, IN THE OFFICE OF THE RECORDER OF SAID COUNTY; THENCE SOUTHWESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 90 DEGREES 00'00" AN ARC LENGTH OF 31.42 FEET TO A POINT ON THE SOUTHERLY LINE OF SAID ALPHA BETA ACME MARKETS PROPERTY; THENCE ALONG SAID SOUTHERLY LINE, SOUTH 72 DEGREES 06'00" WEST, 340.00 FEET TO THE MOST SOUTHERLY CORNER OF SAID ALPHA BETA ACME MARKETS PROPERTY; THENCE AT RIGHT ANGLES, SOUTH 17 DEGREES 54'00" EAST, 102.00 FEET TO A POINT ON A LINE WHICH IS PARALLEL WITH AND DISTANT SOUTHERLY 102.00 FEET, MEASURED AT RIGHT ANGLES, FROM SAID SOUTHERLY LINE; THENCE ALONG SAID LINE, NORTH 72 DEGREES 06'00" EAST, 340.00 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 20.00 FEET; THENCE SOUTHEASTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 90 DEGREES 00'00" AN ARC LENGTH OF 31.42 FEET TO A POINT ON THE WESTERLY LINE OF SAID CARLTON HILLS BOULEVARD; THENCE ALONG SAID WESTERLY LINE NORTH 17 DEGREES 54'00" WEST, 142.00 FEET TO THE TRUE POINT OF BEGINNING. ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF CITY OF SANTEE TRACT NO. 83-10, COUNTY OF SAN DIEGO, CALIFORNIA, ACCORDING TO MAP THEREOF NO. 11173, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 7, 1985.

PARCEL 16:

EXHIBIT 1          EXHIBIT A

THAT PORTION OF LOT 8 OF RESUBDIVISION OF FANITA RANCHO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, LYING WITHIN RECORD OF SURVEY MAP NO. 8279, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 4, 1978 AND LYING SOUTHERLY OF THE SOUTHWESTERLY LINE OF COUNTY OF SAN DIEGO TRACT NO. 3675-1, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9902, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1970 AND LYING NORTHERLY OF THE NORTHERLY LINE OF PARCEL 15 HEREINABOVE DESCRIBED.

EXCEPTING THEREFROM THAT PORTION LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE BOUNDARY OF SAID RECORD OF SURVEY MAP NO. 8279, SAID POINT BEING THE MOST WESTERLY CORNER OF SAID MAP NO. 9902, SAID POINT ALSO BEING DELINEATED AND DESIGNATED AS "TPOB DD NO. 7" ON SAID RECORD OF SURVEY MAP NO. 8279; THENCE ALONG SAID BOUNDARY SOUTH 25 DEGREES 25'07" WEST, 318.4 FEET; THENCE SOUTH 22 DEGREES 55'57" WEST, 389.11 FEET TO THE BEGINNING OF A TANGENT 2080 FOOT RADIUS CURVE CONCAVE EASTERLY; THENCE SOUTHERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 33 DEGREES 55'30" A DISTANCE OF 1524.84 FEET; THENCE TANGENT TO SAID CURVE SOUTH 19 DEGREES 06'19" EAST TO THE NORTHWESTERLY CORNER OF SAID PARCEL 15, SAID POINT BEING THE POINT OF TERMINUS.

ALSO EXCEPTING THEREFROM THAT PORTION LYING EASTERLY OF THE FOLLOWING DESCRIBED LINE:

COMMENCING AT THE HEREINBEFORE MENTIONED POINT DELINEATED AND DESIGNATED AS "TPOB DD NO7" ON SAID RECORD OF SURVEY MAP NO. 8279; THENCE SOUTH 64 DEGREES 31'42" EAST, 160 FEET TO A POINT ON THE BOUNDARY OF SAID RECORD OF SURVEY MAP NO. 8279, SAID POINT BEING THE TRUE POINT OF BEGINNING; THENCE FROM SAID TRUE POINT OF BEGINNING ALONG SAID BOUNDARY SOUTH 25 DEGREES 25'07" WEST, 314.77 FEET; THENCE SOUTH 22 DEGREES 55'57" WEST, 385.60 FEET TO THE BEGINNING OF A TANGENT 1920 FOOT RADIUS CURVE CONCAVE EASTERLY; THENCE SOUTHERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 33 DEGREES 55'30" A DISTANCE OF 1407.45; THENCE TANGENT TO SAID CURVE SOUTH 19 DEGREES 06'19" EAST TO THE NORTHEASTERLY CORNER OF SAID PARCEL 15, SAID POINT BEING THE POINT OF TERMINUS.

PARCEL 17:

LOTS 22 AND 23 OF CITY OF SANTEE TRACT NO. 83-10, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 11173, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 7, 1985.

PARCEL 18:

PARCEL 3 OF PARCEL MAP NO. 2165, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 17, 1973 AS FILE NO. 73-347429 OF OFFICIAL RECORDS.

EXHIBIT 1        EXHIBIT A

## Exhibit B

### Example Calculations

**Example 1 – Entitlement Payment**

On June 1, 2006, the Property received its first Tentative Map Approval for a total of 1,200 Approved Residential Units on 1,200 acres (of which 100 are Mandatory Affordable Housing Residential Units on 50 acres of Mandatory Affordable Housing Land). The Entitlement Payment due from Maker to Payee would be calculated as follows:

1. Calculate the Number of Approved Residential Units:

   = 1,100 Approved Residential Units on Market Land
   + [(50 acres of Mandatory Affordable Housing) * (1100 Approved Residential Units on Market Land / 1150 acres of Market Land)]

   = 1,148

2. Calculate the Newly Entitled Residential Units Increase. In this case, the Number of Approved Residential Units, the Number of Newly Entitled Residential Units and the Newly Entitled Residential Units Increase all equal 1,148.

3. Calculate the Newly Entitled Ten Thousand Dollar Portion:

   = the lesser of (i) 900 and (ii) 1,148 (the Newly Entitled Residential Units Increase)

   = 900

4. Calculate the Entitlement Payment:

   = $10,000 * 900 (the Newly Entitled Ten Thousand Dollar Portion)
   + $20,000 * [1,148 (the Newly Entitled Residential Units Increase) – 900 (the Newly Entitled Ten Thousand Dollar Portion)]

   = $9,000,000 + ($20,000 * 248)

   = $13,960,000

B-1

EXHIBIT 1        EXHIBIT A

**Example 2 – Re-Entitlement Payment**

Then, on June 1, 2007, a 200-acre portion of the Property initially containing 300 Approved Residential Units is re-entitled for 400 Approved Residential Units. None of either the initial or re-entitled Approved Residential Units is a Mandatory Affordable Housing Residential Unit. The Re-Entitlement Payment due from Maker to Payee would be calculated as follows:

1. Calculate the Aggregate Number of Re-Entitled Residential Units.

   =    400 (the Number of Approved Residential Units) – 300 (the Number of Approved Residential Units obtained in the first Tentative Map Approval for such portion of the Property)

   =    100

2. Calculate the Re-Entitled Residential Units Increase.

   =    100 (the Aggregate Number of Re-Entitled Residential Units immediately after this Tentative Map Approval) – 0 (the Aggregate Number of Re-Entitled Residential Units before such Tentative Map Approval)

   =    100

3. Calculate the Re-Entitled Ten Thousand Dollar Portion:

   =    the lesser of (i) [900 minus 1,148 (the Aggregate Number of Newly Entitled Residential Units with respect to all Tentative Map Approvals that occurred before this Tentative Map Approval)] [or zero, if the difference is less than zero] and (ii) 100 (the Re-Entitled Residential Units Increase)

   =    0

4. Calculate the Re-Entitlement Payment:

   =    $10,000 * 0 (the Re-Entitled Ten Thousand Dollar Portion)
        + $20,000 * [100 (the Re-Entitled Residential Units Increase) – 0 (the Re-Entitled Ten Thousand Dollar Portion)]

   =    0 + ($20,000 * 100)

   =    $2,000,000

B-2

EXHIBIT 1        EXHIBIT A

THE ORIGINAL OF THIS DOCUMENT
WAS RECORDED ON JUL 01, 2003
DOCUMENT NUMBER 2003-0782065
GREGORY J. SMITH, COUNTY RECORDER
SAN DIEGO COUNTY RECORDER'S OFFICE
TIME: 2:07 PM

RECORDING REQUESTED BY:
FIRST AMERICAN TITLE INSURANCE CO.
Subdivision Mapping Department

WHEN RECORDED MAIL TO:

WESTBROOK FANITA RANCH, L.P
ONE BEACON STREET, STE. 3400
BOSTON, MA 02108

ATTN; GARRETT SOLOMON

_____

(title of document)

ENTITLEMENT PAYMENT  DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION



1

EXHIBIT 1        EXHIBIT B

## ENTITLEMENT PAYMENT DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING

RECORDING REQUESTED BY

_____
_____
_____
Attn: _____

WHEN RECORDED, MAIL TO:
WESTBROOK FANITA RANCH, L.P.
One Beacon Street, Suite 3400
Boston, MA  02108
Attn:  Garrett Solomon

_____

(Space Above Line For Recorder's Use Only)

### ENTITLEMENT PAYMENT DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING

THIS ENTITLEMENT PAYMENT DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING (this "Entitlement Payment Deed of Trust") is made this 30th day of June, 2003, between BARRATT AMERICAN INCORPORATED, a Delaware corporation, herein called TRUSTOR, whose address is 5950 Priestly Drive, Suite 101, Carlsbad, CA 92008, to FIRST AMERICAN TITLE INSURANCE COMPANY herein called TRUSTEE, for the benefit of WESTBROOK FANITA RANCH, L.P., a Delaware limited partnership, whose address is 3030 LBJ Freeway, Suite 1500, Dallas, TX 75230, herein called BENEFICIARY.

WITNESSETH:  That for good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Trustor grants, assigns and transfers to Trustee in trust, with Power of Sale, for the benefit of Beneficiary:

### GRANTING CLAUSE FIRST

That certain real property located in the City of Santee, County of San Diego, State of California, more particularly described in Exhibit "1" attached hereto and incorporated herein by this reference; together with the rents, issues and profits thereof, subject to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

**Page 1 of 8**

**EXHIBIT 1**        **EXHIBIT B**

## GRANTING CLAUSE SECOND

All that certain personal property used in the operation of the real property described in GRANTING CLAUSE FIRST, whether now owned or hereafter acquired, including but not limited to all furniture, fixtures and equipment, including maintenance equipment, and all renewals, replacements or substitutions thereof or additions thereto, and all materials and equipment acquired for use in or to be incorporated in the improvements constructed or to be constructed on said real property, and all renewals and replacements therefor, and all warranties in which Trustor may now or hereafter have an interest relating to work, labor, skill or materials furnished in connection with the construction of any improvements on said real property, all plans and specifications which have been or will be prepared by or for Trustor related to improvements on said real property whether constructed or not.

All of said real and personal property granted, assigned and transferred by Trustor to Trustee together with all other property hereafter granted, assigned and transferred to Trustee under this Entitlement Payment Deed of Trust is herein called "<u>Property</u>".

For the purpose of securing the following obligations (collectively, the "<u>Secured Obligations</u>"): (1) payment of Entitlement Payments (as defined in the Entitlement Payment Promissory Note), with interest thereon, according to the terms of a certain Entitlement Payment Promissory Note of even date herewith made with Trustor, payable to the order of Beneficiary, and extensions or renewals thereof (the "<u>Entitlement Payment Promissory Note</u>"); (2) the performance of each agreement of Trustor contained herein; (3) payment of any sums and interest thereon which may hereafter be loaned to Trustor by Beneficiary, or the then owner of said property, when evidenced by a promissory note or notes reciting that they are secured by this Entitlement Payment Deed of Trust; and (4) performance of any obligation of Trustor to Beneficiary which may hereafter be evidenced by an agreement or other writing reciting that such obligation is secured by this Entitlement Payment Deed of Trust. For the avoidance of doubt, the Secured Obligations exclude the obligation to make payment of Re-Entitlement Payments under the Entitlement Payment Promissory Note and the obligations under Paragraph 12 of the Entitlement Payment Promissory Note. <u>Each capitalized term used herein without definition shall have the meaning assigned to such term in the Entitlement Payment Promissory Note.</u>

1. To protect the security of this Entitlement Payment Deed of Trust, Trustor agrees:

1.1. To keep the Property in good condition and repair; not to remove or demolish any building thereon, except to further develop the Property; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; and to cultivate, irrigate, fertilize, fumigate, prune and do all other acts

Page 2 of 8

SD\380791.10

**EXHIBIT 1        EXHIBIT B**

which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

1.2.    To provide, maintain and deliver to Beneficiary reasonable evidence of such property casualty and liability insurance with respect to Trustor and the Property as shall be reasonably requested in writing by Beneficiary. During the period of time that any construction is to take place on the Property, Trustor shall maintain course of construction insurance with a loss payable clause jointly in favor of Beneficiary which insurance shall not be modified or canceled except upon at least thirty (30) days written notice to Beneficiary. The amount collected under any casualty insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at the option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

1.3.    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee.

1.4.    To pay before delinquency all taxes and assessments affecting the Property, including assessments on appurtenant water stock, if any, when due; all encumbrances, charges and liens, with interest, on the Property, or any part thereof, which appear to be prior or superior hereto; and all allowable expenses of this trust.

1.5.    To act with due diligence and in good faith to pursue Tentative Map Approval for the construction of a master planned community of at least 900 Residential Units on the Property, and any other necessary ancillary property entitlement approvals required for the construction of Residential Units on the Property, and to do so in a manner that does not inequitably deprive Beneficiary of Entitlement Payments in accordance with the intent and purpose of the Entitlement Payment Promissory Note.

Should Trustor fail to do any act as provided in this Entitlement Payment Deed of Trust (following written notice from Beneficiary of such default and Trust's failure to cure such default within five (5) business days after such default; provided that if such default is not susceptible of being cured within such five (5) business day period and Trustor initiates the cure of such default within such five (5) business day period and thereafter diligently pursues the cure of such default to completion, then such five (5) business day period shall be extended so long as Trustor diligently pursues such cure) or make any payment as provided in this Entitlement Payment Deed of Trust, then Beneficiary or Trustee, but without obligation so to do and without further notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: (a) make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; (b) appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; (c) pay, purchase, contest or compromise any encumbrance, charge or lien which in the

Page 3 of 8

SDU380791.10

EXHIBIT 1        EXHIBIT B

reasonable judgment of either appears to be prior or superior hereto; and (d), in exercising any such powers, pay allowable expenses.

1.6.   To pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to the paragraph directly above, as authorized by this Entitlement Payment Deed of Trust, with interest from the date of such expenditure at the maximum amount then allowed by law.

2.   It is mutually agreed:

2.1.   That any award of damages in connection with any condemnation for public use of or injury to the Property, or any part thereof, is hereby assigned and shall be paid to Beneficiary who may reasonably apply or release such moneys received by it in the same manner and with the same effect as above provided for disposition of proceeds of casualty insurance.

2.2.   That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

2.3.   That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and without affecting the personal liability of any person or payment of the indebtedness secured hereby, Trustee shall: reconvey any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

2.4.   That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon payment of reasonable Trustee's fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto".

2.5.   That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these trusts, to collect the rents, issues and profits of the Property, reserving unto Trustor the right, prior to any Event of Default, as such term is defined in the Entitlement Payment Promissory Note, to collect and retain such rents, issues and profits as they become due and payable.

2.6.   That upon the occurrence of any Event of Default, Beneficiary may exercise one or more of the following rights and remedies to the extent authorized by California law:

(a)   Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall,

Page 4 of 8

SD\380791.10

**EXHIBIT 1          EXHIBIT B**

Signed by Judge Margaret M. Mann December 14, 2010

upon request by Trustee, deposit with Trustee copies of this Entitlement Payment Deed of Trust and all documents evidencing amounts secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for lawful money of the United States, payable at time of sale; provided, however, Beneficiary shall have the right to submit a credit bid up to the amount then secured by this Entitlement Payment Deed of Trust. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all reasonable and legal costs, fees and expenses of Trustee and Beneficiary and of this trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: first, all sums expended under the terms hereof, not then repaid, with accrued interest at the maximum amount then allowed by law; then, to the payment of the Secured Obligations, in such order as Beneficiary, in its sole discretion, may elect; and the remainder, if any, to the person or persons legally entitled thereto. Trustor and Beneficiary further agree that in the event of a mortgage foreclosure or trustee's sale under a prior mortgage or deed of trust, any consideration paid at such mortgage foreclosure or trustee's sale in excess of the amount due and owing on such prior mortgage or deed of trust shall be applied to any amount due and owing to Beneficiary under this Entitlement Payment Deed of Trust calculated in the manner indicated above.

(b)     Beneficiary may bring an action to foreclose this Entitlement Payment Deed of Trust or to judicially enforce its provisions or any of the indebtedness or obligations secured by this Entitlement Payment Deed of Trust. No provision hereof shall limit the right of any party hereto to exercise legally available self-help remedies such as setoff or non-judicial foreclosure against or sale of any real or personal property, collateral or security, or to obtain provisional or ancillary remedies from a court of competent jurisdiction before, after, or during the pendency of any arbitration or other proceeding. The exercise of a remedy does not waive the right of any party to resort to judicial reference.

(c)     Upon any Event of Default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the Property, or any part thereof, in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and

Page 5 of 8

SD\380791.10

**EXHIBIT 1        EXHIBIT B**

Signed by Judge Margaret M. Mann December 14, 2010

apply the same, less allowable expenses of operation, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

2.7.    That if Trustor sells, conveys or alienates the Property, or allows title or any interest in the Property to be divested, whether voluntarily or involuntarily; or in the event of a sale or transfer, directly or indirectly, of beneficial interest in Trustor equal to fifty percent (50%) or more of the beneficial ownership interests of Trustor outstanding as of the date hereof; or if title to the Property be subject to any lien or charge, voluntarily or involuntarily, contractual or statutory, without the prior written consent of Beneficiary, then Beneficiary may, at its option and without prior notice, declare all sums secured by this Entitlement Payment Deed of Trust immediately due and payable, irrespective of their stated due dates, and may exercise all other rights and remedies provided in this Entitlement Payment Deed of Trust.

2.8.    That Beneficiary may, from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Entitlement Payment Deed of Trust is recorded and the name and address of the new Trustee.

2.9.    That this Entitlement Payment Deed of Trust applies to and inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and permitted assigns. The term Beneficiary shall include Beneficiary's successor in interest, whether or not named as Beneficiary herein. In this Entitlement Payment Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

2.10.    That Trustee accepts this trust when this Entitlement Payment Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Entitlement Payment Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

2.11.    That as additional security for the Secured Obligations, Trustor hereby grants to Beneficiary a security interest in all of the personal property which is a part of the Property. This Entitlement Payment Deed of Trust constitutes a fixture filing under Sections 9313 and 9402(6) of the California Uniform Commercial Code, as amended or recodified from time to time.

Page 6 of 8

SD\J380791.10

EXHIBIT 1        EXHIBIT B

under Sections 9313 and 9402(6) of the California Uniform Commercial Code, as amended or recodified from time to time.

3.    From time to time, upon Trustor's written request to Beneficiary requesting a release and a partial reconveyance of any lot (the "Subject Lot") that is a legal lot under the California Subdivision Map Act, so long as there shall be no uncured Event of Default, a partial reconveyance from the lien or charge of this Entitlement Payment Deed of Trust may be had and will be given upon the request of Trustor as to such Subject Lot, subject to the following terms and conditions:

3.1.    Trustor shall have obtained Tentative Map Approval with respect to a portion of the Property that fully includes such Subject Lot;

3.2.    Trustor shall have paid to Beneficiary in full all amounts then due and payable under the Entitlement Payment Loan Documents, including the Entitlement Payment with respect to any Approved Residential Units for such Subject Lot;

3.3.    Trustor shall have repaid with interest all of the amounts expended by Beneficiary to protect the security of this Entitlement Payment Deed of Trust that are then required to be paid hereunder, including without limitation any amounts expended for keeping senior encumbrances current, payment of taxes, assessments and attorneys' fees, if any, and shall not be in default of its obligation to make any other payments required to be paid hereunder; and

3.4.    After giving effect to the partial reconveyance, the Property continuing to be subject to the lien of the Entitlement Payment Deed of Trust shall constitute one or more legal lots under the California Subdivision Map Act, and no further governmental approvals or development actions shall be required to be obtained or completed in order for Trustor to be able to sell the retained portion of the Property in accordance with applicable law.

TRUSTOR:

BARRATT AMERICAN INCORPORATED,
a Delaware corporation

By: _____
Name: ___J. MICHAEL ARMSTRONG___
Title: _____ASST. VP_____

BENEFICIARY:

WESTBROOK FANITA RANCH, L.P., a
Delaware limited partnership

By:  Westerra Management, L.L.C.,
     its authorized representative

     By: _____
     Name: _____
     Title: _____

F:\Lbre\legal\private\CA\Fanita\Cont\Barratt American Inc\EP Deed of Trust (Closing Doc).doc
June 27, 2003

EXHIBIT 1          EXHIBIT B

3.      From time to time, upon Trustor's written request to Beneficiary requesting a release and a partial reconveyance of any lot (the "Subject Lot") that is a legal lot under the California Subdivision Map Act, so long as there shall be no uncured Event of Default, a partial reconveyance from the lien or charge of this Entitlement Payment Deed of Trust may be had and will be given upon the request of Trustor as to such Subject Lot, subject to the following terms and conditions:

3.1.    Trustor shall have obtained Tentative Map Approval with respect to a portion of the Property that fully includes such Subject Lot;

3.2.    Trustor shall have paid to Beneficiary in full all amounts then due and payable under the Entitlement Payment Loan Documents, including the Entitlement Payment with respect to any Approved Residential Units for such Subject Lot;

3.3.    Trustor shall have repaid with interest all of the amounts expended by Beneficiary to protect the security of this Entitlement Payment Deed of Trust that are then required to be paid hereunder, including without limitation any amounts expended for keeping senior encumbrances current, payment of taxes, assessments and attorneys' fees, if any, and shall not be in default of its obligation to make any other payments required to be paid hereunder; and

3.4.    After giving effect to the partial reconveyance, the Property continuing to be subject to the lien of the Entitlement Payment Deed of Trust shall constitute one or more legal lots under the California Subdivision Map Act, and no further governmental approvals or development actions shall be required to be obtained or completed in order for Trustor to be able to sell the retained portion of the Property in accordance with applicable law.

TRUSTOR:

BARRATT AMERICAN INCORPORATED,
a Delaware corporation

By:_____
Name:_____
Title:_____

BENEFICIARY:

WESTBROOK FANITA RANCH, L.P., a
Delaware limited partnership

By: Westerra Management, L.L.C.,
    its authorized representative

By:  X_____
Name:  Garrett Solomon
Title:  Vice President

SDU380791.10

EXHIBIT 1        EXHIBIT B

STATE OF CALIFORNIA )
                    )  ss.
COUNTY OF San Diego )

On June 30, 2003 before me, Kelly Nesbitt, a
notary public in and for said State, personally appeared
J. Michael Armstrong, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

Signature Kelly Nesbitt

KELLY NESBITT
COMM. #1350520
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
APRIL 9, 2006
(Seal)

STATE OF CALIFORNIA )
                    )  ss.
COUNTY OF _____ )

On _____ before me, _____, a
notary public in and for said State, personally appeared
_____, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

Signature _____

(Seal)

**EXHIBIT 1          EXHIBIT B**

STATE OF CALIFORNIA          )
                             )   ss.
COUNTY OF San Diego )

On 6-30-03 before me, GINA DAVID a
notary   public   in   and   for   said   State,   personally   appeared
Garrett Soloman , personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

GINA M. DAVID
Commission # 1411574
Notary Public - California
San Diego County
My Comm. Expires Apr 18, 2007

WITNESS my hand and official seal.

Signature _____                          (Seal)


STATE OF CALIFORNIA          )
                             )   ss.
COUNTY OF _____ )

On _____ before me, _____ a
notary   public   in   and   for   said   State,   personally   appeared
_____, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

Signature _____                          (Seal)


Page 8 of 8

SD\380791.10

EXHIBIT 1          EXHIBIT B

Title Order Number:

File Number: DIV-1005738

Exhibit "1"

Real property in the City of Santee, County of San Diego, State of California, described as follows:

PARCEL 1:

THOSE PORTIONS OF LOTS 5 AND 6 OF THE RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF NO. 1703 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED FEBRUARY 28, 1918, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWESTERLY CORNER OF LOT 1463 CARLTON HILLS, UNIT NO. 10 ACCORDING TO OFFICIAL PLAT THEREOF NO. 6866, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED FEBRUARY 26, 1971; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 1463, SOUTH 73 DEGREES 21'45" EAST, 47.06 FEET TO AN ANGLE POINT THEREIN, BEING ALSO AN ANGLE POINT IN THE BOUNDARY OF OAK HILLS UNIT NO. 134 ACCORDING TO OFFICIAL PLAT THEREOF NO. 6542, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED NOVEMBER 18, 1969, BEING THE TRUE POINT OF BEGINNING; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 6542 AS FOLLOWS:

NORTH 20 DEGREES 54'40" EAST, 145.18 FEET; NORTH 12 DEGREES 38'48" EAST, 84.58 FEET; NORTH 03 DEGREES 38'15" EAST, 222.90 FEET AND NORTH 12 DEGREES 38'48" EAST, 206.54 FEET TO THE NORTHERLY LINE OF SAID LOT 5; THENCE EASTERLY ALONG THE NORTHERLY LINE OF SAID LOTS 5 AND 6 TO THE NORTHEAST CORNER OF SAID LOT 6; THENCE ALONG THE EASTERLY LINE OF SAID LOT 6, SOUTH 00 DEGREES 06'17" WEST 1393.06 FEET TO THE NORTHEASTERLY CORNER OF CARLTON HILLS UNIT NO. 8, ACCORDING TO OFFICIAL PLAT THEREOF NO. 6216, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED OCTOBER 23, 1968; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 6216 AS FOLLOWS:

SOUTH 67 DEGREES 20'30" WEST, 184.81 FEET; NORTH 22 DEGREES 39'30" WEST, 40.00 FEET; SOUTH 67 DEGREES 20'30" WEST, 170.00 FEET; SOUTH 06 DEGREES 57'10" WEST, 84.32 FEET; SOUTH 71 DEGREES 43'00" WEST, 639.50 FEET; NORTH 47 DEGREES 57'58" WEST, 110.50 FEET; SOUTH 71 DEGREES 43'00" WEST, 161.00 FEET; SOUTHERLY ALONG THE ARC OF A 228.00 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY THROUGH A CENTRAL ANGLE OF 07 DEGREES 15'42", A DISTANCE OF 28.90 FEET; SOUTH 73 DEGREES 43'00" WEST, 108.00 FEET; SOUTH 20 DEGREES 39'45" WEST, 70.09 FEET; SOUTH 81 DEGREES 03'14" WEST, 71.64 FEET; SOUTH 71 DEGREES 43'00" WEST, 192.00 FEET; SOUTH 61 DEGREES 56'34" WEST, 121.77 FEET; NORTH 71 DEGREES 20'30" WEST, 87.71 FEET; NORTH 89 DEGREES 54'00" WEST 110.00 FEET; NORTH 15 DEGREES 06'00" EAST, 48.97 FEET; NORTH 74 DEGREES 54'00" WEST, 149.00 FEET; SOUTH 67 DEGREES 43'57" WEST, 43.97 FEET; NORTH 19 DEGREES 56'59" WEST, 93.45 FEET; NORTH 29 DEGREES 31'37" WEST, 163.69 FEET; AND NORTH 39 DEGREES 42'11" EAST, 93.45 FEET TO THE MOST EASTERLY CORNER OF LOT 1280 OF SAID MAP NO. 6216, BEING ALSO THE MOST SOUTHERLY CORNER OF LOT 1376 OF CARLTON HILLS UNIT NO. 9, ACCORDING TO MAP THEREOF NO. 6429, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 23, 1969; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 6429, AS FOLLOWS:

**EXHIBIT 1      EXHIBIT B**

NORTH 41 DEGREES 32'59" EAST, 196.98 FEET; NORTH 41 DEGREES 33'14" EAST 261.00 FEET; NORTH 53 DEGREES 14'57" EAST, 97.91 FEET; NORTH 68 DEGREES 28'56" EAST, 187.76 FEET; NORTH 40 DEGREES 36'00" EAST, 442.08 FEET; NORTH 49 DEGREES 24'00" WEST, 231.00 FEET; SOUTH 40 DEGREES 36'00" WEST, 38.00 FEET; NORTH 49 DEGREES 24'00" WEST, 115.00 FEET; SOUTH 51 DEGREES 54'36" WEST, 219.26 FEET; SOUTH 63 DEGREES 42'14" WEST, 165.28 FEET; SOUTH 75 DEGREES 58'20" WEST, 136.09 FEET; NORTH 88 DEGREES 40'00" WEST, 137.22 FEET; NORTH 69 DEGREES 41'44" WEST, 116.27 FEET; NORTH 57 DEGREES 20'00" WEST, 197.00 FEET; NORTH 49 DEGREES 02'30" WEST, 197.39 FEET; NORTH 21 DEGREES 34'40" WEST, 162.25 FEET; NORTH 82 DEGREES 30'00" WEST, 364.38 FEET; SOUTH 07 DEGREES 30'00" WEST, 75.49 FEET; AND SOUTH 08 DEGREES 09'22" EAST, 97.22 FEET TO THE NORTHEASTERLY CORNER OF CARLTON HILLS UNIT NO. 11, ACCORDING TO OFFICIAL PLAT THEREOF NO. 7133 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, RECORDED DECEMBER 8, 1971; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 7133 AS FOLLOWS:

SOUTH 81 DEGREES 50'38" WEST, 180.09 FEET; NORTH 87 DEGREES 19'12" WEST, 121.09 FEET; SOUTH 82 DEGREES 20'00" WEST, 50.00 FEET; NORTH 62 DEGREES 05'00" WEST, 449.01 FEET; SOUTH 51 DEGREES 20'00" WEST, 142.88 FEET; SOUTH 17 DEGREES 54'00" WEST, 113.72 FEET TO A POINT ON THE ARC OF A NON-TANGENT 215.00 FOOT RADIUS CURVE, CONCAVE NORTHERLY, A RADIAL LINE OF SAID CURVE, BEARING SOUTH 00 DEGREES 46'00" EAST TO SAID POINT; WESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 18 DEGREES 40'00", A DISTANCE OF 70.05 FEET; AND NON-TANGENT TO SAID CURVE SOUTH 17 DEGREES 54'00" WEST, 369.48 FEET TO THE ANGLE POINT IN THE NORTHERLY BOUNDARY OF LOT 1477 OF SAID MAP NO. 6866; THENCE ALONG THE NORTHERLY BOUNDARY OF SAID MAP NO. 6866 AS FOLLOWS:

NORTH 77 DEGREES 13'30" WEST, 187.20 FEET; NORTH 72 DEGREES 30'00" WEST, 544.64 FEET; NORTH 59 DEGREES 56'00" WEST, 72.57 FEET; AND NORTH 72 DEGREES 30'00" WEST, 78.99 FEET TO THE TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN CARLTON ESTATES, ACCORDING TO MAP NO. 8796, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON FEBRUARY 9, 1978 AS FILE NO. 78-054692 OF OFFICIAL RECORDS.

PARCEL 2:

THAT PORTION OF LOT 12 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279 RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

PARCEL 3:

THE SOUTH HALF OF LOT 1 AND ALL OF LOT 8 IN SECTION 4, TOWNSHIP 15 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF.

PARCEL 4:

THAT PORTION OF LOT 15 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

PARCEL 5:

LOT 14 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918.

EXHIBIT 1        EXHIBIT B

PARCEL 6:

ALL THAT PORTION OF LOT 11 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918.. LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

PARCEL 7:

LOT 13 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918.

PARCEL 8:

ALL THAT PORTION OF LOT 8 OF THE RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDED OF SAN DIEGO COUNTY FEBRUARY 28, 1918 LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM THAT PORTION LYING WITHIN COUNTY OF SAN DIEGO TRACT NO. 3675-1, ACCORDING TO MAP NO. 9902, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398660 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN COUNT OF SAN DIEGO TRACT NO. 3675-2, ACCORDING TO MAP NO. 9903, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398661 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN COUNTY OF SAN DIEGO TRACT NO. 3675-3, ACCORDING TO MAP NO. 9904, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398662 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN COUNTY OF SAN DIEGO TRACT NO. 3675-4, ACCORDING TO MAP THEREOF NO. 9905, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398663 OF OFFICIAL RECORDS.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

COMMENCING AT AN ANGLE POINT ON THE EASTERLY BOUNDARY OF THAT CERTAIN STRIP OF LAND, BEING A 30 FOOT EASEMENT AS DESCRIBED IN DEED TO THE SANTEE COUNTY WATER DISTRICT FOR ROAD AND UTILITY PURPOSES, RECORDED AUGUST 19, 1966 AS FILE NO. 134771 OF OFFICIAL RECORDS, SAID ANGLE POINT BEING THE TERMINUS OF A COURSE HAVING A BEARING AND DISTANCE OF NORTH 27 DEGREES 54'57" EAST 568.16 FEET; THENCE CONTINUING ALONG SAID EASTERLY BOUNDARY NORTH 26 DEGREES 14 EAST 846.04 FEET; THENCE LEAVING SAID EASTERLY BOUNDARY SOUTH 63 DEGREES 46' EAST 370.00 FEET; THENCE SOUTH 79 DEGREES 39' EAST, 670.81 FEET; THENCE NORTH 10 DEGREES 21' EAST, 18.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 79 DEGREES 39' WEST 110.00 FEET; THENCE NORTH 10 DEGREES 21' EAST, 170.00 FEET; THENCE SOUTH 79 DEGREES 39' EAST, 120.00 FEET, SOUTH 10 DEGREES 21' EAST 170.00 FEET; THENCE NORTH 79 DEGREES 39' WEST, 10.00 FEET TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT THAT BEARS NORTH 17 DEGREES 36' EAST, 2280.63 FEET FROM THE INTERSECTION OF THE CENTERLINE OF SYLMAST BOULEVARD WITH THE CENTERLINE OF CARLTON HILLS BOULEVARD AS SAID CENTERLINES ARE SHOWN ON MAP NO. 4364, A COPY OF WHICH IS ON

**EXHIBIT 1**     **EXHIBIT B**

FILE IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY THENCE SOUTH 75 DEGREES 57'15" EAST, 276.00 FEET; THENCE NORTH 14 DEGREES 02'45" EAST 295.00 FEET; THENCE NORTH 75 DEGREES 57'15" WEST, 355.00 FEET; THENCE SOUTH 14 DEGREES 02'45" WEST, 295.00 FEET; THENCE SOUTH 75 DEGREES 57'15" EAST 79.00 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCELS 1-A AND 1-B AS CONDEMNED AND TAKEN BY THE PADRE DAM MUNICIPAL WATER DISTRICT BY FINAL ORDER OF CONDEMNATION CASE NO. 658159-1 AND FILED FEBRUARY 18, 1994 BY THE CLERK OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, A CERTIFIED COPY OF WHICH WAS RECORDED FEBRUARY 24, 1994 AS FILE NO. 1994-0124825 OF OFFICIAL RECORDS OF SAID SAN DIEGO COUNTY.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY LINE OF THE LAND CONVEYED TO SANTEE COUNTY WATER DISTRICT RECORDED JUNE 27, 1962 AS FILE NO. 109476 OF OFFICIAL RECORDS, SAID POINT BEARS NORTH 17 DEGREES 39'17" EAST (NORTH 17 DEGREES 36'00" EAST PER SAID DEED) 2,280.63 FEET FROM THE INTERSECTION OF THE CENTERLINE OF SLYMAST BOULEVARD WITH THE CENTERLINE OF CARLTON HILLS BOULEVARD AS SAID CENTERLINES ARE SHOWN ON MAP NO. 4364 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, THENCE EASTERLY ALONG SAID SOUTHERLY LINE SOUTH 75 DEGREES 53'58" EAST, 111.82 FEET TO AN ANGLE POINT IN THAT LAND DESCRIBED IN PARCEL 1-A OF THAT FINAL ORDER OF CONDEMNATION RECORDED FEBRUARY 24, 1994 AS FILE NO. 1994-0124825 OF OFFICIAL RECORDS; THENCE ALONG THE BOUNDARY OF SAID LAND DESCRIBED IN PARCEL 1-A, SOUTH 54 DEGREES 24'52" EAST, 107.06 FEET; THENCE SOUTH 77 DEGREES 09'15" EAST, 54.25 FEET; THENCE NORTH 59 DEGREES 03'17" EAST, 77.51 FEET; THENCE NORTH 12 DEGREES 19'23" EAST, 201.08 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 12 DEGREES 19'23" EAST, 15.00 FEET; THENCE NORTH 49 DEGREES 25'48" EAST, 68.71 FEET; THENCE LEAVING SAID BOUNDARY OF PARCEL 1-A, SOUTH 43 DEGREES 01'46" WEST, 81.18 FEET, TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF LYING WESTERLY OF THE EASTERLY LINE OF THE LAND CONVEYED TO THE PADRE DAM MUNICIPAL WATER DISTRICT BY DEED RECORDED APRIL 12, 1977 AS FILE NO. 77-132403 OF OFFICIAL RECORDS OF SAID SAN DIEGO COUNTY.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF LYING WITHIN PARCEL 16 HEREINAFTER DESCRIBED.

PARCEL 9:

LOT 7 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN CARLTON ESTATES, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 8796, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON FEBRUARY 9, 1978 AS FILE NO. 78-054692 OF OFFICIAL RECORDS.

ALSO EXCEPTING FROM SAID LOT 7, THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF WOODGLENN ESTATES, ACCORDING TO MAP THEREOF NO. 7560, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 21, 1973; THENCE ON A LINE PARALLEL WITH THE WESTERLY PROLONGATION OF THE CENTER LINE OF WOODGLEN VISTA DRIVE, AS SHOWN ON MAP, NORTH 89 DEGREES 51'10" WEST, 687.38 FEET TO A POINT ON THE EASTERLY LINE OF SAID LOT 7; THENCE ALONG SAID EASTERLY LINE, NORTH 00 DEGREES 12'05" EAST, 42.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 89 DEGREES 51'10" WEST, 230.00 FEET TO THE BEGINNING OF A TANGENT 458.00 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY; THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 36 DEGREES 06'36" A DISTANCE OF 288.65 FEET; THENCE NORTH 00 DEGREES 12'05" EAST,

EXHIBIT 1        EXHIBIT B

522.49 FEET; THENCE NORTH 89 DEGREES 49'55" EAST, 500.00 FEET TO THE EASTERLY LINE OF THE SAID LOT 7; THENCE ALONG SAID EASTERLY LINE SOUTH 00 DEGREES 12'05" WEST, 610.00 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCELS A, B AND C AS SET OUT IN EXHIBIT "A" IN CERTIFICATE OF COMPLIANCE RECORDED JULY 3, 1995 AS FILE NO. 1995-0282020 OF OFFICIAL RECORDS OF SAID SAN DIEGO COUNTY.

PARCEL 10:

LOTS A AND B OF COUNTY OF SAN DIEGO TRACT NO. 3675-1, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9902, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 11:

LOT D OF COUNTY OF SAN DIEGO TRACT NO. 3675-2, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9903, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 12:

LOT F COUNTY OF SAN DIEGO TRACT NO. 3675-3, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9904, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 13:

LOT G OF COUNTY OF SAN DIEGO TRACT NO. 3675-4, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9905, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 14:

THAT PORTION OF CITY OF SANTEE TRACT NO. 83-10, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 11173, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 7, 1985, DELINEATED AND DESIGNATED AS "PORTION OF FANITA PARKWAY RESERVED FOR FUTURE STREET", ON SAID MAP.

PARCEL 15:

THAT PORTION OF LOT 5 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE WESTERLY BOUNDARY OF CARLTON HILLS UNIT NO. 5, ACCORDING TO MAP THEREOF NO. 4364, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, OCTOBER 14, 1959, WITH THE NORTHERLY LINE OF SAID LOT 5; THENCE WESTERLY ALONG SAID NORTHERLY LINE, APPROXIMATELY 160.00 FEET IN THE EASTERLY BOUNDARY OF LAND DESCRIBED IN DEED TO SANTEE COUNTY WATER DISTRICT, RECORDED MAY 4, 1965 AS FILE NO. 79629 OF OFFICIAL RECORDS; THENCE ALONG SAID EASTERLY BOUNDARY AS FOLLOWS:

SOUTH 19 DEGREES 09'00" EAST, 350.00 FEET, MORE OR LESS, TO THE BEGINNING OF A TANGENT 1920.00 FOOT RADIUS CURVE (DEED - UNDISCLOSED RADIUS), CONCAVE WESTERLY; SOUTHERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 10 DEGREES 34'00" A DISTANCE OF 354.09 FEET AND TANGENT TO SAID CURVE, SOUTH 08 DEGREES 35'00" EAST, 878.45 FEET TO THE NORTHEASTERLY CORNER OF LAND DESCRIBED IN DEED TO SANTEE COUNTY WATER DISTRICT, RECORDED JANUARY 31, 1961 AS FILE NO. 17596 OF OFFICIAL RECORDS; THENCE ALONG THE

**EXHIBIT 1**      **EXHIBIT B**

EASTERLY AND SOUTHERLY BOUNDARY OF SAID LAND AS FOLLOWS:

SOUTH 08 DEGREES 35'00" EAST, 2416.99 FEET AND SOUTH 78 DEGREES 19'48" WEST, 71.42 FEET TO THE NORTHEASTERLY CORNER OF LAND DESCRIBED IN DEED TO SANTEE COUNTY WATER DISTRICT, RECORDED OCTOBER 11, 1958 IN BOOK 7305, PAGE 551 OF OFFICIAL RECORDS; THENCE ALONG THE EASTERLY BOUNDARY OF SAID LAND AS FOLLOWS:

SOUTH 15'00'00" EAST, 490.00 FEET TO AN ANGLE POINT THEREIN, SOUTH 11 DEGREES 40'12" EAST, 350.00 FEET AND SOUTH 06 DEGREES 22'48" EAST TO THE SOUTHERLY LINE OF SAID LOT 5; THENCE EASTERLY ALONG SAID SOUTHERLY LINE TO THE WESTERLY BOUNDARY OF CARLTON HILLS UNIT NO. 2, ACCORDING TO MAP THEREOF NO. 4066, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 28, 1959; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4066 AS FOLLOWS:

NORTH 31 DEGREES 09'20" WEST, 20.00 FEET, MORE OR LESS, TO AN ANGLE POINT THEREIN, NORTH 18 DEGREES 20'00" WEST, 135.42 FEET, NORTH 14 DEGREES 24'10" EAST, 320.05 FEET, NORTH 09 DEGREES 13'00" WEST, 137.92 FEET, NORTH 21 DEGREES 20'00" WEST, 198.51 FEET, NORTH 35 DEGREES 06'00" WEST, 258.55 FEET, NORTH 01 DEGREES 24' WEST, 116.02 FEET, NORTH 34 DEGREES 07' EAST, 78.92 FEET, NORTH 87 DEGREES 39' EAST, 121.73 FEET, SOUTH 43 DEGREES 17' EAST, 120 FEET, NORTH 51 DEGREES 18' EAST, 160 FEET, NORTH 38 DEGREES 42' WEST, 58.15 FEET, NORTH 51 DEGREES 18' EAST, 60 FEET, NORTH 30 DEGREES 40' EAST, 64.11 FEET, NORTH 38 DEGREES 42' WEST 250.63 FEET, AND NORTH 72 DEGREES 06'00" EAST, 1330.30 FEET TO THE NORTHWESTERLY CORNER OF LOT 287 OF CARLTON HILLS UNIT NO. 1, ACCORDING TO MAP THEREOF NO. 4027, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 10, 1958; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4027 AS FOLLOWS:

NORTH 72 DEGREES 06'00" EAST, 105.00 FEET AND NORTH 17 DEGREES 54'00" WEST, 263.07 FEET TO THE SOUTHWESTERLY CORNER OF THAT PORTION OF CARLTON HILLS BOULEVARD, INCLUDING WITHIN THE BOUNDARY OF CARLTON HILLS UNIT NO. 4, ACCORDING TO MAP THEREOF NO. 4196, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 27, 1959; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4196, NORTH 17 DEGREES 54'00" WEST, 17.40 FEET TO THE SOUTHEASTERLY CORNER OF LAND DESCRIBED IN DEED TO ALPHA BETA ACME MARKETS, INC., RECORDED AUGUST 5, 1969 AS FILE NO. 141583 OF OFFICIAL RECORDS, BEING ALSO THE POINT OF CUSP WITH A TANGENT 20.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY IN THE BOUNDARY OF SAID LAND; THENCE ALONG THE BOUNDARY OF SAID LAND AS FOLLOWS:

SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 90 DEGREES 00'00" A DISTANCE OF 31.42 FEET, TANGENT TO SAID CURVE, SOUTH 72 DEGREES 06'00" WEST, 340.00 FEET, NORTH 17 DEGREES 54'00" WEST, 550.00 FEET AND NORTH 72 DEGREES 06'00" EAST, 360.00 FEET TO THE BOUNDARY OF SAID MAP NO. 4196; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4196 AS FOLLOWS:

NORTH 17 DEGREES 54'00 WEST, 877.95 FEET TO AN ANGLE POINT THEREIN, SOUTH 72 DEGREES 06'00" WEST, 122.50 FEET; SOUTH 57 DEGREES 48'00" WEST, 976.82 FEET, SOUTH 29 DEGREES 51'00" WEST, 866.15 FEET, NORTH 08 DEGREES 35'00" WEST, 2099.71 FEET AND NORTH 80 DEGREES 17'00" EAST, 310.13 FEET TO THE SOUTHWESTERLY CORNER OF SAID MAP NO. 4364; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4364 AS FOLLOWS:

NORTH 09 DEGREES 43'00" WEST, 280.00 FEET, SOUTH 80 DEGREES 17'00" WEST, 35.46 FEET, NORTH 79 DEGREES 20'00" WEST, 95.24 FEET, NORTH 65 DEGREES 05'00" WEST, 97.39 FEET, NORTH 54 DEGREES 55'20" WEST, 90.62 FEET, NORTH 37 DEGREES 00'00", WEST, 96.98 FEET, NORTHERLY ALONG THE ARC OF A NON-TANGENT 2080.00 FOOT RADIUS CURVE, CONCAVE WESTERLY, THROUGH A CENTRAL ANGLE OF 03 DEGREES 58'24" A DISTANCE OF 144.24 FEET AND TANGENT TO SAID CURVE, NORTH 19 DEGREES 09'00" WEST TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARY OF COUNTY OF SAN DIEGO TRACT NO. 3776, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9517, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 9, 1980.

**EXHIBIT 1        EXHIBIT B**

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF LAKEVIEW CARLTON HILLS UNIT NO. 1, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 8738, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 13, 1977.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3718-2, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9374, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, SEPTEMBER 19, 1979.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3650-2, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 8917, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 7, 1978.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3718-1, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9300, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 24, 1979.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3717, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9007, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, OCTOBER 26, 1978.

ALSO EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST SOUTHERLY CORNER OF CHARLTON HILLS UNIT NO. 4, AS SHOWN ON MAP NO. 4196, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, SAID CORNER ALSO BEING THE INTERSECTION OF THE WESTERLY LINE OF CARLTON HILLS BOULEVARD (100 FEET WIDE) WITH THE WESTERLY PROLONGATION OF THE NORTHERLY LINE OF MAST BOULEVARD (100 FEET WIDE); THENCE ALONG SAID WESTERLY LINE OF CARLTON HILLS BOULEVARD NORTH 17 DEGREES 54'00" WEST, 17.40 FEET TO THE TRUE POINT OF BEGINNING, SAID POINT BEING THE NORTHERLY TERMINUS OF THAT CERTAIN TANGENT CURVE BEING CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 20.00 FEET AS SAID CURVE IS DESCRIBED IN THE DEED TO ALPHA BETA ACME MARKETS, INC., A DELAWARE CORPORATION, RECORDED AUGUST 5, 1969 AS FILE NO. 141583 OF OFFICIAL RECORDS, IN THE OFFICE OF THE RECORDER OF SAID COUNTY; THENCE SOUTHWESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 90 DEGREES 00'00" AN ARC LENGTH OF 31.42 FEET TO A POINT ON THE SOUTHERLY LINE OF SAID ALPHA BETA ACME MARKETS PROPERTY; THENCE ALONG SAID SOUTHERLY LINE, SOUTH 72 DEGREES 06'00" WEST, 340.00 FEET TO THE MOST SOUTHERLY CORNER OF SAID ALPHA BETA ACME MARKETS PROPERTY; THENCE AT RIGHT ANGLES, SOUTH 17 DEGREES 54'00" EAST, 102.00 FEET TO A POINT ON A LINE WHICH IS PARALLEL WITH AND DISTANT SOUTHERLY 102.00 FEET, MEASURED AT RIGHT ANGLES, FROM SAID SOUTHERLY LINE; THENCE ALONG SAID LINE, NORTH 72 DEGREES 06'00" EAST, 340.00 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 20.00 FEET; THENCE SOUTHEASTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 90 DEGREES 00'00" AN ARC LENGTH OF 31.42 FEET TO A POINT ON THE WESTERLY LINE OF SAID CARLTON HILLS BOULEVARD; THENCE ALONG SAID WESTERLY LINE NORTH 17 DEGREES 54'00" WEST, 142.00 FEET TO THE TRUE POINT OF BEGINNING. ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF CITY OF SANTEE TRACT NO. 83-10, COUNTY OF SAN DIEGO, CALIFORNIA, ACCORDING TO MAP THEREOF NO. 11173, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 7, 1985.

PARCEL 16:

EXHIBIT 1      EXHIBIT B

THAT PORTION OF LOT 8 OF RESUBDIVISION OF FANITA RANCHO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, LYING WITHIN RECORD OF SURVEY MAP NO. 8279, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 4, 1978 AND LYING SOUTHERLY OF THE SOUTHWESTERLY LINE OF COUNTY OF SAN DIEGO TRACT NO. 3675-1, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9902, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1970 AND LYING NORTHERLY OF THE NORTHERLY LINE OF PARCEL 15 HEREINABOVE DESCRIBED.

EXCEPTING THEREFROM THAT PORTION LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE BOUNDARY OF SAID RECORD OF SURVEY MAP NO. 8279, SAID POINT BEING THE MOST WESTERLY CORNER OF SAID MAP NO. 9902, SAID POINT ALSO BEING DELINEATED AND DESIGNATED AS "TPOB DD NO. 7" ON SAID RECORD OF SURVEY MAP NO. 8279; THENCE ALONG SAID BOUNDARY SOUTH 25 DEGREES 25'07" WEST, 318.4 FEET; THENCE SOUTH 22 DEGREES 55'57" WEST, 389.11 FEET TO THE BEGINNING OF A TANGENT 2080 FOOT RADIUS CURVE CONCAVE EASTERLY; THENCE SOUTHERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 33 DEGREES 55'30" A DISTANCE OF 1524.84 FEET; THENCE TANGENT TO SAID CURVE SOUTH 19 DEGREES 06'19" EAST TO THE NORTHWESTERLY CORNER OF SAID PARCEL 15, SAID POINT BEING THE POINT OF TERMINUS.

ALSO EXCEPTING THEREFROM THAT PORTION LYING EASTERLY OF THE FOLLOWING DESCRIBED LINE:

COMMENCING AT THE HEREINBEFORE MENTIONED POINT DELINEATED AND DESIGNATED AS "TPOB DD NO7" ON SAID RECORD OF SURVEY MAP NO. 8279; THENCE SOUTH 64 DEGREES 31'42" EAST, 160 FEET TO A POINT ON THE BOUNDARY OF SAID RECORD OF SURVEY MAP NO. 8279, SAID POINT BEING THE TRUE POINT OF BEGINNING; THENCE FROM SAID TRUE POINT OF BEGINNING ALONG SAID BOUNDARY SOUTH 25 DEGREES 25'07" WEST, 314.77 FEET; THENCE SOUTH 22 DEGREES 55'57" WEST, 385.60 FEET TO THE BEGINNING OF A TANGENT 1920 FOOT RADIUS CURVE CONCAVE EASTERLY; THENCE SOUTHERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 33 DEGREES 55'30" A DISTANCE OF 1407.45; THENCE TANGENT TO SAID CURVE SOUTH 19 DEGREES 06'19" EAST TO THE NORTHEASTERLY CORNER OF SAID PARCEL 15, SAID POINT BEING THE POINT OF TERMINUS.

PARCEL 17:

LOTS 22 AND 23 OF CITY OF SANTEE TRACT NO. 83-10, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 11173, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 7, 1985.

PARCEL 18:

PARCEL 3 OF PARCEL MAP NO. 2165, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 17, 1973 AS FILE NO. 73-347429 OF OFFICIAL RECORDS.

**EXHIBIT 1        EXHIBIT B**

## LIST OF UNSECURED CREDITORS

| Creditor Name | Amount of Claim | Pro Rata payment from $1 million (approx. 18.254%) |
|---|---|---|
| Alleshouse & Associates<br>5666 La Jolla Blvd<br>La Jolla, CA 92037 | $29,362.68 | $5,359.86 |
| American 1st Maintenance<br>4290 International Blvd.<br>Norcross, GA 30093 | $42,355.00 | $7,731.48 |
| Aviatech, LLC<br>7220 Trade Street, Suite 300<br>San Diego, CA 92121 | $8,800.00 | $1,606.35 |
| BNT Erosion Construction<br>11988 Paseo Fuerte<br>El Cajon, CA 92020 | $275.00 | $50.20 |
| Butsko Utility<br>17065 Via Del Campo, Suite 100<br>San Diego, CA 92127 | $11,065.93 | $2,019.98 |
| Dahlin Group, Inc.<br>415 Cedros Avenue<br>Solana Beach, CA 92075 | $118,863.10 | $21,697.27 |
| Del Mar Blue Print<br>2201 San Dieguito Drive<br>Del Mar, CA 92014 | $15.09 | $2.76 |
| Dudek & Associates<br>605 Third Street<br>Encinitas, CA 92024 | $67,886.86<br>(filed as secured but listed on Schedule F) | $12,392.07 |
| Ebbin Moser<br>525 B Street, Suite 1500<br>San Diego, CA 92101 | $43,450 | $7,931.36 |
| Firewise 2000, Inc.<br>26337 Dky Drive<br>Escondido, CA 92026 | $4,392.68 | $801.84 |
| Flaherty Communications<br>309 Crocus Court<br>Encinitas, CA 92024 | $5,000.00 | $912.74 |
| Foley & Lardner<br>Attn: Katherine Catanese<br>500 Woodward Ave, Suite 2700<br>Detroit, MI 48226 | $68,639.77 | $12,529.50 |

**EXHIBIT 1**                    **EXHIBIT C**

*Signed by Judge Margaret M. Mann December 14, 2010*

| | | |
|---|---|---|
| Geocon Incorporated<br>6960 Flanders Drive<br>San Diego, CA 92121 | $55,553.93<br>(filed as secured but listed on<br>Schedule F) | $10,140.81 |
| IJM Management, Inc.<br>17383 West Sunset Blvd<br>Pacific Palisades, CA 92072 | $4,890.18 | $892.65 |
| Investigative Sciences<br>1134 D Street<br>Ramona, CA 92065 | $4,170.37 | $761.26 |
| Jeanette C. Justu<br>1600 Dove Street, Suite 210<br>Newport Beach, CA 92660 | $14,227.52 | $2,597.09 |
| JT Kruer & Company<br>10251 Vista Sorrento Pkwy<br>San Diego, CA 92121 | $7,581.60 | $1,383.95 |
| J. Whalen & Associates<br>1660 Hotel Circle North #725<br>San Diego, CA | $693,660.87 | $126,620.85 |
| Landbourn Company<br>7817 Ivanhoe Avenue, Suite 102<br>La Jolla, CA | $170,000 | $31,031.80 |
| Forma Design<br>3050 Pullman<br>Costa Mesa, CA 92626 | $102,298.74 | $18,673.61 |
| Luce Forward<br>600 West Broadway, Suite 2600<br>San Diego, CA 92101 | $178,202.18 | $32,529.02 |
| Marketpoint Real<br>1901 First Avenue, Suite 219<br>San Diego, CA 92101 | $7,000.00 | $1,277.78 |
| Paul A. Moote & Associates<br>1516 Brookhollow Drive<br>Santa Ana, CA 92705 | $34,192.12 | $6,241.43 |
| North County Blue<br>2205 Faraday Avenue<br>Carlsbad, CA 92008 | $769.33 | $140.43 |
| OCB Reprographics<br>1200 4th Avenue<br>San Diego, CA 92101 | $6,192.19 | $1,130.32 |
| Officia Imaging<br>7323 Engineer Road<br>San Diego, CA 92111 | $760.06 | $138.74 |

2

**EXHIBIT 1**                    **EXHIBIT C**

| | | |
|---|---|---|
| PACE – Pacific Adv<br>17520 Newhope Street #200<br>Fountain Valley, CA 92708 | $69,821.30 | $12,745.18 |
| Packard Governmental<br>220 West Grand Avenue<br>Escondido, CA 92025 | $93,600 | $17,085.74 |
| PBS & J<br>9272 Sky Park Court, Suite 200<br>San Diego, CA 92123 | $15,428.01 | $2,816.23 |
| Rick Engineering<br>5620 Friars Road<br>San Diego, CA 92110 | $1,644,829.94 | $300,247.26 |
| SDG&E<br>P.O. Box 129831<br>San Diego, CA 92112 | $179.18 | $32.71 |
| San Diego Group<br>P.O. Box 371494<br>San Diego, CA 92137 | $72,681.74 | $13,267.33 |
| Springbrook Realty<br>1300 Bristol Street N., #210<br>Newport Beach, CA 92660 | $720.00 | $131.43 |
| TTA (Tony Turpin)<br>5694 Mission Center Road #446<br>San Diego, CA 92108 | $13,926.00 | $2,542.05 |
| Velasquez Maintenance<br>4276 Marlboro Street<br>San Diego, CA 92105 | $5,138.25 | $937.94 |
| Wells Fargo Financial<br>800 Walnut<br>Des Moines, IA 50309 | $606.60 | $110.73 |
| City of Santee<br>c/o Best Krieger<br>3500 Porsche Way, Suite 200<br>Ontario, CA 91764 | $ 123,212.14 (filed unsecured)<br>$ 196,688.94 (filed secured)<br>$1,538,253.62 (filed secured)<br>$1,858,154.70  Total<br>(all listed on Schedule F) | $339,187.56 |
| Simpson Delmore & Greene<br>600 West Broadway, Suite 400<br>San Diego, CA 92101 | $23,407.01 | $4,272.72 |
| **TOTAL** | $5,478,097.93 | $999,971.39 |

**EXHIBIT 1**            **EXHIBIT C**

*Signed by Judge Margaret M. Mann December 14, 2010*

Title Order Number:

File Number: DIV-1005738

Exhibit "1"

Real property in the City of Santee, County of San Diego, State of California, described as follows:

PARCEL 1:

THOSE PORTIONS OF LOTS 5 AND 6 OF THE RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF NO. 1703 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED FEBRUARY 28, 1918, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWESTERLY CORNER OF LOT 1463 CARLTON HILLS, UNIT NO. 10 ACCORDING TO OFFICIAL PLAT THEREOF NO. 6866, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED FEBRUARY 26, 1971; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 1463, SOUTH 73 DEGREES 21'45" EAST, 47.06 FEET TO AN ANGLE POINT THEREIN, BEING ALSO AN ANGLE POINT IN THE BOUNDARY OF OAK HILLS UNIT NO. 134 ACCORDING TO OFFICIAL PLAT THEREOF NO. 6542, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED NOVEMBER 18, 1969, BEING THE TRUE POINT OF BEGINNING; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 6542 AS FOLLOWS:

NORTH 20 DEGREES 54'40" EAST, 145.18 FEET; NORTH 12 DEGREES 38'48" EAST, 84.58 FEET; NORTH 03 DEGREES 38'15" EAST, 222.90 FEET AND NORTH 12 DEGREES 38'48" EAST, 206.54 FEET TO THE NORTHERLY LINE OF SAID LOT 5; THENCE EASTERLY ALONG THE NORTHERLY LINE OF SAID LOTS 5 AND 6 TO THE NORTHEAST CORNER OF SAID LOT 6; THENCE ALONG THE EASTERLY LINE OF SAID LOT 6, SOUTH 00 DEGREES 06'17" WEST 1393.06 FEET TO THE NORTHEASTERLY CORNER OF CARLTON HILLS UNIT NO. 8, ACCORDING TO OFFICIAL PLAT THEREOF NO. 6216, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY AND RECORDED OCTOBER 23, 1968; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 6216 AS FOLLOWS:

SOUTH 67 DEGREES 20'30" WEST, 184.81 FEET; NORTH 22 DEGREES 39'30" WEST, 40.00 FEET; SOUTH 67 DEGREES 20'30" WEST, 170.00 FEET; SOUTH 06 DEGREES 57'10" WEST, 84.32 FEET; SOUTH 71 DEGREES 43'00" WEST, 639.50 FEET; NORTH 47 DEGREES 57'58" WEST, 110.50 FEET; SOUTH 71 DEGREES 43'00" WEST, 161.00 FEET; SOUTHERLY ALONG THE ARC OF A 228.00 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY THROUGH A CENTRAL ANGLE OF 07 DEGREES 15'42", A DISTANCE OF 28.90 FEET; SOUTH 73 DEGREES 43'00" WEST, 108.00 FEET; SOUTH 20 DEGREES 39'45" WEST, 70.09 FEET; SOUTH 81 DEGREES 03'14" WEST, 71.64 FEET; SOUTH 71 DEGREES 43'00" WEST, 192.00 FEET; SOUTH 61 DEGREES 56'34" WEST, 121.77 FEET; NORTH 71 DEGREES 20'30" WEST, 87.71 FEET; NORTH 89 DEGREES 54'00" WEST 110.00 FEET; NORTH 15 DEGREES 06'00" EAST, 48.97 FEET; NORTH 74 DEGREES 54'00" WEST, 149.00 FEET; SOUTH 67 DEGREES 43'57" WEST, 43.97 FEET; NORTH 19 DEGREES 56'59" WEST, 93.45 FEET; NORTH 29 DEGREES 31'37" WEST, 163.69 FEET; AND NORTH 39 DEGREES 42'11" EAST, 93.45 FEET TO THE MOST EASTERLY CORNER OF LOT 1280 OF SAID MAP NO. 6216, BEING ALSO THE MOST SOUTHERLY CORNER OF LOT 1376 OF CARLTON HILLS UNIT NO. 9, ACCORDING TO MAP THEREOF NO. 6429, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 23, 1969; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 6429, AS FOLLOWS:

**EXHIBIT 2**

NORTH 41 DEGREES 32'59" EAST, 196.98 FEET; NORTH 41 DEGREES 33'14" EAST 261.00 FEET; NORTH 53 DEGREES 14'57" EAST, 97.91 FEET; NORTH 68 DEGREES 28'56" EAST, 187.76 FEET; NORTH 40 DEGREES 36'00" EAST, 442.08 FEET; NORTH 49 DEGREES 24'00" WEST, 231.00 FEET; SOUTH 40 DEGREES 36'00" WEST, 38.00 FEET; NORTH 49 DEGREES 24'00" WEST, 115.00 FEET; SOUTH 51 DEGREES 54'36" WEST, 219.26 FEET; SOUTH 63 DEGREES 42'14" WEST, 165.28 FEET; SOUTH 75 DEGREES 58'20" WEST, 136.09 FEET; NORTH 88 DEGREES 40'00" WEST, 137.22 FEET; NORTH 69 DEGREES 41'44" WEST, 116.27 FEET; NORTH 57 DEGREES 20'00" WEST, 197.00 FEET; NORTH 49 DEGREES 02'30" WEST, 197.39 FEET; NORTH 21 DEGREES 34'40" WEST, 162.25 FEET; NORTH 82 DEGREES 30'00" WEST, 364.38 FEET; SOUTH 07 DEGREES 30'00" WEST, 75.49 FEET; AND SOUTH 08 DEGREES 09'22" EAST, 97.22 FEET TO THE NORTHEASTERLY CORNER OF CARLTON HILLS UNIT NO. 11, ACCORDING TO OFFICIAL PLAT THEREOF NO. 7133 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, RECORDED DECEMBER 8, 1971; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 7133 AS FOLLOWS:

SOUTH 81 DEGREES 50'38" WEST, 180.09 FEET; NORTH 87 DEGREES 19'12" WEST, 121.09 FEET; SOUTH 82 DEGREES 20'00" WEST, 50.00 FEET; NORTH 62 DEGREES 05'00" WEST, 449.01 FEET; SOUTH 51 DEGREES 20'00" WEST, 142.88 FEET; SOUTH 17 DEGREES 54'00" WEST, 113.72 FEET TO A POINT ON THE ARC OF A NON-TANGENT 215.00 FOOT RADIUS CURVE, CONCAVE NORTHERLY, A RADIAL LINE OF SAID CURVE, BEARING SOUTH 00 DEGREES 46'00" EAST TO SAID POINT; WESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 18 DEGREES 40'00", A DISTANCE OF 70.05 FEET; AND NON-TANGENT TO SAID CURVE SOUTH 17 DEGREES 54'00" WEST, 369.48 FEET TO THE ANGLE POINT IN THE NORTHERLY BOUNDARY OF LOT 1477 OF SAID MAP NO. 6866; THENCE ALONG THE NORTHERLY BOUNDARY OF SAID MAP NO. 6866 AS FOLLOWS:

NORTH 77 DEGREES 13'30" WEST, 187.20 FEET; NORTH 72 DEGREES 30'00" WEST, 544.64 FEET; NORTH 59 DEGREES 56'00" WEST, 72.57 FEET; AND NORTH 72 DEGREES 30'00" WEST, 78.99 FEET TO THE TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN CARLTON ESTATES, ACCORDING TO MAP NO. 8796, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON FEBRUARY 9, 1978 AS FILE NO. 78-054692 OF OFFICIAL RECORDS.

PARCEL 2:

THAT PORTION OF LOT 12 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279 RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

PARCEL 3:

THE SOUTH HALF OF LOT 1 AND ALL OF LOT 8 IN SECTION 4, TOWNSHIP 15 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF.

PARCEL 4:

THAT PORTION OF LOT 15 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

PARCEL 5:

LOT 14 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918.

**EXHIBIT 2**

PARCEL 6:

ALL THAT PORTION OF LOT 11 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918., LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

PARCEL 7:

LOT 13 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918.

PARCEL 8:

ALL THAT PORTION OF LOT 8 OF THE RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDED OF SAN DIEGO COUNTY FEBRUARY 28, 1918 LYING WITHIN THE BOUNDARIES OF RECORD OF SURVEY MAP NO. 8279, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MAY 4, 1978 AS FILE NO. 78-181648 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN COUNTY OF SAN DIEGO TRACT NO. 3675-1, ACCORDING TO MAP NO. 9902, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398660 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN COUNT OF SAN DIEGO TRACT NO. 3675-2, ACCORDING TO MAP NO. 9903, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398661 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN COUNTY OF SAN DIEGO TRACT NO. 3675-3, ACCORDING TO MAP NO. 9904, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398662 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN COUNTY OF SAN DIEGO TRACT NO. 3675-4, ACCORDING TO MAP THEREOF NO. 9905, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON NOVEMBER 25, 1980 AS FILE NO. 80-398663 OF OFFICIAL RECORDS.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

COMMENCING AT AN ANGLE POINT ON THE EASTERLY BOUNDARY OF THAT CERTAIN STRIP OF LAND, BEING A 30 FOOT EASEMENT AS DESCRIBED IN DEED TO THE SANTEE COUNTY WATER DISTRICT FOR ROAD AND UTILITY PURPOSES, RECORDED AUGUST 19, 1966 AS FILE NO. 134771 OF OFFICIAL RECORDS, SAID ANGLE POINT BEING THE TERMINUS OF A COURSE HAVING A BEARING AND DISTANCE OF NORTH 27 DEGREES 54'57" EAST 568.16 FEET; THENCE CONTINUING ALONG SAID EASTERLY BOUNDARY NORTH 26 DEGREES 14 EAST 846.04 FEET; THENCE LEAVING SAID EASTERLY BOUNDARY SOUTH 63 DEGREES 46' EAST 370.00 FEET; THENCE SOUTH 79 DEGREES 39' EAST, 670.81 FEET; THENCE NORTH 10 DEGREES 21' EAST, 18.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 79 DEGREES 39' WEST 110.00 FEET; THENCE NORTH 10 DEGREES 21' EAST, 170.00 FEET; THENCE SOUTH 79 DEGREES 39' EAST, 120.00 FEET, SOUTH 10 DEGREES 21' WEST 170.00 FEET; THENCE NORTH 79 DEGREES 39' WEST, 10.00 FEET TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT THAT BEARS NORTH 17 DEGREES 36' EAST, 2280.63 FEET FROM THE INTERSECTION OF THE CENTERLINE OF SYLMAST BOULEVARD WITH THE CENTERLINE OF CARLTON HILLS BOULEVARD AS SAID CENTERLINES ARE SHOWN ON MAP NO. 4364, A COPY OF WHICH IS ON

**EXHIBIT 2**

FILE IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY THENCE SOUTH 75 DEGREES 57'15" EAST, 276.00 FEET; THENCE NORTH 14 DEGREES 02'45" EAST 295.00 FEET; THENCE NORTH 75 DEGREES 57'15" WEST, 355.00 FEET; THENCE SOUTH 14 DEGREES 02'45" WEST, 295.00 FEET; THENCE SOUTH 75 DEGREES 57'15" EAST 79.00 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCELS 1-A AND 1-B AS CONDEMNED AND TAKEN BY THE PADRE DAM MUNICIPAL WATER DISTRICT BY FINAL ORDER OF CONDEMNATION CASE NO. 658159-1 AND FILED FEBRUARY 18, 1994 BY THE CLERK OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, A CERTIFIED COPY OF WHICH WAS RECORDED FEBRUARY 24, 1994 AS FILE NO. 1994-0124825 OF OFFICIAL RECORDS OF SAID SAN DIEGO COUNTY.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY LINE OF THE LAND CONVEYED TO SANTEE COUNTY WATER DISTRICT RECORDED JUNE 27, 1962 AS FILE NO. 109476 OF OFFICIAL RECORDS, SAID POINT BEARS NORTH 17 DEGREES 39'17" EAST (NORTH 17 DEGREES 36'00" EAST PER SAID DEED) 2,280.63 FEET FROM THE INTERSECTION OF THE CENTERLINE OF SLYMAST BOULEVARD WITH THE CENTERLINE OF CARLTON HILLS BOULEVARD AS SAID CENTERLINES ARE SHOWN ON MAP NO. 4364 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, THENCE EASTERLY ALONG SAID SOUTHERLY LINE SOUTH 75 DEGREES 53'58" EAST, 111.82 FEET TO AN ANGLE POINT IN THAT LAND DESCRIBED IN PARCEL 1-A OF THAT FINAL ORDER OF CONDEMNATION RECORDED FEBRUARY 24, 1994 AS FILE NO. 1994-0124825 OF OFFICIAL RECORDS; THENCE ALONG THE BOUNDARY OF SAID LAND DESCRIBED IN PARCEL 1-A, SOUTH 54 DEGREES 24'52" EAST, 107.06 FEET; THENCE SOUTH 77 DEGREES 09'15" EAST, 54.25 FEET; THENCE NORTH 59 DEGREES 03'17" EAST, 77.51 FEET; THENCE NORTH 12 DEGREES 19'23" EAST, 201.08 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 12 DEGREES 19'23" EAST, 15.00 FEET; THENCE NORTH 49 DEGREES 25'48" EAST, 68.71 FEET; THENCE LEAVING SAID BOUNDARY OF PARCEL 1-A, SOUTH 43 DEGREES 01'46" WEST, 81.18 FEET, TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF LYING WESTERLY OF THE EASTERLY LINE OF THE LAND CONVEYED TO THE PADRE DAM MUNICIPAL WATER DISTRICT BY DEED RECORDED APRIL 12, 1977 AS FILE NO. 77-132403 OF OFFICIAL RECORDS OF SAID SAN DIEGO COUNTY.

ALSO EXCEPTING FROM SAID LOT 8, ALL THAT PORTION THEREOF LYING WITHIN PARCEL 16 HEREINAFTER DESCRIBED.

PARCEL 9:

LOT 7 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN CARLTON ESTATES, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 8796, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON FEBRUARY 9, 1978 AS FILE NO. 78-054692 OF OFFICIAL RECORDS.

ALSO EXCEPTING FROM SAID LOT 7, THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF WOODGLENN ESTATES, ACCORDING TO MAP THEREOF NO. 7560, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 21, 1973; THENCE ON A LINE PARALLEL WITH THE WESTERLY PROLONGATION OF THE CENTER LINE OF WOODGLEN VISTA DRIVE, AS SHOWN ON MAP, NORTH 89 DEGREES 51'10" WEST, 687.38 FEET TO A POINT ON THE EASTERLY LINE OF SAID LOT 7; THENCE ALONG SAID EASTERLY LINE, NORTH 00 DEGREES 12'05" EAST, 42.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 89 DEGREES 51'10" WEST, 230.00 FEET TO THE BEGINNING OF A TANGENT 458.00 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY; THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 36 DEGREES 06'36" A DISTANCE OF 288.65 FEET; THENCE NORTH 09 DEGREES 12'05" EAST,

**EXHIBIT 2**

522.49 FEET; THENCE NORTH 89 DEGREES 49'55" EAST, 500.00 FEET TO THE EASTERLY LINE OF THE SAID LOT 7; THENCE ALONG SAID EASTERLY LINE SOUTH 00 DEGREES 12'05" WEST, 610.00 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCELS A, B AND C AS SET OUT IN EXHIBIT "A" IN CERTIFICATE OF COMPLIANCE RECORDED JULY 3, 1995 AS FILE NO. 1995-0282020 OF OFFICIAL RECORDS OF SAID SAN DIEGO COUNTY.

PARCEL 10:

LOTS A AND B OF COUNTY OF SAN DIEGO TRACT NO. 3675-1, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9902, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 11:

LOT D OF COUNTY OF SAN DIEGO TRACT NO. 3675-2, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9903, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 12:

LOT F COUNTY OF SAN DIEGO TRACT NO. 3675-3, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9904, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 13:

LOT G OF COUNTY OF SAN DIEGO TRACT NO. 3675-4, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9905, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1980.

PARCEL 14:

THAT PORTION OF CITY OF SANTEE TRACT NO. 83-10, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 11173, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 7, 1985, DELINEATED AND DESIGNATED AS "PORTION OF FANITA PARKWAY RESERVED FOR FUTURE STREET", ON SAID MAP.

PARCEL 15:

THAT PORTION OF LOT 5 OF RESUBDIVISION OF FANITA RANCHO, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE WESTERLY BOUNDARY OF CARLTON HILLS UNIT NO. 5, ACCORDING TO MAP THEREOF NO. 4364, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, OCTOBER 14, 1959, WITH THE NORTHERLY LINE OF SAID LOT 5; THENCE WESTERLY ALONG SAID NORTHERLY LINE, APPROXIMATELY 160.00 FEET IN THE EASTERLY BOUNDARY OF LAND DESCRIBED IN DEED TO SANTEE COUNTY WATER DISTRICT, RECORDED MAY 4, 1965 AS FILE NO. 79629 OF OFFICIAL RECORDS; THENCE ALONG SAID EASTERLY BOUNDARY AS FOLLOWS:

SOUTH 19 DEGREES 09'00" EAST, 350.00 FEET, MORE OR LESS, TO THE BEGINNING OF A TANGENT 1920.00 FOOT RADIUS CURVE (DEED - UNDISCLOSED RADIUS), CONCAVE WESTERLY; SOUTHERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 10 DEGREES 34'00" A DISTANCE OF 354.09 FEET AND TANGENT TO SAID CURVE, SOUTH 08 DEGREES 35'00" EAST, 878.45 FEET TO THE NORTHEASTERLY CORNER OF LAND DESCRIBED IN DEED TO SANTEE COUNTY WATER DISTRICT, RECORDED JANUARY 31, 1961 AS FILE NO. 17596 OF OFFICIAL RECORDS; THENCE ALONG THE

**EXHIBIT 2**

EASTERLY AND SOUTHERLY BOUNDARY OF SAID LAND AS FOLLOWS:

SOUTH 08 DEGREES 35'00" EAST, 2416.99 FEET AND SOUTH 78 DEGREES 19'48" WEST, 71.42 FEET TO THE NORTHEASTERLY CORNER OF LAND DESCRIBED IN DEED TO SANTEE COUNTY WATER DISTRICT, RECORDED OCTOBER 11, 1958 IN BOOK 7305, PAGE 551 OF OFFICIAL RECORDS; THENCE ALONG THE EASTERLY BOUNDARY OF SAID LAND AS FOLLOWS:

SOUTH 15'00'00" EAST, 490.00 FEET TO AN ANGLE POINT THEREIN, SOUTH 11 DEGREES 40'12" EAST, 350.00 FEET AND SOUTH 06 DEGREES 22'48" EAST TO THE SOUTHERLY LINE OF SAID LOT 5; THENCE EASTERLY ALONG SAID SOUTHERLY LINE TO THE WESTERLY BOUNDARY OF CARLTON HILLS UNIT NO. 2, ACCORDING TO MAP THEREOF NO. 4066, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 28, 1959; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4066 AS FOLLOWS:

NORTH 31 DEGREES 09'20" WEST, 20.00 FEET, MORE OR LESS, TO AN ANGLE POINT THEREIN, NORTH 18 DEGREES 20'00" WEST, 135.42 FEET, NORTH 14 DEGREES 24'10" EAST, 320.05 FEET, NORTH 09 DEGREES 13'00" WEST, 137.92 FEET, NORTH 21 DEGREES 20'00" WEST, 198.51 FEET, NORTH 35 DEGREES 06'00" WEST, 258.55 FEET, NORTH 01 DEGREES 24' WEST, 116.02 FEET, NORTH 34 DEGREES 07' EAST, 78.92 FEET, NORTH 87 DEGREES 39' EAST, 121.73 FEET, SOUTH 43 DEGREES 17' EAST, 120 FEET, NORTH 51 DEGREES 18' EAST, 160 FEET, NORTH 38 DEGREES 42' WEST, 58.15 FEET, NORTH 51 DEGREES 18' EAST, 60.FEET, NORTH 30 DEGREES 40' EAST, 64.11 FEET, NORTH.38 DEGREES 42' WEST 250.63 FEET, AND NORTH 72 DEGREES 06'00" EAST, 1330.30 FEET TO THE NORTHWESTERLY CORNER OF LOT 287 OF CARLTON HILLS UNIT NO. 1, ACCORDING TO MAP THEREOF NO. 4027, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 10, 1958; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4027 AS FOLLOWS:

NORTH 72 DEGREES 06'00" EAST, 105.00 FEET AND NORTH 17 DEGREES 54'00" WEST, 263.07 FEET TO THE SOUTHWESTERLY CORNER OF THAT PORTION OF CARLTON HILLS BOULEVARD, INCLUDING WITHIN THE BOUNDARY OF CARLTON HILLS UNIT NO. 4, ACCORDING TO MAP THEREOF NO. 4196, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 27, 1959; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4196, NORTH 17 DEGREES 54'00" WEST, 17.40 FEET TO THE SOUTHEASTERLY CORNER OF LAND DESCRIBED IN DEED TO ALPHA BETA ACME MARKETS, INC., RECORDED AUGUST 5, 1969 AS FILE NO. 141583 OF OFFICIAL RECORDS, BEING ALSO THE POINT OF CUSP WITH A TANGENT 20.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY IN THE BOUNDARY OF SAID LAND; THENCE ALONG THE BOUNDARY OF SAID LAND AS FOLLOWS:

SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 90 DEGREES 00'00" A DISTANCE OF 31.42 FEET, TANGENT TO SAID CURVE, SOUTH 72 DEGREES 06'00" WEST, 340.00 FEET, NORTH 17 DEGREES 54'00" WEST, 550.00 FEET AND NORTH 72 DEGREES 06'00" EAST, 360.00 FEET TO THE BOUNDARY OF SAID MAP NO. 4196; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4196 AS FOLLOWS:

NORTH 17 DEGREES 54'00 WEST, 877.95 FEET TO AN ANGLE POINT THEREIN, SOUTH 72 DEGREES 06'00" WEST, 122.50 FEET; SOUTH 57 DEGREES 48'00" WEST, 976.82 FEET, SOUTH 29 DEGREES 51'00" WEST, 866.15 FEET, NORTH 08 DEGREES 35'00" WEST, 2099.71 FEET AND NORTH 80 DEGREES 17'00" EAST, 310.13 FEET TO THE SOUTHWESTERLY CORNER OF SAID MAP NO. 4364; THENCE ALONG THE BOUNDARY OF SAID MAP NO. 4364 AS FOLLOWS:

NORTH 09 DEGREES 43'00" WEST, 280.00 FEET, SOUTH 80 DEGREES 17'00" WEST, 35.46 FEET, NORTH 79 DEGREES 20'00" WEST, 95.24 FEET, NORTH 65 DEGREES 05'00" WEST, 97.39 FEET, NORTH 54 DEGREES 55'20" WEST, 90.62 FEET, NORTH 37 DEGREES 00'00", WEST, 96.98 FEET, NORTHERLY ALONG THE ARC OF A NON-TANGENT 2080.00 FOOT RADIUS CURVE, CONCAVE WESTERLY, THROUGH A CENTRAL ANGLE OF 03 DEGREES 58'24" A DISTANCE OF 144.24 FEET AND TANGENT TO SAID CURVE, NORTH 19 DEGREES 09'00" WEST TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARY OF COUNTY OF SAN DIEGO TRACT NO. 3776, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9517, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 9, 1980.

**EXHIBIT 2**

- ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF LAKEVIEW CARLTON HILLS UNIT NO. 1, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 8738, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 13, 1977.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3718-2, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9374, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, SEPTEMBER 19, 1979.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3650-2, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 8917, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 7, 1978.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3718-1, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9300, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 24, 1979.

ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF COUNTY OF SAN DIEGO TRACT NO. 3717, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9007, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, OCTOBER 26, 1978.

ALSO EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST SOUTHERLY CORNER OF CHARLTON HILLS UNIT NO. 4, AS SHOWN ON MAP NO. 4196, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, SAID CORNER ALSO BEING THE INTERSECTION OF THE WESTERLY LINE OF CARLTON HILLS BOULEVARD (100 FEET WIDE) WITH THE WESTERLY PROLONGATION OF THE NORTHERLY LINE OF MAST BOULEVARD (100 FEET WIDE); THENCE ALONG SAID WESTERLY LINE OF CARLTON HILLS BOULEVARD NORTH 17 DEGREES 54'00" WEST, 17.40 FEET TO THE TRUE POINT OF BEGINNING, SAID POINT BEING THE NORTHERLY TERMINUS OF THAT CERTAIN TANGENT CURVE BEING CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 20.00 FEET AS SAID CURVE IS DESCRIBED IN THE DEED TO ALPHA BETA ACME MARKETS, INC., A DELAWARE CORPORATION, RECORDED AUGUST 5, 1969 AS FILE NO. 141583 OF OFFICIAL RECORDS, IN THE OFFICE OF THE RECORDER OF SAID COUNTY; THENCE SOUTHWESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 90 DEGREES 00'00" AN ARC LENGTH OF 31.42 FEET TO A POINT ON THE SOUTHERLY LINE OF SAID ALPHA BETA ACME MARKETS PROPERTY; THENCE ALONG SAID SOUTHERLY LINE, SOUTH 72 DEGREES 06'00" WEST, 340.00 FEET TO THE MOST SOUTHERLY CORNER OF SAID ALPHA BETA ACME MARKETS PROPERTY; THENCE AT RIGHT ANGLES, SOUTH 17 DEGREES 54'00" EAST, 102.00 FEET TO A POINT ON A LINE WHICH IS PARALLEL WITH AND DISTANT SOUTHERLY 102.00 FEET, MEASURED AT RIGHT ANGLES, FROM SAID SOUTHERLY LINE; THENCE ALONG SAID LINE, NORTH 72 DEGREES 06'00" EAST, 340.00 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 20.00 FEET; THENCE SOUTHEASTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 90 DEGREES 00'00" AN ARC LENGTH OF 31.42 FEET TO A POINT ON THE WESTERLY LINE OF SAID CARLTON HILLS BOULEVARD; THENCE ALONG SAID WESTERLY LINE NORTH 17 DEGREES 54'00" WEST, 142.00 FEET TO THE TRUE POINT OF BEGINNING. ALSO EXCEPTING THEREFROM THAT PORTION LYING WITHIN THE BOUNDARIES OF SANTEE TRACT NO. 83-10, COUNTY OF SAN DIEGO, CALIFORNIA, ACCORDING TO MAP THEREOF NO. 11173, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 7, 1985.

PARCEL 16:

**EXHIBIT 2**

THAT PORTION OF LOT 8 OF RESUBDIVISION OF FANITA RANCHO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 1703, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 28, 1918, LYING WITHIN RECORD OF SURVEY MAP NO. 8279, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 4, 1978 AND LYING SOUTHERLY OF THE SOUTHWESTERLY LINE OF COUNTY OF SAN DIEGO TRACT NO. 3675-1, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 9902, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, NOVEMBER 25, 1970 AND LYING NORTHERLY OF THE NORTHERLY LINE OF PARCEL 15 HEREINABOVE DESCRIBED.

EXCEPTING THEREFROM THAT PORTION LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE BOUNDARY OF SAID RECORD OF SURVEY MAP NO. 8279, SAID POINT BEING THE MOST WESTERLY CORNER OF SAID MAP NO. 9902, SAID POINT ALSO BEING DELINEATED AND DESIGNATED AS "TPOB DD NO. 7" ON SAID RECORD OF SURVEY MAP NO. 8279; THENCE ALONG SAID BOUNDARY SOUTH 25 DEGREES 25'07" WEST, 318.4 FEET; THENCE SOUTH 22 DEGREES 55'57" WEST, 389.11 FEET TO THE BEGINNING OF A TANGENT 2080 FOOT RADIUS CURVE CONCAVE EASTERLY; THENCE SOUTHERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 33 DEGREES 55'30" A DISTANCE OF 1524.84 FEET; THENCE TANGENT TO SAID CURVE SOUTH 19 DEGREES 06'19" EAST TO THE NORTHWESTERLY CORNER OF SAID PARCEL 15, SAID POINT BEING THE POINT OF TERMINUS.

ALSO EXCEPTING THEREFROM THAT PORTION LYING EASTERLY OF THE FOLLOWING DESCRIBED LINE:

COMMENCING AT THE HEREINBEFORE MENTIONED POINT DELINEATED AND DESIGNATED AS "TPOB DD NO7" ON SAID RECORD OF SURVEY MAP NO. 8279; THENCE SOUTH 64 DEGREES 31'42" EAST, 160 FEET TO A POINT ON THE BOUNDARY OF SAID RECORD OF SURVEY MAP NO. 8279, SAID POINT BEING THE TRUE POINT OF BEGINNING; THENCE FROM SAID TRUE POINT OF BEGINNING ALONG SAID BOUNDARY SOUTH 25 DEGREES 25'07" WEST, 314.77 FEET; THENCE SOUTH 22 DEGREES 55'57" WEST, 385.60 FEET TO THE BEGINNING OF A TANGENT 1920 FOOT RADIUS CURVE CONCAVE EASTERLY; THENCE SOUTHERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 33 DEGREES 55'30" A DISTANCE OF 1407.45; THENCE TANGENT TO SAID CURVE SOUTH 19 DEGREES 06'19" EAST TO THE NORTHEASTERLY CORNER OF SAID PARCEL 15, SAID POINT BEING THE POINT OF TERMINUS.

PARCEL 17:

LOTS 22 AND 23 OF CITY OF SANTEE TRACT NO. 83-10, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 11173, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 7, 1985.

PARCEL 18:

PARCEL 3 OF PARCEL MAP NO. 2165, IN THE CITY OF SANTEE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 17, 1973 AS FILE NO. 73-347429 OF OFFICIAL RECORDS.

**EXHIBIT 2**